# EXHIBIT 4

# Holland & Knight

150 North Riverside Plaza, Suite 2700 | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

Romeo S. Quinto Jr.
+1 312-715-5802
Romeo.Quinto@hklaw.com

October 19, 2023

*Via E-mail (rosenwassers@gtlaw.com)*

Steven J. Rosenwasser
Greenberg Traurig, LLP
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305

      Re:    Subpoena to Darling Ingredients, Inc. in American Proteins, Inc., et al. v. River Valley Ingredients, LLC, et al., No. 2:22-cv-000921-RWS

Dear Mr. Rosenwasser:

      Thank you for your time and participation in the September 6, 2023 conferral call related to the subpoena our client issued to your client Darling Ingredients, Inc. ("Darling") related to the above-referenced litigation wherein we discussed the information we are seeking and the objections you raised in your August 25, 2023 letter. In our meet and confer, you indicated several broad concerns: first, that Darling requests an amended Protective Order for any production it makes; second, that the topics requested in the Subpoena are overly broad; and third, the cost of compliance with the Subpoena. As to the third issue, the cost of compliance, you agreed that we should defer discussing any cost-shifting until we have come to agreement on the first two issues. This letter, therefore, responds to the concern about the Protective Order and the breadth of the Subpoena.

      First, you raised two issues with the Protective Order – that there is no "Outside Counsel Eyes Only" designation to prevent in-house counsel of any party from accessing Darling's highly confidential materials, and that Paragraph 6(c) allows witnesses or deponents to be provided Darling's highly confidential materials. First, as to Paragraph 6(c), API does not believe there is any modification necessary, nor is there any language possible to craft to address Darling's issue. To the extent that Darling, or any other party, produces relevant information in response to a Subpoena or other discovery request, API needs to, and is entitled to, use such materials in depositions or with a witness <u>who has personal knowledge of those materials</u>. Of course, that does not allow API, or any other party, to put Darling's highly confidential trade secrets, if any, in front of a witness that has no knowledge of the information at issue – because Paragraph 6(c) only allows use of information with witnesses or deponents who "have had prior access to or have personal

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia
Portland | Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

knowledge of the information, and their counsel." Even then, Paragraph 9 of the Protective Order requires any person being shown highly confidential materials to sign an agreement acknowledging that they are bound by the Protective Order. Thus, there is no valid concern that any party will disclose Darling's trade secrets if any to, for example, a Tyson employee.

As to Darling's issue with allowing in-house counsel for the parties to access highly confidential materials, API believes the Protective Order adequately protects Darling's trade secrets. In the interest of compromise, however, and without waiving any rights, we think the appropriate approach would be for Darling to move for a protective order, which API would not oppose (subject to review of the motion), that seeks an additional "Non-Party – Outside Counsel Eyes Only" designation for information that Darling believes in good faith constitutes trade secrets. To the extent the Court denies such relief, API reserves all rights and will indeed continue to seek all responsive documents under the subpoena.

Second, in our meet and confer, you requested that we send to Darling a revised set of requests indicating a more narrow scope. You stated that you were not asking API to serve a new subpoena. You also noted that providing more specifics related to the Subpoena would allow Darling to agree to custodians and search terms, which you agreed would be appropriate. Finally, you noted that Darling is not at this time refusing to produce information related to any particular request. In keeping with the above, API provides the following clarifications to its Requests:

**Request Nos. 1-4:** We did not specifically discuss transactional data and financial statements (or budgets, analyses, etc.) other than in the context of your protective order concerns during our meet and confer. API's Requests remain that Darling produce transactional data and financial statements or analyses related to the purchase of Raw Material Supply for poultry rendering and sale of Poultry Rendering Outputs from January 1, 2014, to present (and, if necessary, lookup tables, data dictionaries, and/or glossaries to explain such data format). If Darling is going to take the position that these requests are unduly burdensome, please provide the basis for that position and quantify the associated burden.

**Request No. 5:** API is interested in any communications with Tyson entities, which could relate in myriad ways to its claims. Adopting an approach that we have found successful for other subpoena recipients, API proposes that we come to agreement with Darling regarding the number and identity of custodians, which would include individuals likely to have had communications with Tyson employees about processing or rendering issues in the geographic market, and search the emails of those custodians for communications involving "*@tyson.com." Absent further clarification from your client, API does not believe that such a search would create any undue burden.

**Request No. 6-7, 9:** API is interested in communications Darling might have had about Tyson and its contracts with Tyson, to the extent any exist. This information would shed light on competitors' concerns about Tyson's potentially anticompetitive or unfair business practices, Tyson's acquisition of API, and Tyson's negotiating power in the market, which are relevant to

numerous elements of API's Sherman Act claims. API proposes, contingent on an agreement regarding custodians, a search of those custodial documents for the following terms: Tyson* AND (poultry* OR chicken*) AND (process* OR render* OR agree* OR contract* OR commit* OR negotiat*). To the extent these search terms create any burden, API first needs to understand the level of that burden, which cannot be determined before agreeing to custodians.

**Request No. 8:** API is willing to forgo this Request contingent on receiving some assurance that Darling has never discussed Tyson at any trade group event or meeting. API proposes that Darling provide an affidavit or declaration to this effect.

**Request No. 10:** API is looking for communications regarding its lawsuit against Tyson, which could be relevant in numerous ways, particularly as it could relate to market harms following Tyson's anticompetitive behavior as alleged. API suggests, again contingent on custodians, a search for the following terms: (Tyson* OR "River Valley*") AND ("American Protein*" OR "Crossroads Properties*" OR "Georgia Feed*" OR "API" OR "API'S" OR "APIs" or AMPROT). API does not expect any undue burden from such a targeted search.

**Request Nos. 11, 14-15:** Similar to Request No. 10, communications regarding changes in the market after the Tyson/API acquisition are highly relevant to the issue of, at minimum, antitrust injury. As to Request Nos. 14-15, these may be achievable through a "go-get" search, if Darling believes that such categories of potentially responsive analyses, reports, etc. are stored in central locations. As to Request No. 11, API proposes a search, again contingent on agreement regarding custodians, for the following terms: (poultry* or chicken*) AND (competition* OR compete* OR competing* OR monopol* OR supply* OR demand* OR pric* OR output* OR trend* OR volume* OR concentrat* OR market OR (amount* w/10 (purchas* OR sold* OR sell*)).

**Request Nos. 12-13:** First, to the extent Darling provides transactional data pursuant to the above Requests, API will agree not to request purchase orders and invoices which reflect only the information reflected in such data. Second, any remaining agreements may be achievable through a "go-get" search, rather than a custodial search, if Darling believes that agreements with Tyson or other poultry processors are stored in central locations. If such agreements are not stored in any central location(s), API proposes search terms, again contingent on custodian agreement, related to "contract" or "agreement" along with Tyson and other poultry processors with which Darling believes it may have conducted business over the relevant time period.

As previously stated, Darling, as a competitor to Tyson, appears to be a victim of any anticompetitive violations committed by Tyson in the market. This litigation, and its result, stand to affect Darling and the public at large. The documents sought, therefore, are important—and cannot be obtained from alternative sources. Given the above, we need to understand whether Darling will continue to stand on its objections and refuse to produce the requested material. API hopes to reach agreement with Darling on the above requests; but if it cannot, API is likely to seek Court intervention on these issues.

    With this context in mind, please let us know by October 26, 2023, whether Darling will agree to the above.

                      Sincerely yours,

                      HOLLAND & KNIGHT LLP

                      Romeo S. Quinto Jr.

cc:    Ken Racowski
       Caitlin Saladrigas