# EXHIBIT 5

| From: | Rosenwasser, Steven J. (Shld-ATL-LT) |
|---|---|
| To: | Hayes, Anna P (WAS - X75441); Saladrigas, Caitlin F (WPB - X28349); Shin, Michael U. (Para-ATL-LT); Johnson, Kishma V. (LSS-Atl-LT); Eye, William E. (Assoc-ATL-LT) |
| Cc: | Princivalle, Katie (PHL - X49583); Racowski, Kenneth (PHL - X49580); Burnside, Cynthia G (ATL - X48568); Quinto, Romeo S (CHI - X65802) |
| Subject: | RE: American Proteins, Inc. et al v. River Valley Ingredients, Inc., et al, Civil Action No. 2:22-cv-00091-RWS |
| Date: | Wednesday, August 30, 2023 10:55:51 AM |
| Attachments: | image001.png |

Caitlin and Anna,

Good morning again. In your conferral letter, you ask why Darling believes the Protective Order is inadequate to protect is highly sensitive, proprietary, and/or trade secret information (together, "Trade Secrets"). I wanted to provide a general response to that question in advance of our call.

As you know, Paragraph 6 of the Protective Order governs how the parties can use "Highly Confidential" information. Contrary to your letter, that section **permits** Darling's competitors to view its Trade Secrets. For example, Paragraph 6(a) expressly allows not only "in-house legal counsel" for Darling's competitors to review its Trade Secrets, but also all "paralegals, secretaries, clerical, regular and temporary employees" who work with Darling's competitors in-house counsel. That is troubling for a number of reasons. As just one example, corporate counsel is often involved in reviewing, discussing, and advising on business, growth, and pricing strategies. Thus, if Darling produced the information you are seeking, Darling would be forced to produce Trade Secret information that could be used by its competitors in creating their business, growth, and pricing plans. And, while the Protective Order states that the information cannot be used outside of the litigation, we do not see how a lawyer (or her employees) can simply erase from her memory what she learned from Darling's Trade Secrets.

Further, Paragraph 6(c) allows Darling's competitors to view its Trade Secrets so long as the persons to whom the information is being provided is a witness or deponent. Given the nature of your clients' claims, the "witnesses and deponents" likely include the very people Darling would never want to view its Trade Secrets, including officers, directors, and managers responsible for sales, marketing, and/or pricing. Moreover, as written, the employees can see the documents outside the deposition/trial context so long as the attorney purportedly believes that reviewing the documents are reasonably necessary to "prepare." Further, we do not know what a "witness" means in this context since it is clearly someone other than a deponent. This creates further risk. Again, while we understand that the Protective Order purportedly limits the use of the information, Darling cannot assume or take the risk that its competitors forget what they learn from Darling's Trade Secrets.

Collectively, these and other gaps in the Protective Order make it too easy for Darling's competitors to learn the company's Trade Secrets. Darling is not required to incur the risk of having its Trade Secrets divulged to a competitor, particularly in litigation for which it is not a party.

We can discuss this more next week.

Steven