# EXHIBIT 6

**From:** Rosenwasser, Steven J. (Shld-ATL-LT) <Steven.Rosenwasser@gtlaw.com>
**Sent:** Friday, February 23, 2024 4:12 AM
**To:** Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Kenneth.Racowski@hklaw.com; Caitlin.Saladrigas@hklaw.com; Dudley, Alexander M (FTL - X27806) <Alexander.Dudley@hklaw.com>; Swain, Martell R (FTL - X27992) <Martell.Swain@hklaw.com>
**Cc:** Eye, William E. (Assoc-ATL-LT) <eyew@gtlaw.com>
**Subject:** API / Darling Ingredients

Romeo,

Good morning. We have reviewed the Court's February 22, 2024, Order relating to Motion to Enforce Subpoena Directed to Non-Party Darling Ingredients, Inc. ("Darling"). The Court has Ordered the parties "to immediately engage in good faith discussions to resolve the disputes concerning this discovery." Darling intends to fully comply with the Court's Order. Therefore, we are writing to start the conferral process.

**First**, the Court's Order directs that "[t]he parties are expected to review **every** Request and address the concerns of each party regarding the same." *See* Order at 6. Thus, we need to confer on the scope of each of the Requests. Darling has previously stated that each of the Requests, as written, is overly broad and unduly burdensome. As set forth in our conferral letters and briefing, we have asked API to please send us revised Requests that are more narrowly tailored to the case. Through this email, we are reiterating that request. Can you please go through <u>each</u> of the Requests and send us a revised Request that is more narrowly tailored both in scope and time frame? Darling notes that the Court has already identified certain Requests as "overbroad and not proportional," including Request Nos. 5, 6, 13, 14, and 15. *Id.* at 4-5. The Court also noted that "[n]arrowing of other Requests may be appropriate." *Id.* at 5. Given the 21-day conferral period, we ask that you please

send us revised Requests by no later than the close of business on Monday Feb. 26.

**Second**, the Court found "that Darling has legitimate confidentiality concerns that must be addressed." *Id.* at 5. The Court then advised that "the parties should negotiate additional protections that may be needed to satisfy Darling's concerns." *Id.* at 6. On this issue, Darling has re-review the Protective Order and requests that, with respect to any documents, data, or information (together, "Documents") Darling produces in response to the Subpoena, Paragraph 6 be modified to read as follows:

"Highly Confidential Discovery Material shall be disclosed, summarized, described, characterized, or otherwise communicated or made available, in whole or in part, only to the following persons and only for use in connection with the Litigation and in accordance with this Protective Order:

a. Outside counsel who are attorneys of record for a named Party in this Litigation and the paralegals, secretaries, clerical, regular and temporary employees and service vendors of such counsel (including outside copying and litigation support services) who are assisting with the Litigation. For the avoid of doubt, this subsection does not permit in-house counsel to obtain, review, and/or receive any Highly Confidential Discovery Material or any summaries, compilations, descriptions, or discussions thereof.
b. Subject to Paragraph 8, experts or consultants who have been retained by outside counsel of record for a named Party in this Litigation and the paralegals, secretaries, clerical, regular and temporary employees and service vendors of such experts or consultants (including outside copying and litigation support services) who are assisting with the Litigation.
c. Subject to Paragraph 9, Highly Confidential Discovery Material may be shown to a witness while he/she is testifying in a deposition, hearing, or at trial if such witness has direct personal knowledge of the specific information being shown to the witness. Before any witness is shown Highly Confidential Discovery Material, counsel must first make reasonable efforts to establish that the witness has direct personal knowledge of the Highly Confidential Discovery Material. Further, the witness shall only be shown the portion of the Highly Confidential Discovery Material that he/she (i) has direct personal knowledge of and (ii) is relevant to his/her testimony (all other portions of the Highly Confidential Discovery Material shall be redacted). If, during the examination, it becomes evident that the witness does not have direct personal knowledge of the Highly Confidential Discovery Material, counsel must immediately cease all questions relating thereto.
d. Any person indicated on the face of a document or accompanying cover letter, email, or other communication to be the author, addressee, or an actual recipient of the document (or indicated as a blind copy recipient in such document/communication's metadata); any person indicated as the custodian of the document/communication in corresponding metadata or as confirmed by the Producing Party; or, in the case of meeting meetings and presentations, an attendee of the meeting;
e. Professional vendors and mock jurors retained by counsel for a Party to whom it is reasonably necessary to disclose the information for these actions and who agree to maintain the confidentiality of such Highly Confidential Discovery Material and sign the undertaking in the form attached hereto as Exhibit A; provided, however, that, outside of their work on this Litigation, no such person can have worked as an employee, agent, expert, and/or consultant

      for a Competitor (as that term is defined in Paragraph 8) at any time since January 1, 2023;

  f. The Court, persons employed by the Court, and court reporters transcribing any hearing, trial, or deposition in this Litigation or any appeal therefrom; and

  g. Any other person only upon (i) order of the Court entered upon notice of the Parties and the Producing Party, or (ii) written stipulation of, or statement on the record by, the Producing Party who provided the Highly Confidential Discovery Material being disclosed, and provided that such person signs an undertaking in the form attached as Exhibit A hereto."

