# EXHIBIT 7

**From:** Romeo.Quinto@hklaw.com <Romeo.Quinto@hklaw.com>
**Sent:** Friday, March 1, 2024 2:39 PM
**To:** Rosenwasser, Steven J. (Shld-ATL-LT) <Steven.Rosenwasser@gtlaw.com>;
Kenneth.Racowski@hklaw.com; Caitlin.Saladrigas@hklaw.com; Alexander.Dudley@hklaw.com;
Martell.Swain@hklaw.com
**Cc:** Eye, William E. (Assoc-ATL-LT) <eyew@gtlaw.com>
**Subject:** RE: API / Darling Ingredients

**\*EXTERNAL TO GT\***

Good afternoon, Steven,

Pursuant to the Court's Order, API is responding with concrete proposals that have been crafted in good faith to resolve our discovery disputes. API disagrees with and refuses to engage Darling's inaccurate reading of the Court's order in your February 23 email, including the self-serving "process" you lay out based on that selective reading, and instead seeks a productive discussion to reach amicable resolutions on each of the Requests without the need for additional Court intervention. API expects Darling to reciprocate those good faith negotiations.

With this context in mind, please find below our proposals. After you have a chance to discuss with your client, we would like to schedule a call discuss your client's position and any questions related to same. Please advise as your availability the week of March 4, 2024, for a call.

I. **SCOPE OF THE REQUESTS**

**Requests 1–3**
  a. ***In-Market Data***
      API proposes to narrow the temporal scope of the in-Market transactional data sought by Requests 1 and 2 from January 1, 2014, through May 2022. This is consistent with the Court's January 24, 2024, Order on Tyson's transactional data [ECF No. 110]. With respect to the underlying data points, API requires a better understanding of the manner in which Darling maintains its transactional data and the associated costs and burden for accessing and producing same. To do so, the parties should meaningfully confer with full transparency regarding Darling's data continuity and capabilities.

  b. ***Out-of-Market Data***
      The Court specifically stated that "out-of-market data, to some degree, is relevant and

discoverable." Order at 5. Accordingly, API proposes to narrow the temporal scope of the out-of-Market data from Closing through May 2022. Further, for Request 1, API proposes to narrow the out-of-Market data to the following poultry processors:

- Tyson
- Pilgrim's Pride Corporation
- Wayne Farms
- Koch Foods
- Mar-Jac Poultry
- Sanderson Farms
- Perdue Farms
- AlaTrade

For Request 2, API proposes that Darling identify its top three (3) out-of-Market rendering plants by volume. For each of these three plants, API proposes that Darling produce transactional data for its top three (3) pet food company customers.

Darling's production of out-of-Market data will follow and be subject to the parties' conferral on Darling's data continuity and capabilities as discussed above.

## Request 4

Although the Court did not identify Request 4 as one that needed to be narrowed, API will in good-faith offer to narrow the scope. API proposes that Darling produce its written and final form strategic analyses, strategic planning, and/or impact assessment documents related to or discussing: (1) changes and/or any impacts to Darling following and/or in response to Tyson's acquisition of API; and/or (2) reasons and/or strategy for acquiring Valley Ingredients. API's proposal significantly limits the subject matter of the responsive documents and does not contemplate conducting ESI custodial searches because Darling's written and final version strategic analyses, strategic planning, and/or impact assessment documents should be saved or stored in a central location such that they are accessible via a go-get search (e.g., a PowerPoint presentation to Darling's board of directors).

