## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| AMERICAN PROTEINS, INC. n/k/a CROSSROADS PROPERTIES A, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2:22-cv-00091-RWS |
| RIVER VALLEY INGREDIENTS, INC., TYSON POULTRY, INC., and TYSON FARMS, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO NON-PARTY DARLING INGREDIENTS INC.'S RULE 45 MOTION FOR REIMBURSEMENT OF FEES AND COSTS INCURRED IN RESPONSE TO SUBPOENA**

API[1] opposes Darling's Rule 45 Motion for Reimbursement of Fees and Costs, and respectfully requests that the Court deny the Motion, because: (1) there is no basis for mandatory fee shifting under Rule 45(d)(2)(B)(ii), (2) API took reasonable steps to prevent "undue burden" for purposes of discretionary fee shifting under Rule 45(d)(1), and (3) Darling's unreasonably litigious conduct, including the

---

[1] API refers, collectively to Plaintiffs American Proteins, Inc. n/k/a Crossroads Properties A, Inc., AMPRO Products, Inc., n/k/a Crossroads Properties B, Inc., and Georgia Feed Products Company, LLC, n/k/a Crossroads Properties C, LLC.

rejection of a reasonable good-faith offer from API, should not be condoned or rewarded.

From the outset, non-party Darling Ingredients Inc. ("Darling") has elevated a preoccupation with quibbling over the potential recovery of fees and costs over any efforts to meaningfully respond to API's subpoena. Had Darling simply engaged in good faith with API to arrive at an agreeable scope of review and production upon receipt of the subpoena, the substantial majority of its fees and costs would never have been incurred.

In the very first communication Darling had with API about the subpoena, Darling ***refused to comply*** unless API would agree, contrary to the default presumption of Rule 45 (that a responding party bears its own fees and costs), to pay ***all*** of Darling's expenses:

> To the extent Darling agrees to produce any documents in response to the Subpoena, any such production will be contingent upon Plaintiffs agreeing, in advance and in writing, to reimburse Darling for ***all*** fees, costs, and expenses it incurs in responding to the Subpoena, including, but not limited to, all ESI-related costs (*e.g.*, ingestion, review, storage, and production) and Darling's attorneys' fees.

(*E.g.* Doc. 76-3 at 6.) (emphasis added). This unreasonably contumacious posture, which afforded no consideration to the necessity or reasonableness of such fees, set the stage for what was to follow—a series of escalating efforts to resist any compliance at all with the subpoena.

Darling's obstructive behavior is the opposite of the approach most non-parties took in this case. As is standard discovery practice, most non-parties instead served their responses and objections to API's requests, and then conferred with API in good faith to reach agreement on an acceptable scope of review and production, without necessitating motion practice, and without claiming entitlement to hundreds of thousands of dollars in legal fees. By instead cooperating in good faith at the outset, these third parties spared all involved time, burden, legal fees, and expenses. While this cooperation no doubt reflected these third parties honoring their discovery obligations in good faith, those parties likely also understood that they could not recover their legal fees incurred in obstructing the subpoenas. This principle serves as a "carrot," if not a "stick," to implement the orderly discovery process contemplated by the federal rules. It would smack of unfairness, and create a perverse incentive, for Darling, by contrast, to "be permitted to run up bills merely because they expect someone else to pay the tab." *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 11425554, at *2–3 (N.D. Ala. Oct. 24, 2018).

While none of Darling's fees are recoverable under Rule 45 given its unreasonably litigious conduct, many of Darling's fees are also unrecoverable because, as is detailed further *infra*, they relate to: (1) purely administrative tasks charged at lawyer rates; (2) tasks unrelated to the API subpoena; and (3) time entries

3

that do not permit API or the Court to determine whether the fees were reasonable—*e.g.*, block-billed or vague entries.

Despite the fact that API denies that Darling has any basis to seek recovery of fees and costs given its conduct in this case, API offered, in a good faith effort to avoid unnecessary motion practice expense, while reserving all rights and denying liability, to reimburse Darling some expenses ostensibly related to compliance with the subpoena. Darling rejected that offer, and persisted in further motion practice, insisting that it was entitled to all of its expenses, even where facially related to its efforts to resist and obstruct the subpoena. Darling's Motion should be denied on the facts and the law, but also to deter litigants from "scorched earth" tactics.[2]

## I.   Factual background.[3]

---

[2] API has requested that Darling reimburse it for the attorneys' fees API incurred related to its motion to compel. (Ex. B.) The parties conferred regarding API's demand on July 31, 2024, and Darling rejected API's request August 2, 2024. API will seek leave from this Court to file a motion for recovery of its fees from Darling.