Additionally, we request that, with respect to Documents Darling produces in response to the Subpoena, Paragraph 8 be amended to read:

"Notwithstanding Paragraphs 5(C) and 6(B), Confidential or Highly Confidential Discovery Material shall only be provided to persons listed therein only to the extent necessary for such expert or consult to prepare a written opinion, to prepare to testify, or to assist counsel in this Litigation, provided that such expert or consultant, other than for this Litigation, (i) has not, since January 1, 2023, worked as an employee, independent contractor, expert, or consultant of any Competitor (as defined below) or potential transaction counterparty of the Producing Party designating the Confidential or Highly Confidential Discovery Material; (ii) has no current intention of working as an employee, independent contractor, expert or consultant for any Competitor or potential transaction counterparty of the Producing Party designating the Confidential or Highly Confidential Discovery Material; and (iii) is using said Confidential or Highly Confidential Discovery Material pursuant to the terms of this Protective Order; and further provided that such expert or consultant agrees to be bound by the terms of this Protective Order by signing an undertaking in the form attached as Exhibit A hereto. Counsel for the Party showing providing, or disclosing Confidential or Highly Confidential Discovery Material to any person required to execute an undertaking pursuant to this paragraph shall be responsible for obtaining and retaining such signed undertaking before provision of the Confidential or Highly Confidential Discovery Material to such expert or consultant. Under no circumstances shall an expert or consultant who is a Competitor of the Producing Party, or who has provided services or intends to provide any services to any Competitor of the Producing Party at any time since January 1, 2023, be provided access to Confidential or Highly Confidential Discovery Material absent further order of the Court or consent of the Producing Party. "Competitors" are persons or entities who are engaged in the animal rendering business whether as a renderer, supplier, or customer."

Finally, we ask that Paragraph 22 be amended to read:

"In the event that any Confidential or Highly Confidential Discovery Material is used in open court during any court proceeding or lodged as a trial exhibit, the material shall lose its confidential status and become part of the public record, unless the Producing Party applies for and obtains an order from this Court specifically maintaining the confidential status of particular material. Prior to any court proceeding in which Confidential or Highly Confidential Discovery Material is to be used, counsel for the Parties shall confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of such Confidential or Highly Confidential Discovery Materials. Further, prior to any court proceeding in which a non-party's Confidential or Highly Confidential Discovery Material is to be used, the Party seeking to use such material shall provide the

non-party who produced the Confidential or Highly Confidential Discovery Materials with at least thirty days written notice of the Party's intention to use Confidential or Highly Confidential Discovery Materials in court or as a trial exhibit and provide such non-party an opportunity to seek an Order from this Court (i) protecting its confidentiality designation notwithstanding its use in a court proceeding or as a trial exhibit and (ii) implementing any other protections that are reasonably necessary to protect against the public disclosure of the Confidential or Highly Confidential Discovery Material"

**Third**, the Court held that "[t]he possible reimbursement of expenses for compliance with discovery requests is not off the table." On the issue of costs, we propose to proceed as follows:

1. The parties will confer, in good faith, on revising the Requests.
2. Once the Requests are revised, the parties will negotiate, in good faith, on custodians and an initial set of potential keywords.
3. Once custodians and an initial set of keywords are agreed upon, Darling will endeavor to determine (i) the amount of data that needs to be moved from Darling's IT systems to an outside vendor to place on a document review platform and (ii) the cost of that extraction and ingestion (as well as the hosting of the data during the review and thereafter if you claim it needs to stay on the platform).
4. The parties will then confer, in good faith, on whether and to what extent API will pay the outside vendor's costs for extraction, ingestion, and hosting.
5. Assuming an agreement on costs can be reached, Darling will have the data extracted and ingested by its once vendor. Thereafter, Darling will run keyword "hit" reports and, if any keywords "hit" too many terms or result in excessive false positives, the parties will meet and confer on those terms.
6. Once the parties know the volume of documents to be reviewed and can reasonably estimate the attorneys' fees involved, the parties will confer on whether and to what extent API will reimburse Darling for its attorneys' fees.

Please let me know if you are agreeable to this process.

Thanks,

Steven