## Requests 5 and 6

The Court noted that Darling "has failed to engage Plaintiffs' offers to negotiate reasonable limitations." Order at 4. Further, "Plaintiffs specifically offered to limit certain of the requests. The record does not reflect that these options were fully explored by the parties." *Id.* at 5. API invites Darling to meaningfully collaborate on the ESI custodial searches required for Requests 5 and 6 that seek communications with or about Tyson. To narrow the scope of Requests 5 and 6, API requests Darling identify a reasonable number of custodians who have sufficient levels of managerial responsibilities and would have been in direct communication with Tyson and responsible for contracting with Tyson. The same set of custodians can be used for all Requests that seek ESI custodial data. After Darling identifies a reasonable number of custodians, API proposes that the following initial search terms be ran across their custodial data:

- ("Tyson" OR "River Valley" OR "RVI") AND ("API" OR "American Proteins" OR "AMPRO" OR "Bagwell" OR "Hull" OR "Mabe" OR (Mark /2 Ham))
- ("Tyson" OR "River Valley" OR "RVI") AND (pric* OR "volume" OR "pet market" OR "render market" OR "poultry market" OR "chicken market" OR compet*) AND ("meal" OR "fat"))

The search terms are specifically limited to the issues in this litigation and should not uncover an

overbroad or burdensome quantity of responsive communications from the limited set of custodians. Particularly for these Requests, Darling, as a direct competitor of Tyson, is not expected to have an extensive volume of responsive communications. Nonetheless, after Darling runs the initial search terms, API is willing to collaborate with Darling to avoid undue burden. To do so, API requires transparency regarding the volume of hits related to these terms and a similar willingness to consider revised sets of terms. As stated during our prior conferrals, we have successfully engaged in this process with the vast majority of subpoena recipients and see no reason why API and Darling cannot arrive at a mutually agreeable volume of responsive documents.

## Request 7

Although the Court did not identify Request 7 as one that needed to be narrowed, API will in good faith offer to narrow the scope. API proposes to narrow Request 7 via a reasonable number of custodians identified by Darling and search terms. API proposes the following initial search terms:

- (acqui* OR "deal" OR purchas* OR "run" OR operat*) AND ("Tyson" OR "River Valley" OR "RVI" ) AND ("plant" OR "facility" OR "location" OR "Cumming" OR "Alma" OR "Cuthbert" OR "Hanceville" OR "Bagwell" OR "Hull" OR "Mabe" OR (Mark /2 Ham))

The search terms are specifically limited to the issues this litigation and should not uncover an overbroad or burdensome quantity of responsive communications from the limited set of custodians. Nonetheless, after Darling runs the initial search terms, API is more than willing to revise searches in collaboration with Darling to the extent there is a significant population of responsive communications.

## Request 8

Although the Court did not identify Request 8 as one that needed to be narrowed, API will in good faith offer to narrow the scope. API proposes that Darling produce documents related to its participation in the Poultry Protein & Fat Council ("PPFC") of the U.S. Poultry & Egg Association and in the North American Renderers Association ("NARA") where Tyson was discussed from January 1, 2017, through the present. API has evidence that Tyson engaged in anticompetitive conduct that relates to this lawsuit at a PPFC meeting. Moreover, each renderer attending PPFC or NARA typically only sends one representative per meeting. Accordingly, it is not burdensome for Darling to identify its PPFC and NARA representative(s) and collect documents from this individual(s) that pertain to PPFC and NARA meetings over the limited period of time.

## Request 9

Although the Court did not identify Request 9 as one that needed to be narrowed, API will in good faith offer to narrow the scope. API proposes to narrow Request 9 via a reasonable number of custodians identified by Darling and search terms. API proposes the following initial search terms:

- ("Tyson" OR "River Valley" OR "RVI") AND ("poultry" OR "chicken") AND (agree* OR contract* OR commit* OR negotiat*)

The search terms are specifically limited to the issues in this litigation and should not uncover an overbroad or burdensome quantity of responsive communications from the limited set of custodians. Particularly for Request 9, Darling and Tyson are competitors such that there should not be extensive contracting occurring between them. Nonetheless, after Darling runs the initial search

terms, API is willing to collaborate with Darling to avoid undue burden. To do so, API requires transparency regarding the volume of hits related to these terms and a similar willingness to consider revised sets of terms. As stated during our prior conferrals, we have successfully engaged in this process with the vast majority of subpoena recipients and see no reason why API and Darling cannot arrive at a mutually agreeable volume of responsive documents.