[3] Darling attached a 22-page declaration from counsel to its Motion. (Doc. 176-1.) That declaration is rife with improper legal arguments, and appears to be an effort to skirt the Court's page limits for supporting briefs.  Courts often strike or disregard such filings. *See e.g.*, *Heal v. Wells Fargo, N.A. as Tr. for WaMu Mortg. Pass-Through Certificates Servs. 2006-PR2 Tr.*, 560 F. Supp. 3d 347, 360 (D. Mass. 2021), *aff'd*, 2023 WL 1872583 (1st Cir. Jan. 17, 2023) (striking myriad paragraphs from affidavit because of "improper legal arguments of statements of law"). *Prudential Ins. Co. of Am. v. Curt Bullock Builders, Inc.*, 626 F. Supp. 159, 164 (N.D. Ill. 1985) ("The court is free to disregard inadmissible argument or conclusion in an affidavit, whether a motion to strike has been filed or not."); *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 810 (N.D. Ind. 2015) (finding plaintiff could not "circumvent the page limits" for one brief by filing another, purportedly, addressing a different issue).

### *a. Darling's subpoena objections, refusal to engage in negotiations, refusal to produce any documents, and the Court's first Order.*

The "year-long" effort referenced by Darling in its motion was a direct result of Darling's refusal to meaningfully engage in narrowing discussions related to the subpoena. In fact, from July 10, 2023 until the Court's February 2, 2024 Order, Darling steadfastly insisted that it had no obligation to produce documents or to cooperate in narrowing the scope of requests. (*E.g.*, Docs. 76-4 through 76-8.) Indeed, despite API's efforts to confer, Darling refused to identify a single custodian, refused to run a single proposed search term or provide any proposed searches of its own, and refused to confirm whether certain responsive documents even existed. (*Id.*) As a result, API filed a motion to compel, then Darling filed a motion to quash. (Docs. 76, 101.) The Court denied Darling's motion as untimely and withheld ruling on API's motion, directing the parties to confer in an effort to agree on an acceptable scope for Darling's response. (Doc. 126 at 4, 6–7.)

The Court's contemporaneous order unequivocally rejected Darling's revisionist argument that it attempted to engage with API: "Darling failed to engage Plaintiffs' offers to negotiate reasonable limitations." (*Id.* at 4.) The Court also found that "invalid positions taken by Darling[,]" drove the parties' failure to resolve some of their issues. (*Id.* at 5.) Those invalid positions included: (1) meritless relevancy objections, (2) meritless objections that the discovery was not properly sought from Darling (versus Tyson), and (3) purported confidentiality concerns offered as a basis

for refusing to cooperate. (*Id.* at 5–6.) Remarkably, of the $217,263 in expenses Darling asks the Court to order API to pay, more than ***$110,000*** in legal fees precede the Court's Order finding Darling's objections to be "invalid." (*Id.* at 5.)

Despite the Court's Order denying Darling's motion to quash, *inter alia*, as untimely, Darling filed a second motion to quash more than four months later. (Doc. 168.) Ironically, the second motion also contained an alternative request that Darling be ordered to **comply** with the subpoena. (Doc. 168 at 9.) That motion contained zero supporting citations and was simply Darling's latest effort to shift all of its expenses onto API by attempting to "engineer" an order of compliance to trigger "mandatory" fee shifting. (*Id.*)[4] Darling leveraged its baseless demand for fees incurred in resisting the subpoena to incur yet further unnecessary fees and delay compliance with the subpoena. (*Id.* at 3.)

Despite being previously admonished by the Court for failing to meaningfully engage with API, Darling failed again to meaningfully confer—as required by the Court for such disputes—before filing the second motion to quash. (*See* Ex. A.) Instead, Darling's counsel e-mailed counsel for API noting Darling's disagreement

---

[4] API advised Darling that it did not think Rule 45(d)(2)(B)(ii) applied to its request. API had, however, agreed to review Darling's fee request under the discretionary provisions of the rule and to provide its response upon review of Darling's fee and cost submissions.  Rather than continuing discussions, Darling hurried off to spin up additional needless motion practice and attempt to "force" an order that would trigger mandatory fee shifting. It appears, given the Court's prompt denial of that motion, that the Court saw through Darling's transparent gamesmanship.

with API's position (addressed one day prior relating to the application of mandatory fee-shifting), and then instructed his team to "wait five minutes" from the time of that e-mail before filing the second motion to quash. (*Id*.)[5] Darling's e-mail to counsel never referenced a contemplated motion, and, as the Darling e-mail thread confirms, Darling's counsel recognized full well that a five-minute delay "wont [sic] matter (despite it being my prior thought)." (*Id*.) The Court promptly denied that motion two business days later without awaiting a response from API.

Throughout its current Motion, Darling attempts to cast its prior motions, all of which were denied, as "largely successful." This characterization is as inaccurate as it is legally insignificant. First, the mandatory fee-shifting provision of Rule 45(d)(2)(B)(ii) is not triggered unless the Court orders production of documents over a party's objections relating to burden. That did not occur here. (Docs. 126, 169, 174.) Second, the simple fact is that the Court denied each one of Darling's motions, and in doing so, made the following observations, which lend no support to Darling's post hoc recharacterization of (a) the merits of its motions and objections and (b) its purported efforts to cooperate with API:

---

[5] Darling's counsel may argue API had to notify Darling of this Court's Standing Order. That argument rings hollow for three reasons: (1) Darling had not even hinted to API that it planned to file the second motion (affording no opportunity for API to raise the standing order), (2) during the parties' meet and confer Darling's counsel touted significant experience practicing before this Court, and (3) Darling had already engaged in motion practice before the Court in this very matter, so that experience certainly should have familiarized Darling with the Court's procedures.