## Request 10

Although the Court did not identify Request 10 as one that needed to be narrowed, API will in good faith offer to narrow the scope. API proposes to narrow Request 10 via a reasonable number of custodians identified by Darling and search terms. API proposes the following initial search terms:

-
- ("Tyson" OR "River Valley" OR "RVI" OR "API" OR "American Proteins" OR "AMPRO") AND ("lawsuit" OR "litigation" OR disput* OR "antitrust")

The search terms are specifically limited to the issues in this litigation and should not uncover an overbroad or burdensome quantity of responsive communications from the limited set of custodians. Nonetheless, after Darling runs the initial search terms, API is willing to collaborate with Darling to avoid undue burden. To do so, API requires transparency regarding the volume of hits related to these terms and a similar willingness to consider revised sets of terms. As stated during our prior conferrals, we have successfully engaged in this process with the vast majority of subpoena recipients and see no reason why API and Darling cannot arrive at a mutually agreeable volume of responsive documents.

## Request 11

Although the Court did not identify Request 11 as one that needed to be narrowed, API will in good faith offer to narrow the scope. API proposes to narrow Request 11 via a reasonable number of custodians identified by Darling and search terms. API proposes the following initial search terms:

- (pric* OR "volume" OR "pet market" OR "render market" OR "poultry market" OR "chicken market") AND ( "meal" OR "fat") AND (competition* OR compete* OR competing* OR monopol* OR supply* OR demand*)

The search terms are specifically limited to the issues in this litigation and should not uncover an overbroad or burdensome quantity of responsive communications from the limited set of custodians. Moreover, Request 11 is already temporally limited from Closing to the present. Nonetheless, after Darling runs the initial search terms, API is willing to collaborate with Darling to avoid undue burden. To do so, API requires transparency regarding the volume of hits related to these terms and a similar willingness to consider revised sets of terms. As stated during our prior conferrals, we have successfully engaged in this process with the vast majority of subpoena recipients and see no reason why API and Darling cannot arrive at a mutually agreeable volume of responsive documents.

-
## Request 12

Darling's prior position was that API should seek these documents from Tyson. The Court disagreed, explaining that "the fact that Plaintiffs may be able to obtain similar information from other sources does not preclude Plaintiffs from seeking that information from Darling." Order at 5. However, as a compromise, API will narrow the scope of Request 12 to written contracts and agreements between

Darling and Tyson. API will forego the "purchase orders" and "other arrangements" provided that Darling's transactions with Tyson will be produced in the transactional data as discussed above. To the extent Darling and Tyson do not have any written contracts and agreements, Darling should simply confirm that it is not in possession, custody, or control of any such documents.

**Request 13**

API proposes to narrow the scope of Request 13 to written contracts and agreements between Darling and any Poultry Processor in the Market pertaining to the purchase and sale of Raw Material Supply. Accordingly, the proposed narrowing addresses Darling's concern of having to search through custodial ESI for any type of agreement or arrangement, limits the subject matter of the contracts and agreements, and significantly reduces the volume of responsive documents by foregoing the individual purchase orders. Again, API is offering this proposal provided that Darling's transactions with in-Market Poultry Processors will be reflected in the transactional data.

**Requests 14 and 15**

API proposes to narrow the scope of Requests 14 and 15 to written and final reports, surveys, studies, articles or analyses authored by or on behalf of Darling that discuss: (1) the availability of Raw Material Supply for Darling and/or other poultry renderers in the industry, including, but not limited to, the impact of consolidation within the industry as well as the vertical integration of poultry processors, (2) the availability of Poultry Rendering Outputs for pet food customers of Darling and/or other poultry renderers in the industry and in particular, the lack of substitutability for Poultry Rendering Outputs, (3) pricing in the poultry rendering industry, and/or (4) decreasing fat yields in the poultry rendering industry. The proposal significantly narrows any burden on Darling by limiting the authorship and subject matter of the requested reports, surveys, studies, articles, and analyses. Moreover, the narrowing does not contemplate conducting ESI custodial searches because Darling's written and final reports, surveys, studies, and analyses should be saved or stored in a central location such that they are accessible via a go-get search.