- "Darling has taken a firm position that no discovery should be required under the present subpoena and has failed to engage Plaintiffs' offers to negotiate reasonable limitations." (Doc. 126 at 4)

- "Plaintiffs offered to meet and confer on each of its Requests and to take reasonable steps to avoid any undue burden on Darling. Plaintiffs specifically offered to limit certain of the requests." (*Id.* at 5.)

- "The failure of the parties resolve some the issues was due, in part, to invalid positions taken by Darling that the Court will address below." (*Id.*)

- "The Court finds that many, if not all, of Darling's relevance objections lack merit." (*Id.*)

- Darling's "confidentiality concerns are not a valid basis for declining to produce discovery." (*Id.* at 6.)

- "The Court denied Darling's Second Motion to Quash as in violation of the Court's Standing Order Regarding Civil Litigation and the Court's February 26, 2024 ruling and express instruction." (Doc. 174 at 2.)

Conversely, and as the Court noted (Doc. 126 at 4 (observing API's "offer to negotiate reasonable limitations"), API repeatedly sought to work collaboratively with Darling to arrive at a mutually agreeable review and production universe. This included:

- API's first discovery letter to Darling following receipt of Darling's objections, which stated: "API intends to negotiate a reasonable deadline for production of information and documents . . . . API remains willing to meet and confer on each of the Requests to better understand the alleged burden to Darling and take reasonable steps to avoid undue burden . . . . API is also, of course, willing to discuss a reasonable set of search terms and custodians to whose documents the search terms would be applied . . . . Of course, API is willing to negotiate reasonable discovery parameters." (Doc. 76-4 at 3–4.)

8

- API's second letter to Darling following a meet-and-confer, stated: "[W]e think the appropriate approach would be for Darling to move for a protective order, which API would not oppose (subject to review) . . . . API proposes, contingent on an agreement regarding custodians, a search of those custodial documents for the following terms," among other suggestions for addressing Darling's purported concerns. (Doc. 76-5 at 3–4.)

- Even after Darling ended discussions about the subpoena and stated API "must either move to enforce the Subpoena as written or server a new subpoena," API sought "one more attempt to find resolution." (Doc. 76-7 at 2.) API implored Darling that "[i]f there is any progress to be made on any of these issues—any progress whatsoever—so that we can resolve or at least narrow the disputed issues, please let us know by November 20, 2023 . . . ." (*Id*.)

Alas, as the Court has already found, Darling failed to meaningfully engage with or fully explore working with API to resolve any issues without Court intervention. (Doc. 126 at 4–5.)

### b. *Darling's reimbursement demand and API's review of that demand*.

After the Court denied Darling's second motion to quash, Darling sent API a fee demand seeking reimbursement of *all* of its fees and costs. (*See* Ex. B.) API undertook a detailed review of Darling's supporting materials to assess the reasonableness of the request. (*Id*.; Ex. C ¶¶ 5–8.) Based on that review, API determined the substantial majority of Darling's fees and costs were not reimbursable. Those expenses included:

- Attorneys' fees related to resisting the subpoena—e.g., objecting to produce any documents, litigating the motion to compel, and litigating both motions to quash. (*Id*. ¶ 5.)

- Attorneys' fees related to actions taken entirely for Darling's self-interest— e.g., negotiating and drafting a new protective order, conducting a privilege review, and conducting a confidentiality review. (*Id.*)

- Attorneys' billing for administrative work. (*Id.* ¶ 6.)

- Vague and block-billed entries that made it impossible to determine (1) what legal work was performed, (2) how much time was spent on a task, and (3) whether the time spent or task performed was reasonable. (*Id.* ¶ 6.)

Despite these issues, and to spare API and Darling unnecessary motion practice, API offered in good faith to resolve the matter for $29,500. (Ex. B.)[6] Darling rejected that offer and filed this Motion. (*Id.*)  For the reasons that follow, the Motion should be denied.

## II.   Argument and citation of authority.

### a.  *Legal standard.*

Generally, costs for "production are borne by the producing party." *Culliver v. Ctr. for Toxicology & Env't Health LLC*, 2022 WL 475185, at *4 (N.D. Fla. Feb. 16, 2022) (denying non-party motion for fee shifting). A producing party bears "the burden to establish cost shifting" under Rule 45 is appropriate. *Id.* at *6*; In re Blue Cross*, 2018 WL 11425554, at *3 ("A non-party who moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable." (cleaned up)). The Court has "broad discretion in managing pretrial discovery matters," including matters regarding non-party subpoenas. *Klay v. All Defendants*, 425 F.3d 977, 982

---

[6] API details in Section II.d, *infra*, the support for its tabulation and offer.