II.  MODIFICATIONS TO THE PROTECTIVE ORDER

We are open to pursuing a mutually agreeable amendment to the Protective Order. We have reviewed your proposed edits to the Protective Order, most of which are workable. However, we would like to discuss a few concerns during our meet-and-confer call the week of March 4, 2024.

III.  REIMBURSEMENT OF COSTS

To be clear, the Court's entire ruling on this issue stated:

> The possible reimbursement of expenses for compliance with discovery requests is not off the table. ***The Court will reserve ruling on that issue until discovery is completed***. The Court expects that Plaintiffs will endeavor in good faith to reduce the burden of their Requests. In the end, ***if the Court finds Plaintiffs have sought a dollar's worth of discovery to recover a dime's worth of relevant evidence, Plaintiffs can expect to bear some of the costs of the discovery***.

Order at 6 (emphasis added). Accordingly, it is premature at this time for API to agree to any reimbursement of costs. As we hope you can appreciate, API has made significantly narrowed the scope of its Requests. These limitations should reduce the burden on Darling such that cost sharing may be unnecessary.

We look forward to finding resolution.

Best,

Romeo

**Romeo S. Quinto, Jr.** | **Holland & Knight**
Partner
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700 | Chicago, Illinois 60606
Phone +1.312.715.5802 | Fax +1.312.578.6666 | Cell +1.312.420.9835
romeo.quinto@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Steven.Rosenwasser@gtlaw.com <Steven.Rosenwasser@gtlaw.com>
**Sent:** Wednesday, February 28, 2024 9:07 AM
**To:** Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Dudley, Alexander M (FTL - X27806) <Alexander.Dudley@hklaw.com>; Swain, Martell R (FTL - X27992) <Martell.Swain@hklaw.com>
**Cc:** eyew@gtlaw.com
**Subject:** RE: API / Darling Ingredients

*[External email]*
Romeo,

Good morning. In addition to the questions/issues below, we have two other questions. We are working to try to identify what data is reasonably available. However, we remain unclear as to what specific data you are seeking since the phrase "transactional data" is not defined in the Subpoena. Can you please let me know what specific fields of data you are seeking in Request Nos. 1 and 2 so we can better understand what "transactional data" means? Also, please confirm that you are only seeking transactional data for the Market, as that term is defined in the Subpoena.

Thanks,

Steven

---

**From:** Rosenwasser, Steven J. (Shld-ATL-LT) <Steven.Rosenwasser@gtlaw.com>
**Sent:** Friday, February 23, 2024 4:12 AM
**To:** Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Kenneth.Racowski@hklaw.com; Caitlin.Saladrigas@hklaw.com; Dudley, Alexander M (FTL - X27806)

<[Alexander.Dudley@hklaw.com](mailto:Alexander.Dudley@hklaw.com)>; Swain, Martell R (FTL - X27992) <[Martell.Swain@hklaw.com](mailto:Martell.Swain@hklaw.com)>
**Cc:** Eye, William E. (Assoc-ATL-LT) <[eyew@gtlaw.com](mailto:eyew@gtlaw.com)>
**Subject:** API / Darling Ingredients

Romeo,

Good morning. We have reviewed the Court's February 22, 2024, Order relating to Motion to Enforce Subpoena Directed to Non-Party Darling Ingredients, Inc. ("Darling"). The Court has Ordered the parties "to immediately engage in good faith discussions to resolve the disputes concerning this discovery." Darling intends to fully comply with the Court's Order. Therefore, we are writing to start the conferral process.