(11th Cir. 2005) (cleaned up). The Court's discretion includes determining whether to shift fees under Rule 45. *E.g.*, *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 WL 3956732, at *6 (C.D. Cal. July 12, 2018) (denying motion to shift fees under Rule 45(d)(2)(b)(ii) even though court granted motion to compel). That discretion includes deciding whether the non-party should "bear some *or all* of the expense" associated with the subpoena. *Culliver*, 2022 WL 475185 at *4; *see In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 19919934, at *4 (S.D. Fla. May 23, 2022) ("The amount of compensation under Rules 45(d)(1) and 45(d)(2) is within the court's discretion and generally made after balancing the need for discovery against the burden imposed on the person from whom discovery was sought." (cleaned up)).

### b. Darling is not entitled to "mandatory" reimbursement under Rule 45(d)(2)(B)(ii).

Under Rule 45(d)(2)(B)(ii), "expenses unrelated to compliance with the order compelling production are not compensable." *In re Blue Cross*, 2018 WL 11425554, at *2. Neither are "[u]*nreasonable* expenses." *Id.* (emphasis in original). A non-party is entitled to mandatory fee shifting of only "*significant* expense resulting from compliance" with an order compelling compliance with a subpoena. *Id.*[7]

Here, Darling's production was not compelled by court order for purposes of Rule 45(d)(2)(B)(ii). Rather, Darling's production resulted from a conferral process

---

[7] Significance is informed by a three-factor analysis detailed. Section II.b.iii, *infra*.

directed by the Court, while it held API's motion to compel in abeyance. Thus, Rule 45(d)(2)(B)(ii) does not apply. Regardless, under the relevant three-factor test, Darling did not incur "significant" fees related to compliance with the subpoena, which further vitiates any entitlement to reimbursement under that provision of the rules. Its motion under Rule 45(d)(2)(B)(ii) should be denied.

### i. The Court never granted a motion to compel.

Darling's Motion should be denied because the Court never compelled production in response to the subpoena, which means that Rule 45(d)(2)(B)(ii) simply does not apply. For mandatory fee-shifting under this rule, "it is not enough that a court issues an order which triggers events eventually resulting in a non-party's compliance." *In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *5 (D. Md. Apr. 29, 2019).[8] Courts nationwide have held that mandatory fee shifting under Rule 45(d)(2)(B)(ii) is only available if a court enters "an order compelling production or inspection" or documents. *In re Zantac*, 2022 WL 19919934, at *5; *In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *5 (Rule 45 and caselaw "are clear as to the prerequisite of a court order compelling compliance with a subpoena for Rule 45(d)(2)(B)(ii) to apply."); *Lee v. Virginia State Bd. of Elections*, 2016 WL 6915308,

---

[8] Notably, the only case Darling cites in the section related to mandatory fee shifting expressly states, "a court cannot force a requesting party to pay the relevant 'significant expenses" under Rule [45(d)(2)(B)(ii)] unless the court actually compelled compliance." *Kipperman v. Onex Corp.*, No. 1:05-CV-1242-JOF, 2008 WL 11333467, at *4 (N.D. Ga. Mar. 19, 2008).

at *2 (E.D. Va. Sept. 2, 2016) ("Rule 45(d)(2)(B)(ii) applies only where a court has issued an order compelling production . . . .").

The Court "issued [three] Orders pertaining to the exchange of discovery between [API] and Darling." (Doc. 174 at 2 (citing Docs. 128, 169.) The Court's February 26, 2024 Order denied Darling's motion to quash as untimely and ordered API and Darling to "to immediately engage in good faith discussions to resolve the disputes concerning discovery." (Doc. 128 at 4, 6.) The Court's June 4, 2024 Order denied Darling's "Second Motion to Quash Subpoena or, in the Alternative, Motion for Order Compelling Production." (Doc. 169 at 5.) Later, following Darling's production, the Court denied API's Motion to Compel Compliance with Subpoena. (Doc. 174 at 3.) None of these orders compelled production. (*See generally id.*)

Trying to bypass Rule 45(d)(2)(B)(ii)'s standard, Darling argues the "Court already rejected API's argument" that Darling is not entitled to mandatory fee shifting. (Mot. 22.) But that is not what the Court's orders state. Rather, the first order stated that "[t]he ***possible*** reimbursement of expenses for compliance with discovery requests is not off the table. The Court will reserve ruling on that issue until discovery is completed." (Doc. 169 at 3) (quoting Doc. 128 at 6) (emphasis added). The Court later stated that Darling's production would not amount to a "waiver by Darling as to its ability to seek recovery of a portion of" its fees and costs. (Doc. 169) API has always interpreted these orders, and respectfully submits

that a fair reading supports, that the Court simply reserved to Darling the opportunity to make a showing sufficient to warrant fee shifting under Rule 45—*if* it could make such a showing. Nowhere do the orders suggest that the Court had already resolved that Darling would, in fact, be entitled to fee shifting, leaving only the question of "how much." For the reasons addressed in this brief, API respectfully submits that Darling has *not* made a sufficient showing to warrant fee shifting.[9]

Because there is no predicate for mandatory fee shifting, Darling's motion for reimbursement under Rule 45(d)(2)(B)(ii) should be denied.