**First**, the Court's Order directs that "[t]he parties are expected to review **every** Request and address the concerns of each party regarding the same." *See* Order at 6. Thus, we need to confer on the scope of each of the Requests. Darling has previously stated that each of the Requests, as written, is overly broad and unduly burdensome. As set forth in our conferral letters and briefing, we have asked API to please send us revised Requests that are more narrowly tailored to the case. Through this email, we are reiterating that request. Can you please go through <u>each</u> of the Requests and send us a revised Request that is more narrowly tailored both in scope and time frame? Darling notes that the Court has already identified certain Requests as "overbroad and not proportional," including Request Nos. 5, 6, 13, 14, and 15. *Id.* at 4-5. The Court also noted that "[n]arrowing of other Requests may be appropriate." *Id.* at 5. Given the 21-day conferral period, we ask that you please send us revised Requests by no later than the close of business on Monday Feb. 26.

**Second**, the Court found "that Darling has legitimate confidentiality concerns that must be addressed." *Id.* at 5. The Court then advised that "the parties should negotiate additional protections that may be needed to satisfy Darling's concerns." *Id.* at 6. On this issue, Darling has re-review the Protective Order and requests that, with respect to any documents, data, or information (together, "Documents") Darling produces in response to the Subpoena, Paragraph 6 be modified to read as follows:

"Highly Confidential Discovery Material shall be disclosed, summarized, described, characterized, or otherwise communicated or made available, in whole or in part, only to the following persons and only for use in connection with the Litigation and in accordance with this Protective Order:

   a. Outside counsel who are attorneys of record for a named Party in this Litigation and the paralegals, secretaries, clerical, regular and temporary employees and service vendors of such counsel (including outside copying and litigation support services) who are assisting with the Litigation. For the avoid of doubt, this subsection does not permit in-house counsel to obtain, review, and/or receive any Highly Confidential Discovery Material or any summaries, compilations, descriptions, or discussions thereof.
   b. Subject to Paragraph 8, experts or consultants who have been retained by outside counsel of record for a named Party in this Litigation and the paralegals, secretaries, clerical, regular and temporary employees and service vendors of such experts or consultants (including outside copying and litigation support services) who are assisting with the Litigation.

c. Subject to Paragraph 9, Highly Confidential Discovery Material may be shown to a witness while he/she is testifying in a deposition, hearing, or at trial if such witness has direct personal knowledge of the specific information being shown to the witness. Before any witness is shown Highly Confidential Discovery Material, counsel must first make reasonable efforts to establish that the witness has direct personal knowledge of the Highly Confidential Discovery Material. Further, the witness shall only be shown the portion of the Highly Confidential Discovery Material that he/she (i) has direct personal knowledge of and (ii) is relevant to his/her testimony (all other portions of the Highly Confidential Discovery Material shall be redacted). If, during the examination, it becomes evident that the witness does not have direct personal knowledge of the Highly Confidential Discovery Material, counsel must immediately cease all questions relating thereto.

d. Any person indicated on the face of a document or accompanying cover letter, email, or other communication to be the author, addressee, or an actual recipient of the document (or indicated as a blind copy recipient in such document/communication's metadata); any person indicated as the custodian of the document/communication in corresponding metadata or as confirmed by the Producing Party; or, in the case of meeting meetings and presentations, an attendee of the meeting;

e. Professional vendors and mock jurors retained by counsel for a Party to whom it is reasonably necessary to disclose the information for these actions and who agree to maintain the confidentiality of such Highly Confidential Discovery Material and sign the undertaking in the form attached hereto as Exhibit A; provided, however, that, outside of their work on this Litigation, no such person can have worked as an employee, agent, expert, and/or consultant for a Competitor (as that term is defined in Paragraph 8) at any time since January 1, 2023;

f. The Court, persons employed by the Court, and court reporters transcribing any hearing, trial, or deposition in this Litigation or any appeal therefrom; and

g. Any other person only upon (i) order of the Court entered upon notice of the Parties and the Producing Party, or (ii) written stipulation of, or statement on the record by, the Producing Party who provided the Highly Confidential Discovery Material being disclosed, and provided that such person signs an undertaking in the form attached as Exhibit A hereto."