> ii. *Most of Darling's expenses were from resisting the subpoena, not "resulting from compliance."*

Even if Darling had a basis to seek fee shifting under Rule 45(d)(2)(B)(ii), which it does not, Darling would not be entitled to reimbursement for two reasons. *First*, more than 75% of Darling's purported expense are related to **opposing** the subpoena or other self-interested acts—i.e., those unrelated to compliance. *Second*, those fees incurred by Darling that could arguably be characterized as relating to compliance are not "significant" under applicable law. In the Eleventh Circuit, the

---

[9] Notably, the Court denied Darling's motion before API could respond and clearly state API's position. (*See* Doc. 168 (Darling's motion); Doc. 169 (Court's Order denying that motion two business days later).) It follows logically that the Court could not have rejected an argument API never presented. Indeed, given the opportunity, API would have clarified that it was not arguing that Darling had "waived" the opportunity to request discretionary fee shifting (while denying that Darling could meet its burden under the discretionary standard). API had simply noted to Darling that the predicate for Rule 45(d)(2)(B)(ii) did not appear to exist.

majority view is that is that expenses a non-party incurs for "*resisting* compliance" are not recoverable. *See, e.g.*, *Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 1:16-CV-2618-TCB-JKL, 2017 WL 11532480, at *3 (N.D. Ga. June 16, 2017) (emphasis in original) (denying non-party's fee-shifting motion under Rule 45 as related to expenses not directly linked to compliance).[10] "Furthermore, attorney's fees incurred in the pursuit of attorney's fees are not subject to shifting under Rule 45(d)(2)(B) because those fees are incurred after discovery has been

---

[10] *See Raymond James & Assocs., Inc. v. Terran Orbital Corp.*, 2020 WL 5367319, at *3 (S.D. Fla. Sept. 8, 2020) (reducing non-party's fee demand by 75% because: (1) "much of the time billed was for legal work related to resisting the subpoena rather than complying with it"; (2) non-party billed for "administrative tasks . . . at an attorney rate"; "(3) block billing, vague billing, and other issues"; (4) time "related to actually complying with the subpoena is excessive"; (5) non-party "and its counsel have caused the production of relevant documents to be unnecessarily difficult and litigious, which necessarily increased their fees incurred"; and (6) the non-party's fees were generally "not reasonable"); *In re Blue Cross*, 2018 WL 11425554, at *2 (N.D. Ala. Oct. 24, 2018) (denying non-party's motion for fees related to non-party's motion to seek fees); *see also Stormans Inc. v. Selecky*, 2015 WL 224914, at *5 (W.D. Wash. Jan. 15, 2015) ("The plain language of Rule 45 provides that non-parties must be protected from significant expenses resulting from *compliance* [with a court order or subpoena]. It is a tenuous proposition, at best, that attorneys' fees incurred *resisting* a subpoena are expenses resulting from compliance."); *In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *9 (D. Conn. Oct. 18, 2017) (finding that legal fees incurred related—directly or indirectly—to its efforts to resist the subpoena were not recoverable); *Barracuda Networks, Inc. v. j2 Glob., Inc.*, 2020 WL 5802372, at *3 (C.D. Cal. July 17, 2020) (denying motion for fees as related to motions practice); *G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 316 (D.D.C. 2016) (finding "unreasonable expense[s] . . . do[] not result from that subpoena," but from "decisions by and on behalf of the non-party led to those unreasonable expenses being incurred.").

completed and are not necessary for compliance with the subpoena." *In re Blue Cross*, 2018 WL 11425554, at *4.

Here, most of Darling's expenses relate to (1) resisting the subpoena or (2) other tasks undertaken for Darling's own self-interest—e.g., demanding a new protective order and conducting multiple levels of privilege and confidentiality review. *See* Section II.d, *supra* (categorizing in detail Darling's entries). Those fees are not recoverable under Rule 45(d)(2)(B)(ii) because they are unrelated to compliance. *E.g.*, *Bridgestone*, 2017 WL 11532480, at *3. Notably, one case Darling cites for the proposition such fees are recoverable under the mandatory provision found the opposite: "[T]he almost $30,000 spent on the fees motion cannot really be said to be an 'expense resulting from compliance' with the subpoena." *Barracuda Networks, Inc.*, 2020 WL 5802372, at *3 (cited at Mot. 23–24). Another case Darling cites relates to recovering expenses under Rule 45(d)(1)—i.e., the Rule about "sanctions," not Rule 45(d)(2)(B)(ii), which relates to "significant expenses resulting from compliance." *In re Zantac*, 2022 WL 19919934, at *7 (distinguishing *Raymond James* case because it applied Rule 45(d)(2)(B)(ii), not Rule 45(d)(1)).