Additionally, we request that, with respect to Documents Darling produces in response to the Subpoena, Paragraph 8 be amended to read:

"Notwithstanding Paragraphs 5(C) and 6(B), Confidential or Highly Confidential Discovery Material shall only be provided to persons listed therein only to the extent necessary for such expert or consult to prepare a written opinion, to prepare to testify, or to assist counsel in this Litigation, provided that such expert or consultant, other than for this Litigation, (i) has not, since January 1, 2023, worked as an employee, independent contractor, expert, or consultant of any Competitor (as defined below) or potential transaction counterparty of the Producing Party designating the Confidential or Highly Confidential Discovery Material; (ii) has no current intention of working as an employee, independent contractor, expert or consultant for any Competitor or potential transaction counterparty of the Producing Party designating the Confidential or Highly Confidential  Discovery Material; and (iii) is using said Confidential or Highly Confidential Discovery Material pursuant to the terms of this Protective Order; and further provided that such expert or consultant agrees to be bound by the terms of this Protective Order by signing an undertaking in the form attached as

Exhibit A hereto. Counsel for the Party showing providing, or disclosing Confidential or Highly Confidential Discovery Material to any person required to execute an undertaking pursuant to this paragraph shall be responsible for obtaining and retaining such signed undertaking before provision of the Confidential or Highly Confidential Discovery Material to such expert or consultant. Under no circumstances shall an expert or consultant who is a Competitor of the Producing Party, or who has provided services or intends to provide any services to any Competitor of the Producing Party at any time since January 1, 2023, be provided access to Confidential or Highly Confidential Discovery Material absent further order of the Court or consent of the Producing Party. "Competitors" are persons or entities who are engaged in the animal rendering business whether as a renderer, supplier, or customer."

Finally, we ask that Paragraph 22 be amended to read:

"In the event that any Confidential or Highly Confidential Discovery Material is used in open court during any court proceeding or lodged as a trial exhibit, the material shall lose its confidential status and become part of the public record, unless the Producing Party applies for and obtains an order from this Court specifically maintaining the confidential status of particular material. Prior to any court proceeding in which Confidential or Highly Confidential Discovery Material is to be used, counsel for the Parties shall confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of such Confidential or Highly Confidential Discovery Materials. Further, prior to any court proceeding in which a non-party's Confidential or Highly Confidential Discovery Material is to be used, the Party seeking to use such material shall provide the non-party who produced the Confidential or Highly Confidential Discovery Materials with at least thirty days written notice of the Party's intention to use Confidential or Highly Confidential Discovery Materials in court or as a trial exhibit and provide such non-party an opportunity to seek an Order from this Court (i) protecting its confidentiality designation notwithstanding its use in a court proceeding or as a trial exhibit and (ii) implementing any other protections that are reasonably necessary to protect against the public disclosure of the Confidential or Highly Confidential Discovery Material"

**Third**, the Court held that "[t]he possible reimbursement of expenses for compliance with discovery requests is not off the table." On the issue of costs, we propose to proceed as follows:

1. The parties will confer, in good faith, on revising the Requests.
2. Once the Requests are revised, the parties will negotiate, in good faith, on custodians and an initial set of potential keywords.
3. Once custodians and an initial set of keywords are agreed upon, Darling will endeavor to determine (i) the amount of data that needs to be moved from Darling's IT systems to an outside vendor to place on a document review platform and (ii) the cost of that extraction and ingestion (as well as the hosting of the data during the review and thereafter if you claim it needs to stay on the platform).
4. The parties will then confer, in good faith, on whether and to what extent API will pay the outside vendor's costs for extraction, ingestion, and hosting.
5. Assuming an agreement on costs can be reached, Darling will have the data extracted and ingested by its once vendor. Thereafter, Darling will run keyword "hit" reports and, if any

keywords "hit" too many terms or result in excessive false positives, the parties will meet and confer on those terms.

6. Once the parties know the volume of documents to be reviewed and can reasonably estimate the attorneys' fees involved, the parties will confer on whether and to what extent API will reimburse Darling for its attorneys' fees.

Please let me know if you are agreeable to this process.

Thanks,

Steven

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.