The other two cases Darling cites are unpersuasive because: (1) they provide no textual or caselaw basis for the proposition that expenses unrelated to compliance are recoverable under Rule 45(d)(2)(B)(ii), and (2) they do not engage in the required "ordinary-meaning" analysis to determine "the rule's plain meaning." *Ruiz v. Wing*,

991 F.3d 1130, 1138 (11th Cir. 2021) ("[A]bsent a definition of a term contained in the rule, we look to the common usage of words for their meaning."). In the out-of-circuit opinion in *Linglong Americas Inc. v. Horizon Tire, Inc.*, the court devoted no analysis to the phrase "resulting from compliance," perhaps because, unlike here, neither party raised the issue. 2018 WL 1631341, at *3 (N.D. Ohio Apr. 4, 2018).[11] Darling's other cited case, *Kipperman*, also contains no discussion of the "resulting from compliance" standard and is similarly unpersuasive when weighed against the majority position in this Circuit. 2008 WL 11333467, at *4.

The required "ordinary-meaning" analysis shows why no court in the Eleventh Circuit or otherwise has followed *Kipperman*'s result. The dictionary defines "compliance" as "the act or process of complying to a desire, demand, proposal, or regimen or to coercion." Merriam-Webster, *Compliance*, https://www.merriam-webster.com/dictionary/compliance (last visited July 31, 2024).[12] And the antonym of "compliance" is "resistance." Cambridge Thesaurus,

---

[11] Notably, the only case the court in *Linglong Americas Inc.* cites held that costs, "even undertaken in some sense as a response to the subpoena, cannot be said to have resulted from that subpoena." *In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *9 (D. Conn. Oct. 18, 2017). API respectfully submits that *Linglong* is not persuasive in this instance.

[12] Other definitions include (1) "the act of doing everything that someone tells or wants you to do" and (2) "cooperation or obedience." Cambridge Dictionary, Compliance, https://dictionary.cambridge.org/us/dictionary/english/compliance (last visited July 31, 2024); Dictionary.com, Compliance, https://www.dictionary.com/browse/compliance (last visited July 31, 2024).

*Compliance*, https://dictionary.cambridge.org/us/thesaurus/compliance (last visited July 31, 2024); Thesarus.com, *Compliance*, https://www.thesaurus.com/browse/compliance (last visited July 31, 2024). That plain-meaning contrast reinforces the majority view's conclusion that: "It is a tenuous proposition, at best, that attorneys' fees incurred *resisting* a subpoena are expenses resulting from compliance." *Raymond James & Assocs., Inc.*, 2020 WL 5367319, at *3. This Court should decline Darling's request to endorse this tenuous minority position. *Id.*

Because the substantial majority of the fees for which Darling seeks reimbursement are not related complying with the subpoena, the Motion should further be denied under Rule 45(d)(2)(B)(ii).

### iii.   *The equities weigh against shifting any fees to API.*

Even if an order of compliance had been issued, and even if Darling's fees related to compliance, fee shifting would only be warranted as to the fraction of Darling's fees deemed "significant." That determination "is one of judicial discretion balanced against the reasonableness of the fees claimed." *Raymond James*, 2020 WL 5367319, at *3. Courts generally consider three factors in making this determination: (1) does the nonparty have an interest in the case; (2) can the nonparty more readily bear its costs than the requesting party; and (3) is the litigation of public importance. *Bridgestone Americas,* 2017 WL 11532480, at *3.

*First*, despite Darling's contention otherwise, it has an interest in the outcome of this case. (Mot. 19–20.) Darling tries to frame this matter as merely a dispute between two private parties. (*Id.*) But, notably, Darling quotes a key statement from API's Motion to Compel: "Darling is 'trying to compete on the unlevel playing field created by Tyson.'" (Mot. 19 (quoting Doc. 76 at 4).) Darling admits Tyson is Darling's competitor. (Doc. 176-1 ¶ 31.) And Darling omits that API's requested relief in this case includes: (1) enjoining Tyson from "ongoing violations of Section 1 and Section 2 of the Sherman Act," i.e., relief that benefits all competitors. (Doc. 1 at 48.), and (2) "[r]estor[ing] competition to the Southeast Poultry Rendering Market by ordering that the Tyson Entities divest the Transferred Assets and names a Trustee to sell the Transferred Assets to a buyer that is not a vertically integrated poultry processor." (*Id.*) Such relief would necessarily benefit current market participants like Darling. *Cf. Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F. Supp. 1250, 1256 (E.D. Pa. 1987) (noting that in some cases, an antitrust "plaintiff adequately represents the interests of 'victims' of the antitrust violation"). Darling "is not a classic disinterested non-party" and the Court should "order that [Darling] produce the documents at its own expense." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397, 2016 WL 1658765, at *7

*Second*, Darling does not deny that (1) it can easily bear the expenses and (2) API is no longer in business. (Mot. 20.) Instead, Darling contends that if API

succeeds in this litigation ***and*** is awarded the full damages sought, API will receive hundreds of millions of dollars. (*Id.*) But this case is still in discovery, and while API is confident in the merits of its claims, there is certainly no guarantee of success or imminent recovery from Tyson. It is to be expected that Tyson would resist an adverse judgment, including through appeals. The point being that any recovery by API, a non-operating entity that departed the market as a result of Tyson's actions at issue in this case, could be years away. Contrast that with Darling, which "had another great year with its 6th record year of growth," and reported net income of ***$647.7 million*** on $6.8 billion in reported net sales.[13] Undoubtedly, Darling can easily withstand its own fees and costs (particularly when limited to those incurred in complying with the subpoena), and can do so more readily than API, an entity forced out of the market by the conduct at issue in this case. Darling does not argue that it cannot bear those fees, which further shows why fee shifting should be denied.

***Third***, courts have long recognized that antitrust cases are of public importance. In fact, "'Congress has encouraged private antitrust litigation not merely to compensate those who have been directly injured but also to vindicate the important public interest in free competition.'" *PayCargo, LLC v. CargoSprint,*

---

[13] DARLING INGREDIENTS, *Darling Ingredients Inc. Reports Fourth Quarter and Fiscal Year 2023 Results*, https://www.darlingii.com/media/news/20240227-darling-ingredients-inc-reports-fourth-quarter-and-fiscal-year-2023-results (last visited July 31, 2024).

*LLC*, No. 3:19-CV-85-TCB, 2019 WL 5793113, at *4 (N.D. Ga. Nov. 4, 2019) (quoting *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 502 (1969)). The same is true here. As noted above, API's first two prayers for relief seek to (1) enjoin Tyson from continuing antirust violations and (2) restore competition to the Southeast Poultry Rendering Market by divesting Tyson from certain vertically integrated assets. (Doc. 1 at 48.) Notably, neither of those forms of relief would benefit API directly because it is no longer in business. And Darling's contention that Rule 45 would never apply in antitrust cases is incorrect. (Mot. 25.) As both API and Darling note, courts consider all three factors when determining whether to shift fees. (Mot. 18–19.) So no one factor is dispositive or given greater weight.

Because Darling (1) is not a classic disinterested party, (2) can more readily bear the expenses related to the subpoena, and (3) this case is of public importance, the Court should not impose any fee-shifting and should deny the Motion.

### c. *Darling is not entitled to discretionary reimbursement under Rule 45(d)(1) because API took reasonable steps to avoid undue burden on Darling, which simply failed to avail itself of same.*

Because Darling cannot shift fees under Rule 45(d)(2)(B)(ii), its only option is to seek discretionary sanctions under Rule 45(d)(1). At the outset, Darling's request should be denied because Rule 45(d)(1) applies only where a party fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena," and exists only to enforce such duty. Fed. R. Civ. P. 45(d)(1).

It is a matter of record in this case, as discussed in Section I., *supra*, that API made repeated efforts to work with Darling to reach agreement on the scope of Darling's subpoena response, including "offer[ing] to meet and confer on each of its Requests and to take reasonable steps to avoid any undue burden on Darling[.]" (Doc. 126 at 4) But Darling took a firm, and invalid, position that no discovery should be required of it under the subpoena ***at all***, and "failed to engage Plaintiffs' offers to negotiate reasonable limitations." (*Id.* at 4) The Court's inquiry under Rule 45(d)(1) should end there, and Darling's Motion should be denied.

When the Court later ordered the parties to confer further, API worked diligently with Darling to arrive at an agreeable scope of review and production for the express purposes of preventing undue burden. (*E.g.*, Doc. 176-12.) Indeed, Darling does not even argue that the ultimate scope of review and production created any undue burden, further warranting denial of its motion. (*See* Mot. 11–12 (noting API and Darling conferred and eventually reached a universe of 8,249 documents to review).[14] *See Sams v. GA W. Gate*, LLC, 316 F.R.D. 693, 697 (N.D. Ga. 2016)

---

[14] Darling repeatedly conflates the subpoena requests with its actual review burden. It is undisputed that Darling was only required to review slightly more than 8,000 documents. Despite the tenor of its arguments, Darling never undertook a massive document review only to produce a handful of responsive documents. The parties could easily have reached agreement on the modest review universe had Darling cooperated with API at the outset to reach a mutual understanding as to what was sought under the subpoena like any number of reasonable third parties in this case. *See Sams*, 316 F.R.D. at 697 ("[C]onsidered in light of Plaintiffs' agreement to modify the subpoena . . . and [respondent's] failure to respond to that offer or

("The third-party objecting to the production of records must demonstrate undue burden," and "barebones claims of hardship are inadequate to meet its 'oppressive' burden"). Many courts apply to the Rule 45(d)(1) inquiry effectively the same analysis as to whether to quash a subpoena. *See id.* API's subpoena was not quashed, showing why no sanction is appropriate here. *Id.* Some courts apply the same three-factor test informing significance under Rule 45(d)(2)(B)(ii) to the Rule 45(d)(1) analysis. *E.g.*, *In re Zantac*, 2022 WL 19919934, at *4 For reasons previously addressed, that analysis also compels against shifting Darling's fees. Ultimately, "[t]he authority to award sanctions or attorney's fees is grounded in the Court's traditional equitable powers." *In re Zantac*, 2022 WL 19919934, at *5. And a "non-party can be required to bear some *or all* of its expenses where the equities of a particular case demand it." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397, 2016 WL 1658765, at *7 (S.D. Fla. Apr. 26, 2016) (emphasis added). Darling has failed to establish any basis for shifting fees under Rule 45(d)(1).

### d. API's fee-shifting offer was reasonable because API did not create any undue burden and Darling's fee demand is unreasonable.

Notwithstanding the foregoing, in an effort to spare the parties the expense of unnecessary motion practice, API offered to resolve the matter for $29,500. In

---

demonstrate why the modification . . . does not alleviate its concerns, the court finds that [respondent] has not carried its burden.").

support of this offer, API carefully reviewed all of Darling's time entries and categorized each of them. (Ex. C.) A detailed analysis of that review reflects the following:

- **Resisting Expenses:** More than $113,000 of Darling's approximately $145,000 in legal fees were incurred in objecting to and resisting the subpoena, presenting to the Court a failed motion to quash, confidentiality and privilege reviews, and communications with third parties. (Ex. C ¶ 8.) Of these, $110,000 (more than 75%) preceded this Court's order denying Darling's motion to quash. (*See id.*, Ex. 1 § A.) As discussed above, Section II.b *supra*, those fees are not subject to reimbursement under Rule 45(d)(2)(B)(ii). *E.g.*, *Bridgestone Americas, Inc.*, 2017 WL 11532480, at *3.

- **Mixed Entries:** $24,100 of Darling's fees related to mixed block-billing entries reflecting some potential components of compliance and other non-compliance related activity—e.g., administrative tasks billed at attorney rates. (Ex. C ¶ 8.)

- **Ostensible Compliance:** A mere $6,400 of Darling's fees appeared to relate specifically to efforts to comply with the subpoena. (*Id.*)

- **Vendor Expenses:** Approximately $41,000 related to e-discovery vendor invoices, the majority of which appeared to relate to data storage and hosting.[15] (*See* Doc. 176-9.)

API's good-faith offer consisted of approximately 50% credit toward the Mixed Expenses and Compliance Fees (making the generous assumption for purposes of resolution only that 50% of the Mixed Entries related to compliance), and 50% of the Vendor Expenses. (Ex. B.) API's decision to offer 50% toward those

---

[15] API submits that Darling's hosting costs would have been substantially reduced had Darling sooner and more meaningfully cooperated in working to reach agreement on custodians and search terms, which would have narrowed the review universe and obviated the need for much of the storage.

categories was supported by (a) Rule 45, and (b) this Court's order that, if the predicate for an order of fee-sharing were established (which API denies), API could expect to share "***some*** of the costs of discovery." (Doc. 126 at 6 (emphasis added).)

API's offer was expressly conditioned on the parties avoiding the unnecessary expense of motion practice. Given Darling's rejection of the offer, the ensuing motion practice, and Darling's conduct to date, no fee-shifting should be awarded. *Bridgestone Americas, Inc*, 2017 WL 11532480, at \*3.

## III.    Conclusion.

Given the caliber of Darling's counsel, API must assume that Darling was competently advised of the fact that it would not be entitled to recover fees and costs incurred as a result of its own efforts to obstruct a subpoena. Thus, Darling must be presumed to have directed its response fully informed of the risks of its chosen course of conduct. But whether Darling's response was client- or counsel-directed, the rules do not countenance Darling outsourcing to API the expense associated with its discovery obstruction. To deter similar conduct in the future, and to avoid sending a message that scorched-earth tactics pay in this district, the Court should exercise its ample discretion to deny Darling's motion.

Dated: August 2, 2024

**HOLLAND & KNIGHT LLP**

*/s/ Patrick B. Reagin*
Patrick B. Reagin

25

Georgia Bar No.: 502117
J. Allen Maines
Georgia Bar No.: 466575
A. André Hendrick
Georgia Bar No.: 774212
Cynthia G. Burnside
Georgia Bar No.: 097107
Matthew T. Covell
Georgia Bar No.: 190735
1180 W. Peachtree St., N.W., Suite 1800
Atlanta, Georgia 30309
Tel.: (404) 817-8500 | Fax: (404) 881-0470
cynthia.burnside@hklaw.com
matthew.covell@hklaw.com
patrick.reagin@hklaw.com
allen.maines@hklaw.com
andre.hendrick@hklaw.com


OF COUNSEL:

Kenneth L. Racowski
*Admitted Pro Hac Vice*
**HOLLAND & KNIGHT LLP**
2929 Arch Street, Suite 800
Philadelphia, Pennsylvania 19104
Telephone: (215) 252-9600
Facsimile: (215) 867-6070
kenneth.racowski@hklaw.com

Caitlin Saladrigas
*Admitted Pro Hac Vice*
**HOLLAND & KNIGHT LLP**
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399
caitlin.saladrigas@hklaw.com

*Counsel for Plaintiffs*

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel for Plaintiffs hereby certifies that the within and foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

*/s/ Patrick B. Reagin*
Patrick B. Reagin

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day, August 2, 2024, caused to be served a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

*/s/ Patrick B. Reagin*
Patrick B. Reagin