# EXHIBIT 4

| | |
|---|---|
| **From:** | Anna.Hayes@hklaw.com |
| **To:** | Gray, Rusty |
| **Cc:** | andre.hendrick@hklaw.com; Patrick.Reagin@hklaw.com; Allen.Maines@hklaw.com; Kathleen.Princivalle@hklaw.com |
| **Subject:** | American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections |
| **Date:** | Wednesday, May 29, 2024 11:49:22 AM |

Rusty,

Thanks for your email. Agree with the terms you laid out below (copying here for ease of reference):

> Koch will undertake prompt compliance with the subpoena according to the agreement on searching and production, during which Koch will begin to incur costs that Koch claims are "significant expense resulting from compliance" under Rule 45(d)(B)(ii);
>
> API agrees that it will not claim that Koch has waived any rights to seek reimbursement of these expenses by complying in the absence of a specific court order, but also preserves all rights to claim that API should not have to pay all or a portion of Koch's expenses; and
>
> Once Koch's expenses are itemized, the Parties will negotiate whether some or all of Koch's costs are "significant expenses" that should be allocated to API, and either/both Koch and/or API can seek a judicial determination of the allocation of those costs as if the Court compelled compliance with the subpoena Rule 45.

Please let us know when you anticipate beginning rolling productions and when we can expect substantial completion of productions.

Thank you,
Anna

**Anna Hayes | Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Friday, May 24, 2024 3:24 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*

Good afternoon, Anna—

Thank you for your patience. As we mentioned, we were depositions in another matter and traveling. It seems that the Koch and API have reached agreement on the scope of the response, including the boundaries of the requests and the search protocol, but Koch continues to believe that actual compliance would cause the imposition of "significant expense" on Koch to comply with an actual production—beginning with the processing costs of Mr. Kaminsky's email.

Your email again raises the possibility of a production without review for responsiveness and privilege. Koch does not agree to API's proposal with regard to the modified clawback proposal. Under Fed. R. Civ. P. 26(b)(1), the scope of discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." The scope of discovery allowed through nonparty subpoenas is generally the same as the scope of discovery allowed under Rule 26. *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (holding the relevancy requirement applies to subpoenas under Rule 45 (citing Fed R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45 advisory committee's note to the 1970 amendment)); *Gamache v. Hogue*, 595 F. Supp. 3d 1344, 1349 (M.D. Ga. 2022) ("The general rules of discovery outlined in Rule 26 govern the scope of a Rule 45 subpoena."). Parties are not permitted to circumvent Rule 26 through Rule 45 and engage in a fishing expedition. *See Lewis v. Lowes Home Centers LLC*, 2023 WL 10947360, at *5 (M.D. Ga. Oct. 24, 2023); *Young v. Ray of Hope Counseling Servs., Inc.*, 2022 WL 19934808, at *3 (N.D. Ga. Mar. 28, 2022). The below proposal seeks nonresponsive material, which is irrelevant, disproportionate to the needs of this case, and possibly subject to attorney client privilege, attorney work product, and/or another protection. As such, the proposal runs contrary to Rules 26 and 45. Koch cannot agree to offer up its files to API to sift through content that is clearly nonresponsive to the Subpoena.

As for reimbursement, Koch reserves its objections regarding the burden imposed by API's subpoena and reserves its right to seek reimbursement for the significant costs incurred with compliance under Rule 45(d)(2)(B)(ii). *See In re First Amer. Corp.*, 184 F.R.D. 234, 239 (S.D.N.Y. 1998); *Siltronic Corp. v. Emp'rs Ins. Co. of Wausau*, 2014 WL 991822, at *3 (D. Or. Mar. 13, 2014). Because it is currently uncertain what the costs of compliance will be, Koch will continue to advise API on the costs incurred to comply with the Subpoena. *See* Fed. R. Civ. P. 45(c)(2)(b) Advisory Committee Notes.

For the time being, Koch suggests the following agreement:

> Koch will undertake prompt compliance with the subpoena according to the agreement on searching and production, during which Koch will begin to incur costs that Koch claims are "significant expense resulting from compliance" under Rule 45(d)(B)(ii);
>
> API agrees that it will not claim that Koch has waived any rights to seek reimbursement of these expenses by complying in the absence of a specific court order, but also preserves all rights to claim that API should not have to pay all or a portion of Koch's expenses; and
>
> Once Koch's expenses are itemized, the Parties will negotiate whether some or all of Koch's costs are "significant expenses" that should be allocated to API, and either/both Koch and/or API can seek a judicial determination of the allocation of those costs as if the Court compelled compliance with the subpoena Rule 45.

Let us know if this works for API.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail:  rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Tuesday, May 21, 2024 1:36 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Caitlin.Saladrigas@hklaw.com; cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Kathleen.Princivalle@hklaw.com; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Hi Rusty –

Following up on the below.

Thank you,
Anna

**Anna Hayes | Holland & Knight**
she/her/hers
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Hayes, Anna P (WAS - X75441)
**Sent:** Tuesday, May 14, 2024 5:04 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Thanks, Rusty.

First, we reviewed the search terms on the Excel you laid out and agree that those accurately represent the agreements we have reached in prior negotiations.

API is not in a position to agree at this point to agree to reimburse the $12,000 approximate expense for processing Mr. Kaminsky's data, most particularly because we have no understanding of the total reimbursement (whether for processing, hosting, legal review, or other costs) that Koch intends to seek related to its response to the Subpoena. Bearing this in mind, please confirm whether Koch will proceed with the review despite API's unwillingness to agree to costs at this juncture.

Also, please confirm whether your client is willing to agree to our modified clawback proposed. To be clear, what we suggest is that Koch would by-pass a pre-production review for responsiveness and liberally designate its production as Outside Counsel Eyes Only to expedite the production. Documents and communications which have clearly been provided to or exchange with Tyson would naturally not qualify as OCEO and could be batch designated using the other tiers set forth in the protective order, as needed. The existing and amended versions of the Protective Order provide for post-production conferrals regarding such designations should a dispute arise regarding Koch's elected designation of any particular document. Additionally, API would agree that Koch could run a privilege screen on collected documents to assess whether privileged documents exist in advance of the date the at-issue subpoena was served and withhold hits from the production to quickly and efficiently ensure privileged documents are not in the responsiveness review population. API would then conduct the responsiveness review for the remainder of the hits. Any documents that are (1) non-responsive, and/or (2) privileged will be returned to Koch. Only responsive, non-privileged documents identified in our review would be re-produced to Tyson. Further, any privileged documents identified in the review will be treated as an inadvertent disclosure and not subject to waiver. In summary, API is willing to take on the lion's share of the costs of handling the review since we will have to conduct a review of your client's production anyway. We believe this proposal strikes the right balance of providing your client with the necessary privilege protections while at the same time allow us prompt access to the documents so that we can pursue our claims efficiently and effectively in light of our discovery cut-off.

Based on this proposal, API in turn reserves the right to dispute any reimbursement of fees sought by Koch.

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Wednesday, May 1, 2024 5:33 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Anna and API Team:

Please see attached a letter and spreadsheet setting out the search terms and other agreements that we believe reflect the current agreements around the scope of the subpoena searching. We also wanted to give you a bit more detail on the Kaminsky email processing for the time period 1.1.2020 to 5.11.2022 (the Secondary Time Period, as defined in the attached letter). Mr. Kaminsky had approximately 308 GBs of email in those two plus years. When you consider that the expanded volume of those materials is likely around two times the PST volume, it is likely processing 600+ GBs. At $20 per ingested GB, that is approximately $12,000. We suspect that the Covid pandemic, which is encompassed within the applicable timeframe almost in its entirety, led to increased email volume.

Let us know your position on whether API will reimburse that expense, and please note the reservation of rights in the letter on the reimbursement issue.

Thank you.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:   423.316.0442
E-mail:  rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Monday, April 29, 2024 9:53 AM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Caitlin.Saladrigas@hklaw.com; cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Kathleen.Princivalle@hklaw.com; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

If we pushed back to 3pm ET on Wednesday would that work better for you? We aren't able to do Thursday but I want to make sure we are all aware and able to discuss the outstanding issues here.

Anna

**Anna Hayes | Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Sunday, April 28, 2024 11:14 AM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** Re: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
That should work.  Send us an invite.  As noted earlier, I am in depositions Monday and Tuesday out of town, so I am not sure we can get the summary to you before the call.

Russell W. Gray
Office: 423-209-4218
Cell: 423-316-0442

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Friday, April 26, 2024 4:27:45 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Caitlin.Saladrigas@hklaw.com; cynthia.burnside@hklaw.com; cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com <Romeo.Quinto@hklaw.com>; Kenneth.Racowski@hklaw.com <Kenneth.Racowski@hklaw.com>; Kathleen.Princivalle@hklaw.com <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Thanks, Rusty. How does 11am ET on Wednesday 5/1 work? If you can send us a summary of where you believe we are on all the prior negotiations, that would be helpful to understand before our call where any outstanding disputes are. Understand that all our areas of agreement thus far are contingent on reaching holistic agreement on all requests.

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book  | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Friday, April 26, 2024 2:33 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Thanks Anna. We appreciate the concessions that API has made.  Both Clinton and I have been out of the office for much of this week and have not had time to fully absorb all the implications.  Based on an initial review, it appears that we have broken through most (if not all) of the major impasses.  We will be back in touch asap next week to see if we can finalize any remaining points.  I suggest we set a time next Wednesday afternoon or Thursday, should we need it, to discuss any final items.  We have a deposition in another matter scheduled for Monday and Tuesday; otherwise, we would endeavor to do it earlier.  Thank you in advance.

Rusty


**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail: rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Wednesday, April 24, 2024 8:50 AM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Caitlin.Saladrigas@hklaw.com; cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Kathleen.Princivalle@hklaw.com; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty –

Below are responses to the issues you raised in your previous email. As you can see, API is willing to make several additional compromises (in addition to the many other compromises we have made over the course of the past months' negotiations) to get to agreement and avoid Court intervention. However, we need to wrap these discussions up promptly. We are hopeful that the below responses to your proposals will resolve all outstanding issues so that you all can begin productions soon.

First, again assuming that we can reach agreement on all outstanding issues, API agrees to drop its request for post-Complaint documents.

Second, API disagrees with your characterization of its Requests as pertaining to post-2019 documents. As we have said multiple times, API requests information related not just to Koch's contract negotiations with Tyson, but more broadly at post-transaction anticompetitive harms. As just one example, see my email below from March 15 where I stated: "2019 is not sufficient to capture any number of relevant issues related to anticompetitive effects of Tyson's actions or the fallout from Koch's decision to enter agreements with Tyson prior to the 2018 transaction. " API already compromised on this issue at your March 20 request to narrow from all custodians to just Mr. Kaminsky's documents. You stated in that March 20 email that you may "[re]visit any search terms on that new data that poses an undue burden." Your email below does not explain any burden from those terms – rather, you confirm that you do not know the burden because you still have not processed that data. You propose running only the following search terms on Mr. Kaminsky's post-2019 documents:

    a.   *@tyson.com* AND ((poultry or chick*) w/100 (render* OR process* OR audit*))

    b.   *@tyson.com* AND ((build* OR buy* OR purchas* OR acqui* OR invest* OR clos* OR valu* OR deal OR procur* OR shop OR bargain* OR contract* OR agree*) w/50 plant*)

    c.   ((Tyson OR "river valley" OR rvi) AND (acquir* OR buy* OR bought OR purchas* OR operat! OR run*)) AND (render* OR offal*)

Again, in the interests of getting to a holistic agreement, API will once more compromise and narrow the terms it requests that you run against Mr. Kaminsky's post-2019 documents. We will accept the above searches in addition to the following proposals you made in your March 20 email (which, as I stated in my prior email, API had already agreed with). Unless I misunderstood, you proposed these terms with respect to all documents, including Mr. Kaminsky's post-2019 documents. Out of the terms you proposed, API again is willing to narrow the searches requested to only the following:

    d.   ((Research* OR report* OR survey* OR study OR studying OR studied OR analy*) AND (render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*)))

    e.   render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)

    f.   *@tyson.com* AND (wayne* OR clint* OR river* OR jay* OR moss* OR kilburn* OR API* or ampro* or "american protein*" OR bagwell* OR tommy*)

    g.   *@tyson.com* AND ((cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*))

    h.   ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro or "American protein*" OR "Georgia feed*") w/15 (render*) or (process*))

The third issue you raise is with privileged domains. API agrees that emails directly to or from those domains can be excluded from production and privilege logging.

Fourth, you raise again the issue of the breadth of Request 5 – which seeks on its face all communications with Tyson (but which we have narrowed via our search term negotiations). For the first time, you raise an issue with the breadth of Request 8, which seeks communications related to Koch's contracts and related negotiations with Tyson. We are confused by this addition of Request 8 to your overly broad objection, considering that you have consistently requested narrowing Request 5 from all communications with Tyson to all communications related to commercial contracts between Koch/Tyson or rendering – for example, your February 26 email states: "While Koch Foods continues to preserve its objections, Koch Foods could make the following compromise proposal for responsiveness: Koch Foods would be willing to produce communications between Tyson and Koch Foods that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving rendering."

For Request 5, we have explained several times that though the Request 5 is phrased broadly, we are only interested in documents relevant to the lawsuit, and we have narrowed the scope of any documents responsive to that Request by engaging in these months of search term and custodian negotiations. However, in the hopes of reaching agreement on these issues, API is willing to narrow the Request 5 itself as follows – which in part references your prior proposal: All communications with Defendants [Tyson] that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving rendering, or communications related to Defendants' competitive or market power, or anticompetitive actions or unfair business practices, as a processor or renderer (including its commercial relationships with poultry producers, processors, renderers, or purchasers of rendered product). API believes this is clearly tailored to seek only relevant documents to the lawsuit, rather than any and all communications with Tyson.

Fifth, and finally, you request additional AND NOT limiters to the Sherman Act search string and overall. API will agree to your proposals.

Please let us know by the end of this week whether we are at agreement. We think the above is more than reasonable, and represents significant progress.

Thank you,

Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Thursday, April 18, 2024 5:23 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Anna,

Thanks for your email. We are making progress. We want to address several important points, however. These points may require Court involvement if we cannot find a common ground. Just processing the additional Mark Kaminsky data through May 11, 2022 will cost over $12,000, and we want to resolve these issues before knowing if that cost must be incurred. Of course, if we can reach a full agreement, including on costs, we will want to document the entire workflow in one spot to ensure that nothing was lost in the back-and-forth about what Koch Foods is doing to comply with this subpoena.

1. **Post-Complaint Documents**. API asks that Koch Foods process Mr. Kaminsky's email from the date cut-off [5.11.2022] to the date of collection to run the following search terms that appear to relate to the litigation itself: (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*") AND (lawsuit OR case OR sued OR litigation). Koch Foods declines to process data after the filing of API's Complaint to run this search because it is disproportionate, unduly burdensome, and not relevant. Please confirm whether API agrees to drop this request.

2. **Terms after 1.1.2020 and through 5.11.2022**. We preliminarily agreed to limit this search to Mr. Kaminsky's email and run limited searches. In your email, we now understand that API would like all the search terms employed for the stated time period. This is inconsistent with API's stated purpose for searching during the extended period, which it has described as trying to determine if Koch and Tyson took some post-transaction steps to directly or indirectly adjust or address the terms of the rendering deal. Searching all the terms for the extended period would be inconsistent with that purpose, disproportionate, and unduly burdensome. While we have not processed data for this time period (see above), we would request that the following terms (to the extent that they do not need additional editing based on new anomalies in that time period upon processing) would be appropriate from a subject matter standpoint:
   a. *@tyson.com* AND ((poultry or chick*) w/100 (render* OR process* OR audit*))
   b. *@tyson.com* AND ((build* OR buy* OR purchas* OR acqui* OR invest* OR clos* OR valu* OR deal OR procur* OR shop OR bargain* OR contract* OR agree*) w/50 plant*)
   c. ((Tyson OR "river valley" OR rvi) AND (acquir* OR buy* OR bought OR purchas* OR operat! OR run*)) AND (render* OR offal*)
   Please let us know what other terms API believes it needs after 1.1.2020 and explain specifically why.

3. **Privileged Domains**. API agreed to exclude from production and privilege logging any communications exchanged with Koch's antitrust outside counsel in the Broilers case. That is helpful. Thank you. We would also include outside counsel in this matter, the Wages antitrust case, and the Growers antitrust case. These would be the excluded domains:
   a. @novackmacey.com
   b. @klgates.com
   c. @bakerdonelson.com
   d. @atllp.com

4. **Tyson Subject Matter Limitation**. Requests 5 and 8 are overly broad in seeking "All communications between You and Defendants [Tyson]" and "All internal and external communications related to Your contracts and related negotiations with Defendants [Tyson]." This continues to be a sticking point. It is a fishing expedition to

ask for every communication that was exchanged with Tyson or related to any contracts or negotiations with Tyson over this lengthy period. The request is not narrowed to seek relevant information. Koch Foods has proposed a narrowing, and API has continued to reject those proposals. Koch Foods requests that API reconsider the subject matter limitation on these requests, as they are facially overbroad as written, and, therefore, are disproportionate, burdensome and harassing.

5.  **Few Search Edits**. As to the terms, and before testing on the 1.1.2020 – 5.11.2022 data, we would suggest the following modifications:

    a.  To eliminate false positives, we would add to the Sherman Act term ("Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or cartel* or conspir*) the following: AND NOT (unsub* OR Domino* OR meatingplace* OR marketinsight* OR *jpmorgan.com OR *rwbaird.com OR *stephens.com OR * seafax.com OR *linworld-group.com OR *lakeshorefoodadvisors.com OR *alliant.com OR *ironcompassinvestors.com OR paymentssource.com OR *westlaw.com OR *dowjones.com OR Agri-wire OR court Wire OR Foodone OR wall street journal)OR ((broiler* OR haff OR Grower* OR wage* OR jien* OR nicks) w/3 Litig*))

    b.  For all of the search strings, we would revise the AND NOT string to the following: AND NOT (unsub* OR *@meatingplace **OR *@seafax OR foodone OR agri-wire**). These are repetitive mass mailers that are still in the dataset even with the unsub* exclusion.

Please let us know whether you agree with the above, or if we are going to need Court assistance in resolving this.

Thank you.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct: 423.209.4218
Cell: 423.316.0442
E-mail: rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Monday, April 15, 2024 1:10 PM
**To:** Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** Caitlin.Saladrigas@hklaw.com; cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Kathleen.Princivalle@hklaw.com; Gray, Rusty <rgray@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Clinton,

Thank you for your email. Appreciate the confirmation that you are determining responsiveness documents that hit on any agreed search term using all Subpoena requests (as narrowed by our agreements).

In the interest of compromise, we agree to a date cutoff of 5/11/2022 – except for the one search string related to communications about this lawsuit (see below). We also agree that you will collect and search Mr. Kaminsky's post-2019 emails and attachments/document families (as opposed to a more inclusive collection of any central files or other source of possible custodial documents). We also agree to exclude from production/privilege logging any documents exchanged with Koch's antitrust outside counsel in the Broilers litigation – but please confirm the identities of any such counsel (and if there are additional litigations you would like to include, please identify those matters and the outside counsel to which this exclusion would apply). The following search terms are those we would like applied to both pre- and post-2019 documents (with the AND NOT limiters/exclusions that we have agreed apply to every search string):

- ((Research* OR report* OR survey* OR study OR studying OR studied OR analy*) AND ((render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*)))
  - I believe we had already agreed on this one, see my prior email
- render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)
  - I believe we had already agreed on this one, see my prior email

- *@tyson.com* AND ((poultry or chick*) w/100 (render* OR process* OR audit*))
  - I believe we had already agreed on this one, see my prior email
- *@tyson.com* AND ((build* OR buy* OR purchas* OR acqui* OR invest* OR clos* OR valu* OR deal OR procur* OR shop OR bargain* OR contract* OR agree*) w/50 plant*)
  - I believe we had already agreed on this one, see my prior email
- *@tyson.com* AND (wayne* OR clint* OR river* OR jay* OR moss* OR kilburn* OR API* or ampro* or "american protein*" OR bagwell* OR tommy*)
  - I believe we had already agreed on this one, see my prior email
- *@tyson.com* AND ((cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*))
  - I believe we had already agreed on this one, see my prior email
- (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*") AND (lawsuit OR case OR sued OR litigation)
  - <mark>Please let us know if you will agree to run this search past the 5/11/22 date and instead through the date of collection. This would not include communications with outside counsel already addressed above.</mark>
- ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/10 (contract* OR agree* OR understand* OR negotiat* OR bargain* OR (exchang* AND NOT admin* group) OR cooperat* OR deal*))
- ((API* OR *ampro or "American protein*" OR "Georgia feed*") OR (Tyson OR "river valley" OR rvi)) AND (contract* OR agree* OR negotiat!) AND (render* OR offal*)
- (API* OR *ampro or "American protein*" OR "Georgia feed*") w/25 (render* OR process* OR offal*)
- (Tyson or "river valley" or rvi) AND render* AND (confidential* or competitive or sensitive)
- ((competitive* OR sensitive* OR confidential* OR proprietary) w/10 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI"))
- ((API* OR *ampro OR "American protein*" OR "Georgia feed*") OR (Tyson OR "river valley" OR rvi)) AND (contract* OR agree* OR negotiat!) AND render*
- (Compet* w/10 (don't OR dont OR won't OR wont or shouldn't or shouldnt or cant or can't or cannot or no* or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or eliminat* or harm*) w/25 (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro* or "American protein*" or "Georgia feed*"))
- ((Tyson OR "river valley" OR rvi) AND (acquir* OR buy* OR bought OR purchas* OR operat! OR run*)) AND (render* OR offal*)
- ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro or "American protein*" OR "Georgia feed*") w/15 (render*) or (process*))
- ((Pilgrim* OR Wayne*) w/100 (API* OR *ampro* OR "American protein*" OR "Georgia feed*"))
- Boycott* or (refus* w/10 (deal* or business* or cooperat*))
- (no* w/10 (deal* or business* or cooperat*)) w/25 (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro or "American protein*" or "Georgia feed*"))
- "Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or cartel* or conspir*

We further agree with your proposal related to Request 14 related to the interpretation of one-off or ad-hoc purchases between Koch/Tyson up to the 2022 cutoff date.

We do not agree to your proposed narrowing of Requests 5 and 8 to relate only to 1) commercial contracts between Koch and Tyson or 2) rendering operations. If you look to the allegations of the Complaint, communications between Koch and Tyson that are potentially relevant include numerous other possible subject matters, including Tyson's power as a processor or renderer, including as it pertains to the purchase or sale of materials to/from third-parties through either operation; Koch's decisionmaking for entering the contracts with Tyson (including any assessment of or reference toother processors/renderers); Koch, Tyson, and Wayne's relationship with API and the potential for API to go out of business and reasons for the same; and Koch/Tyson's history of anticompetitive behavior, among others. Given the efforts we have made to narrow the field of possibly responsive documents using tailored search terms, we think that any additional narrowing of the scope of these Requests is unnecessary and overly limited.

Please let us know if there are additional issues we need to discuss, or whether we can finalize our agreement and move forward with productions.

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book  |  View professional biography

**From:** Sanko, Clinton <csanko@bakerdonelson.com>
**Sent:** Friday, April 5, 2024 4:37 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Gray, Rusty <rgray@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Good afternoon, Anna—

We wanted to get with you on certain of the issues below, even as we are not fully completed with the search testing. We appreciate the meaningful dialogue that has occurred and the efforts to avoid Court intervention.

First, you make a preliminary statement that the parties will, initially, reach agreement on search terms and then review all search term responsive documents for production if they are "responsive to any Request." Procedurally, Koch agrees. If agreement is reached, Koch does not intend to parse the search results only against the requests to which the term was directed; rather, it intends to run the slate of terms and then review those search responsive documents for responsiveness to the outstanding requests as narrowed and agreed-upon by the parties.

Second, we appreciate API's agreement that Koch can collect only Mark Kaminsky's ESI for response to requests for 1.1.2020 forward. However, we have a few outstanding issues that we need to understand and make sure that the parties are working from the same understanding: (a) whether you agree that the period cut off at the filing of the Complaint in this case (5.11.2022); (b) which search terms you envision we would run over the Kaminsky post-2019 email because all terms were not intended to run past 12.31.2019; and (3) that only Mr. Kaminsky's email needs to be collected and searched, versus other sources that would be more cumbersome and expensive. We expect to have the email collected and in hand at the vendor by next week, which may facilitate some additional search term discussion and costs.

Third, we had indicated that we had created a Narrowed Searchable Set (defined below) that was devised by removing certain terms, as set forth in our email below, namely:

"You suggested the following search term revisions: (a) applying the AND NOT (unsub*) limiter to all search terms; and (b) removing certain documents from the search set, including (i) Agri Stats reports that are repetitive (and we have also culled certain identifiable repetitive budgets); (ii) the email domains and subject line reports that you provided that would be exchanging certain automated reports; and, we added an additional category of, (iii) **all documents that were exchanged directly with antitrust outside counsel**."

We do not see where you agreed with this approach, specifically "documents that were exchanged directly with antitrust outside counsel." In your email you propose a new exclusion ("AND NOT emails from email domains including "noreply" or "donotreply" or "do_not_reply"), which did not limit the Narrowed Searchable Set to any meaningful degree. But, you do not address documents that were "exchanged directly with antitrust outside counsel." Given that the Broilers matter was initiated as early as 2016, the terms are problematic in hitting on obviously privileged materials. (For the same reason, the privilege log concession that begins on 5.11.2022 does not help much on this point.) Please note whether you are agreeing to removing documents specifically exchanged with antitrust outside counsel, as that is skewing the results of our search testing.

Fourth, we had asked for a reasonable narrowing of certain requests. With respect to Request 14, we proposed as follows:

"we have objected to searching for and producing all agreements between Tyson and Koch as requested in

Request 14 and included an objection to producing agreements beyond 2019.  The parties previously discussed the breadth of this request and how it could include, among other things, a brief or short-term agreement, such as a one-off purchase of chicken, feed, or eggs.  We talked about eliminating "ad hoc" agreements or "one-off" agreements from the scope of Request 14.   We will agree to extend the response to Request 14 to the date the lawsuit was filed consistent with our prior correspondence.  To be more clear, we understand this "ad hoc" or "one-off" language narrows the scope of Request 14 to pertain to commercial contracts for the sale of goods or services between Koch and Defendants, whether or not directly relating to rendering, but not including a one-off or short-term purchase or sale.  Assuming that understanding is in place, we will agree to extend the response to Request 14 to the date the lawsuit was filed."

Similarly, with respect to Requests 5 and 8, Koch proposed the following as a reasonable subject matter limitation: "Koch Foods would be willing to produce communications between Tyson and Koch Foods that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving rendering."

We don't see where you addressed these proposals, but would appreciate your client's position.  Do you agree with this narrowing of these requests?

As we have stated consistently, we will need to reach agreement on the full scope of the requests—including the payment of the undue costs for responding, which remain high—before having a final agreement.  We look forward to hearing back from you on these issues.

Regards,

**Clinton P. Sanko**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1900 Republic Centre
633 Chestnut Street
Chattanooga, TN  37450
Direct:  423.209.4168
Cell: 423.432.5626
Fax:  423.752.9580
E-mail:  csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, North Carolina, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Tuesday, April 2, 2024 8:00 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** Caitlin.Saladrigas@hklaw.com; cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Kathleen.Princivalle@hklaw.com
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty & Clinton –

Following up on the below – if we need to have a call this week, can we go ahead and schedule for tomorrow or Thursday?

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Hayes, Anna P (WAS - X75441)
**Sent:** Friday, March 29, 2024 5:27 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty –

Thanks for your email. I think there is good progress and that we are headed in the right direction – we don't agree to all of your proposals, but I am hopeful that you will see that API has endeavored to continue making meaningful concessions to get to agreement and avoid Court intervention on Koch's Subpoena response.

As an initial matter, I'm not sure I fully understand in your email the reorganization/separation of the search strings under the various Requests. I want to make sure we are clear that we believe that we should reach agreement on the universe of search terms and the responsiveness of any document hitting on any search string should be evaluated and produced if it is responsive to any Request. For example, you have organized the search strings aimed at the Sherman Act generally (boycott, etc.) under Request 18 (including general antitrust terms) – but these could be responsive under any Request. At your request in January, we went through the exercise of explaining why we thought the search terms we proposed were relevant, in part by organizing them in buckets as likely to hit on documents relevant to certain requests. But in no way were we suggesting, or would we accept, an agreement by which Koch would run any particular search string and review/produce only documents hitting on that string that are relevant to one particular Request.

Second, API can agree that any further collection from 2020 forward is limited to Mark Kaminsky's custodial documents. As such, any search terms we agree on will be applied to Mr. Kaminsky's emails from 2020 through the filing of the lawsuit, and to Mr. Kaminsky's documents in addition to Mr. Grendys' and Mr. Buckert's documents only through 12/31/2019 (unless other timelines are specified below).

Given the above and the different proposals found in different emails in our chain, I've gathered all search terms that are still on the table below, noting the search strings I think we have agreement on and those where we have revised proposals from your last email. We understand that you are not going to agree to any particular string on its own but are looking to reach agreement on all searches/requests as a whole. I've organized these just so we can get on the same page re: status as those we already had some "tentative" agreement on first and those addressed in your email second. In the second category, I have organized so that you can understand more easily where we are agreeing to your last proposal (many) and those that we have some further counter-proposals on. I've highlighted some of our new proposals (or questions) in yellow below.

Two exclusion limiters to apply to all search strings regardless of whether specifically reflected below: AND NOT (unsub*); AND NOT emails from email domains including "noreply" or "donotreply" or "do_not_reply"

  - [new API proposal to further limit mass-email communications – this would be for domains on the "top" email, i.e. if there were internal communications forwarding a mass email those would not be excluded]

**SEARCH STRINGS**
  - **Prior Agreements** (Tentative agreement prior to your 3/20/24 email)
      - @tyson.com AND NOT (unsub*)
          - Per your 10/13/23 email, this will be applied to all three custodians only through 12/31/2019
      - @wayne.com
          - Per your 10/13/23 email, this will be applied to all three custodians only through 12/31/2019
      - (("National Chicken Council" OR "U.S. Poultry & Egg Export Council" OR "U.S. Poultry & Egg Association" OR "Georgia Poultry Federation" OR "Poultry Federation" OR

"International Poultry Council" OR "International Producer and Processing Expo" OR "Tennessee Poultry Association" OR "Alabama Poultry & Egg Association" OR "South Carolina Poultry Federation" OR "Florida Poultry Federation") AND (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*"))

- Per prior API agreement, this will be applied to all three custodians only through 12/31/2019

o ((Research* OR report* OR survey* study OR studying OR studied OR analy*) AND ((render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*))) AND NOT (unsub*)
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

o render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

o *@tyson.com* AND ((poultry or chick*) w/100 (render* OR process* OR audit*))
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

o *@tyson.com* AND ((build* OR buy* OR purchas* OR acqui* OR invest* OR clos* OR valu* OR deal OR procur* OR shop OR bargain* OR contract* OR agree*) w/50 plant*)
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

o *@tyson.com* AND (wayne* OR clint* OR river* OR jay* OR moss* OR kilburn* OR API* or ampro* or "american protein*" OR bagwell* OR tommy*)
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

o *@tyson.com* AND ((cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*))
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

o (ampro* OR "american protein*") OR API* OR crossroad* OR "georgia feed*") AND (lawsuit OR case OR sued OR litigation)
- applied to all three custodians through 12/31/2019 and only to Mr. Kaminsky's documents through 5/11/2022

- <mark>Your 3/13/24 email referred to "potential privilege log questions" – you state that agreement needs to be reached on privilege log issues, which I do not think we have discussed and I do not believe any proposal is on the table. We can agree that all Koch communications with your law firm post- 5/11/2022 need not be logged and Koch communications with your law firm regarding Koch's response to the Delaware litigation subpoena to Koch similarly need not be logged. Let me know if that resolves this point.</mark>

- **API Agreements to 3/20/24 Koch Proposals:**

o ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/10 (contract* OR agree* OR understand* OR negotiat* OR bargain* OR (exchang* AND NOT admin* group) OR cooperat* OR deal*))
- API position: <mark>agreed</mark>

o ((API* OR *ampro OR "American protein*" OR "Georgia feed*") OR (Tyson OR "river valley" OR rvi)) AND (contract* OR agree* OR negotiat!) AND (render* OR offal*)
- API position: <mark>agreed</mark>

o (API* OR *ampro or "American protein*" OR "Georgia feed*") w/25 (render* OR process* OR offal*)
- API position: <mark>agreed</mark>

o (Tyson or "river valley" or rvi) AND render* AND (confidential* or competitive or sensitive)
- API position: <mark>agreed</mark>

o ((competitive* OR sensitive* OR confidential* OR proprietary) w/10 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI"))
- API position: <mark>agreed</mark>

o ((API* OR *ampro OR "American protein*" OR "Georgia feed*") OR (Tyson OR "river valley" OR rvi)) AND (contract* OR agree* OR negotiat!) AND render*
- API position: <mark>agreed</mark>

- o (Compet* w/10 (don't OR dont OR won't OR wont or shouldn't or shouldnt or cant or can't or cannot or no* or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or eliminat* or harm*) w/25 (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro* or "American protein*" or "Georgia feed*"))
    - ▪ API position: agreed
- o ((Tyson OR "river valley" OR rvi) AND (acquir* OR buy* OR bought OR purchas* OR operat! OR run*)) AND (render* OR offal*)
    - ▪ API position: agreed

- **Remaining not-yet-agreed search strings** (Counter Koch made in your 3/20/24 email that API will not agree to but where API presents counter-proposals to further narrow previous proposals):
    - o ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro or "American protein*" OR "Georgia feed*") w/15 (render*))
        - ▪ API position: do not agree to drop process* from its prior proposal but is OK with narrowed limiter to w/15.
        - ▪ Proposal: ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro or "American protein*" OR "Georgia feed*") w/15 (render*) or (process*))
    - o ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI") w/15 (API* OR *ampro* OR "American protein*" OR "Georgia feed*"))
        - ▪ API position: remove Tyson terms but widening proximity limiter (prior API proposal was AND)
        - ▪ ((Pilgrim* OR Wayne*) w/100 (API* OR *ampro* OR "American protein*" OR "Georgia feed*"))
    - o ((Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or (no* w/10 (deal* or business* or cooperat*))) w/25 (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro* or "American protein*" or "Georgia feed*"))
        - ▪ API position: Do not agree. Given your representation that the boycott* or the refusal to deal strings were not "driving that hit volume", API proposes:
            - • Boycott* or (refus* w/10 (deal* or business* or cooperat*))
            - • (no* w/10 (deal* or business* or cooperat*)) w/25 (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro* or "American protein*" or "Georgia feed*"))
                - o The additional limiters on this string are those proposed by Koch in the 3/20 email
    - o (("Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or cartel* or conspir*) w/25 (render* OR offal* OR Tyson* OR Pilgrim* OR Wayne* OR RVI* OR "River Valley"))
        - ▪ API position: Do not agree, but we believe that adding the domain "donotreply" limiters suggested above should take care of any "noise" resulting from this search. Given this, API proposes reverting to prior:
            - • "Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or or cartel* or conspir*

One non-search term issue we seem to have left unresolved in prior emails was whether Koch would do a go-get search for agreements (other than one-off/ad-hoc purchases) with Koch up to the present date (not just through Dec. 2019). Our position is – particularly given our other significant concessions – that this request is not disproportionally burdensome particularly because you have already agreed to produce the same through 2019 and conduct an additional collection of Mr. Kaminsky's documents past 2019. As our prior email communications indicate, these are highly relevant to the issue of whether Tyson's agreement with Koch was anticompetitive in the first place and whether that has been the subject of renegotiation because of any commercially unreasonable terms.

Finally, as to structured data, we agree to your 3/20/24 proposal to produce the Koch Mississippi spreadsheets. Additionally, Koch will do "go-get" searches for Request 13.

We are hopeful that given our compromises and the relatively few (apparently less than 5) issues we have not yet reached agreement on, your client will agree to the five search strings above (the "remaining not-yet-agreed search strings") and the Koch-Tyson post-2019 contracts issues and begin the document production process promptly. Please let us know your thoughts in writing by next Wednesday (4/3), or let us know if we should schedule a call early next week to discuss.

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Wednesday, March 20, 2024 3:59 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Anna,
Thank you for your email, which we have considered as well as our prior communications.
Given the urgency of the response you requested, we will forgo responding to many of the introductory remarks. Suffice to say that we disagree. As to the timing, we have worked, and are working, diligently to reach agreement. As to the Delaware discovery, you have misunderstood our reference. The Delaware discovery, though admittedly narrower than the instant requests, still provides important context. It shows that Koch Foods has been cooperative, and that American Proteins is not negotiating without the benefit of any Koch Foods documents. We have not argued that the Delaware subpoena completely negates the instant subpoena.
As to the question of costs, Koch Foods reserves all its legal positions to seek recovery of undue costs. Koch Foods has never demanded payment before a production or posited that payment was a prerequisite to compliance. Rather, Koch Foods asked API's position on reimbursement of those costs. Koch Foods has not acted in a way that contravenes any finding by the Court and has been diligent and responded in good faith.
On time period, as we discussed, Koch Foods proposes processing only the email of Mark Kaminsky. As you know from the deposition of Mr. Kaminsky, he would have been the point person at the company for analyzing rendering contract proposals and related dealings involving Tyson. In fact, if you review the documents produced in the Delaware case, you will see that there are no substantive communications that do not involve Mr. Kaminsky. As such, we propose processing Mr. Kaminsky's email from January 1, 2020 to the filing of the Complaint in this case (May 11, 2022). Please let us know if that compromise is acceptable. As noted below, we cannot verify the reasonableness, proportionality, or burden of any search terms on that additional data. Given that, we reserve the right to visit any search terms on that new data that poses an undue burden.
Also related to time period, we have objected to searching for and producing all agreements between Tyson and Koch as requested in Request 14 and included an objection to producing agreements beyond 2019. The parties previously discussed the breadth of this request and how it could include, among other things, a brief or short-term agreement, such as a one-off purchase of chicken, feed, or eggs. We thus talked about eliminating "ad hoc" agreements or "one-off" agreements from the scope of Request 14. We will agree to extend the response to Request 14 to the date the lawsuit was filed consistent with our prior correspondence. To be more clear, we understand this "ad hoc" or "one-off" language narrows the scope of Request 14 to pertain to commercial contracts for the sale of goods or services between Koch and Defendants, whether or not directly relating to rendering, but not including a one-off or short-term purchase or sale. Assuming that understanding is in place, we will agree to extend the response to Request 14 to the date the lawsuit was filed.
On search terms, we have completed the two things that we discussed.
First, we wanted to give you some feedback on our work to remove some of the search noise and see if we could get the search term results reduced using some of the ideas that you proposed on our call. As noted in our earlier email, without this work, the search terms that API proposed returned 178,468 documents (which expands to 297,636 documents with families).

You suggested in your email and on our call several different approaches to exclude documents from the search term hits as presumptively non-responsive. As a start, as noted during our call, much of what you are suggesting are the equivalent of bulk coding documents as non-responsive that meet certain objective and repeatable objective criterion. We ran these exercises in good faith. You suggested the following search term revisions: (a) applying the AND NOT (unsub*) limiter to all search terms; and (b) removing certain documents from the search set, including (i) Agri Stats reports that are repetitive (and we have also culled certain identifiable repetitive budgets); (ii) the email domains and subject line reports that you provided that would be exchanging certain automated reports; and, we added an additional category of, (iii) all documents that were exchanged directly with antitrust outside counsel. To facilitate this analysis, we applied the exclusions in (b)(i) to (b)(iii) to the overall searchable set, and then ran the terms against that narrowed universe ("**Narrowed Searchable Set**").

After adding the additional "AND NOT (unsub*)," and running the revised terms against the Narrowed Searchable Set, there are 104,026 documents that are search term responsive (which grows to 175,307 documents when you include families). As such, these terms as drafted are still just hitting too broadly to be viable.

While we are not trying to unpack everything in your email, you note the following: "Like I raised on our call, as one outlier, I cannot imagine that Koch employees are exchanging 100,000 or more communications on "boycotts" – so is there a problem with email signatures that we can eliminate much of the junk/noise?" But, that is not anything that Koch Foods represented. API's proposed search term was: Boycott* OR (refus* w/10 (deal* or business* or cooperat*)) OR (not w/10 (deal* or business* or cooperat*)). That search term **on the whole** returned 97,041 documents (153,389 with families). Because of the conjunctive "OR," the search tool looks for each of the three independent clauses separately, meaning that this one term is actually three bundles of search terms:

- Boycott*
- refus* w/10 (deal* or business* or cooperat*)
- no* w/10 (deal* or business* or cooperat*)

In fact, the term "Boycott*" is not driving that hit volume. Rather, it is the third independent clause ("no* w/10 (deal* or business* or cooperat*") that is returning the vast majority of the hits on that term. Second, you asked that Koch Foods "propose revisions to keep potentially relevant results and cull out potentially irrelevant hits." We have worked through the terms and are prepared to make a proposal. As we reviewed your terms, we have gone back to the actual underlying RFPs to which these search terms are based. Obviously, we are only searching data that is pre-December 2019, because that is what we have to test. Subject to agreement on the additional time period, we reserve all objections for proportionality and undue burden based on that new data.

For many of these requests, we note that in the context of the Delaware matter we have already searched for communications and other documents relating to the negotiations with API and Tyson and competitive analysis, including the following previously used terms for which we already produced documents:

- "API" AND *Tyson*
- "Georgia Feed" AND Tyson
- (American w/3 Protein*) AND *Tyson*
- (DAF Sludge OR DAF OR skimming* OR Clarifier OR Sludge OR Clarifier OR Skimming* OR "SPN") AND (Tyson OR Wayne*)
- (fat w/3 yield) AND *Tyson*
- (pet w/3 yield) AND *Tyson*
- (poultry w/3 rendering) AND *Tyson*
- *@amprot.com
- AmPro* AND *Tyson*
- Josh* w/3 McClelland
- Offal w/3 agreement
- Shane w/3 Parks

We refer to these as the "**Previously Used Search Terms.**" While we understand that discovery is broader in this antitrust context, it is important to know that for the pre-December 2019 time period, we have already reviewed and produced many negotiation documents that hit on the Previously Used Search Terms. Thus, the terms that we are discussing should be considered additive of the Previously Used Search Terms.

Moreover, we would note for this last group of requests, that we are already searching both *@tyson.com (with certain modifiers) and *@waynefarms.com in separate searches ("**Domain Searches**"). As such, the requests below account for the fact that direct communications are already being searched, and responsive documents will be produced to the extent that they are responsive to a request.

Finally, we would propose to run these terms against the Narrowed Searchable Set.

**Request No. 6**: All communications between You and any other poultry processor, poultry renderer, or any other entity regarding the potential or actual acquisition and/or operation by Defendants [Tyson] of

a rendering facility within the Market.

We note that the Previously Used Search Terms and Domain Searches may have or possibly will bring back documents responsive to this request as between Koch Foods and those two poultry processors. But, here, this request seeks documents that relate to Tyson's potential or actual acquisition of a rendering facility.

- ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro or "American protein*" OR "Georgia feed*") w/15 (render*)) AND NOT (unsub*) [revised API term]
- ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/10 (contract* OR agree* OR understand* OR negotiat* OR bargain* OR (exchang* AND NOT admin* group) OR cooperat* OR deal*)) AND NOT (unsub*) [revised API term]
- ((Tyson OR "river valley" OR rvi) AND (acquir* OR buy* OR bought OR purchas* OR operat* OR run*)) AND (render* OR offal*) AND NOT unsub* [new proposed term]

**Request No. 10**: All internal and external communications related to Your contracts and related negotiations with Plaintiffs [API], including but not limited to those related to Your decision to enter agreements with Defendants [Tyson]for the sale of Raw Material Supply and/or purchase of Poultry Rendering Output.

Again, we are talking about new terms that would be additive to the Previously Used Search Terms, which would have returned many documents responsive to this request.

- ((API* OR *ampro OR "American protein*" OR "Georgia feed*") OR (Tyson OR "river valley" OR rvi)) AND (contract* OR agree* OR negotiat!) AND (render* OR offal*) AND NOT unsub* [new proposed term]
- ((Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI") w/15 (API* OR *ampro* OR "American protein*" OR "Georgia feed*")) AND NOT (unsub*) [revised API term]

**Request No. 11**: All communications between You and any entity about Plaintiffs.

Again, the Previously Used Search Terms would have returned documents responsive to this request, which would have been produced.

- (API* OR *ampro or "American protein*" OR "Georgia feed*") w/25 (render* OR process* OR offal*) AND NOT unsub* [new proposed term]

**Request No. 16**: All documents reflecting any internal communications You had, or assessments You performed, related to providing competitively sensitive information to Defendants [Tyson] as a renderer in the Market.

- (Tyson or "river valley" or rvi) AND render* AND (confidential* or competitive or sensitive) AND NOT unsub* [new proposed term]
- ((competitive* OR sensitive* OR confidential* OR proprietary) w/10 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI")) AND NOT (unsub*) [revised API term]

**Request No. 18**: Any internal or external communications You had regarding Your rationale, intention, or motivation for entering into agreements with Defendants [Tyson] to sell Raw Material Supply and/or purchase Poultry Rendering Output.

In responding to this Request with search terms, of course, Koch Foods would note that it had no anticompetitive reason and the references in API's search terms suggesting any such motivation are expressly disputed.

- ((API* OR *ampro OR "American protein*" OR "Georgia feed*") OR (Tyson OR "river valley" OR rvi)) AND (contract* OR agree* OR negotiat!) AND render* AND NOT unsub* [new proposed term]
- (Compet* w/10 (don't OR dont OR won't OR wont or shouldn't or shouldnt or cant or can't or cannot or no* or no or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or eliminat* or harm*) w/25 (Pilgrim* OR Wayne OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro* or "American protein*" or "Georgia feed*")) AND NOT (unsub*) [revised API term]
- ((Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or (no* w/10 (deal* or business* or cooperat*))) w/25 (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR "API" or *ampro* or "American protein*" or "Georgia feed*")) AND NOT (unsub*) [revised API term]
- (("Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or cartel* or conspir*) w/25 (render* OR offal* OR Tyson* OR Pilgrim* OR Wayne* OR RVI* OR "River Valley")) AND NOT (unsub*) [revised API term]

Please let us know if these terms are acceptable.  Of course, we will also need to know if API accepts our proposed narrowing of particular requests consistent with prior communications.

Finally, on structured data, we have done some additional research.  We can produce to you from the Koch Mississippi complex spreadsheets tracking weekly rendering sales to River Valley.  A sample

spreadsheet is attached.  Note that the spreadsheet does not reflect a final reconciliation because those reconciliations took place in paper form until 2020 and are located in storage.  Also, we are able to produce from the Koch Mississippi complex a vendor report that lists the fat purchases by Koch at its Mississippi complex from Tyson.  A sample vendor report is attached.  Please treat both of these samples as Confidential under the applicable protective order.  Let us know if production of these reports resolves the structured data request issues.

Regards,

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail:  rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Friday, March 15, 2024 4:42 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** cynthia.burnside@hklaw.com; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Caitlin.Saladrigas@hklaw.com; Kathleen.Princivalle@hklaw.com; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty and Clinton–

Thank you for the call yesterday. We write to respond to some of the statements in your email and confirm what we discussed over the phone.

As our prior correspondence indicates, we first served these Subpoenas in April 2023 – almost a year ago – and since that time have worked diligently to narrow our Requests, agree to "go-get" productions where possible, and tailor remaining search terms and custodians to minimize the burden while seeking relevant information necessary for this case. As to the delay in responding to the Subpoena and producing requested documents, we agree this record speaks for itself. We are interested in promptly getting to an agreement, if possible, and if not, seeking Court intervention only as necessary. Because these issues have clearly lingered for many months, we need to get to an understanding of agreement, where possible, and areas of disagreement or impasse, if any, this week, given the impending close of fact discovery on June 7 – now less than 3 months away.

You raise discovery issues in the Delaware case, but, as we have discussed multiple times, these are two different cases. The Court in the case at issue has already noted in Orders on several motions to compel other third-party productions that "Because this is an antitrust case, the scope of discovery is broader." *Am. Proteins, Inc., et al. v. River Valley Ingredients, Inc., et al.*, No. 2:22-cv-91, ECF 128, dated Feb. 26, 2024, at 5; *see also id.*, ECF 127, dated Feb. 22, 2024, at 4.

As to your point on costs, the Court has also already found that such arguments will not provide a basis for refusing to produce documents. *Id.*, ECF 128, at 6 (reserving ruling on expense reimbursement "until discovery is completed"); ECF 125, at 5 (same); ECF 127, at 4 (same). As evidenced by the months of negotiation and compromise on the Subpoena Requests, API has made and will continue to make all efforts to minimize the burden to Koch to that which is reasonable, while noting Koch's status as a non-named co-conspirator more likely than virtually any other third-party to have relevant, discoverable information. Further, even pursuant to the case law you cite below, to even seek reimbursement of expenses, those expenses must be significant. When Koch has not even agreed to the universe of what it will produce, we cannot, of course, know whether the expenses incurred will ultimately be significant. Importantly, we do not agree that any attorneys' fees incurred in negotiating scope or resisting production under the subpoena (i.e., most costs incurred to date) are appropriately reimbursable in any event, given that costs are only ordered to be reimbursed when incurred as

"necessary to the nonparty's *compliance* with the subpoena." *Bridgestone Ams., Inc. v. Int'l Bus. Machs. Corp.*, 2017 WL 11532480, at *4 (N.D. Ga. June 16, 2017) (emphasis added).

API obviously disagrees with your characterizations of our work to meaningfully narrow the burden on Koch with multiple iterations of search terms and compromises on the Subpoena Requests as "not difficult" and the idea that the proposed clawback in any way was an effort to circumvent the Federal Rules. Suffice it to say that neither statement is correct or helpful to reach agreement on the Subpoena Requests – and API is neither interested in nor would benefit from irrelevant information being produced.

As we discussed on the phone, API cannot agree to a date cutoff for any production on December 31, 2019. It seems that Koch's argument is that because it collected to that date for the Delaware case, it should not be required to do any further collection for this case. For the reasons already addressed in this email and for the past months, 2019 is not sufficient to capture any number of relevant issues related to anticompetitive effects of Tyson's actions or the fallout from Koch's decision to enter agreements with Tyson prior to the 2018 transaction. Though you have sought to treat the Tyson/API transaction as the "end" of relevant events in both the Delaware and current cases, the truth of the matter is that the transaction and lead-up to it was merely the beginning of the relevant timeline in this antitrust action. Koch's refusal to provide any information related to the burden for post-2019 documents is frustrating and makes it impossible to meet and confer in good faith to minimize the total burden to Koch of API's requests. As I'm sure you have seen in its Orders on other Motions to Compel, the Court has not favorably viewed other non-party's "position that no discovery should be required under the present subpoena" and/or "fail[ure] to engage Plaintiffs' offers to negotiate reasonable limitations." ECF 128 at 4. In light of this, please confirm that Koch is unwilling to entertain or negotiate any post-2019 production, and we will likely need to move to compel on that issue (and seek reasonable attorney's fees incurred in doing so).

Regarding search terms pertinent to Requests 6, 8, 10, 11, 16, and 18, these hit counts are helpful, but as we discussed on the phone, without actually seeing the documents, it is hard to know how to narrow them. For example, are there thousands (or tens of thousands) of Agri Stats reports returning these results – just as an example, those could be easily isolated and mass-marked as responsive without much (if any) attorney review. Conversely, are there mass-email lists with news/industry reports that could be culled out using domain names? Like I raised on our call, as one outlier, I cannot imagine that Koch employees are exchanging 100,000 or more communications on "boycotts" – so is there a problem with email signatures that we can eliminate much of the junk/noise? Are there other particular categories of documents we could address using NOT term limiters? Given the myriad possibilities, and the fact that we have now proposed search terms and revisions to those search terms, we ask that Koch propose revisions to keep potentially relevant results and cull out potentially irrelevant hits. As a start to these efforts, we asked you to apply the AND NOT (unsub*) limiter to all search terms which one of the most basic and easiest ways to reduce non-responsive hits and to look at whether "Agri Stats" (or AgriStats, etc.) reports are captured in the hits. We also discussed over the phone that we are aware of several other automated email/reports. As promised on the phone, these emails have details as follows (though these clearly won't capture every automated email or report that could be culled):

**Emails From**:

[app.mis.system@tyson.com]

[app.mis.system@amprot.com]

**Titles/Subject line**:

- Shipping-Receiving Data *[Date Range]*
- Price Letter for Week Ending *[Date]*
- Vendor Worksheet for Week Ending *[Date]*
- SPN Periodic Data *[Date Range]*
- Sales Order Report for Week Ending *[Date]*
- Vendor Energy Adjustment Summary *[Date]*
- Live Weight Percent Analysis *[Date Range]*

Finally, we discussed transactional data on the call. We asked you to investigate whether there is transactional data for the one out-of-market plant that is gatherable via email or otherwise, and what the associated burden with producing that data would be if it is captured in email. On our side, we are also looking at additional possible compromises we can make to limit our data requests and should have that information to you early next week.

We discussed over the phone that you could get responses to the above by the middle of next week. Please understand that, particularly if we are going to need to move to compel, we need answers on these items promptly given that these negotiations have been so protracted and fact discovery cutoff is quickly approaching on June 7.

Thank you,

Anna

**Anna Hayes | Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Wednesday, March 13, 2024 1:54 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Good afternoon, Anna.

In advance of our call tomorrow, and to be as productive as possible, we wanted to share some further information on Koch's position.  As an initial matter, Koch takes issue with the suggestion that it is trying "to avoid responding to the Subpoena."  This statement does not take into account the course of negotiations, including that Koch has responded to the Subpoena, has produced documents and samples of structured data, and has been negotiating in good faith.  Moreover, Koch provided detailed information on February 26, 2024 that supported its claims of unreasonable burden.  Additionally, it is important to keep in mind that Koch already responded to an API subpoena in the related Delaware case, made Mark Kaminsky available for a deposition in that case, and agreed that such deposition could be shared with API counsel in the Georgia case.  Koch has been forthcoming and more than reasonable in this third-party discovery process, especially considering that much if not all of the sought information could come from Tyson, which is a party to the case.

While it is not difficult for your client to propose edits to search terms, those revised terms must then be interpreted, reviewed, tested, and considered.  Koch has investigated its burdens, provided samples in some contexts, and tested search terms.  To be clear, Koch is providing reasonable information in the context of the good faith meet and confer process to support its claim of unreasonable burden on this most recent round of search terms.  But, should motion practice be necessary on a final proposal, then Koch will reserve the right to add detail during the motion practice.  Obviously, it is unreasonable to expect Koch to take such a detailed view on each round of search terms because it is uncertain where American Protein will choose to stop negotiating.

Koch understands the need for a final agreement, but disagrees with any implication that it has been dilatory.  The record speaks for itself.  Moreover, as to a production with no review, Koch respectfully declines to produce search term responsive information under a clawback order and without attorney review.  It is not a justification of an unreasonable burden, where search terms are leadings to thousands of non-responsive results, to simply ask for all the documents to be produced under a clawback.  That ignores Koch's reasonable rights to protect its confidential and business sensitive information.  Moreover, API seeks to somehow benefit from proposing overly broad search terms, while imposing an unreasonable burden and avoiding the requirement of the *Federal Rules of Civil Procedure* that documents are only discoverable when they relate to a claim or defense in the case.

***Recoverable Costs***.  On cost recovery, American Protein's response is non-committal on whether it will cover reasonable costs and attorney's fees.  Koch was not setting a "precondition"—an obvious point when you consider that it already produced documents.  Under Rule 45(d)(2)(B)(ii) of the *Federal Rules of Civil Procedure*, "[t]hese acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  This rule requires mandatory fee shifting—from the producing non-party to the requesting party—when the subpoena (1) imposes expenses on the producing non-party and (2) those expenses are "significant."  *See Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).  If the subpoena imposes significant expenses, then the court "must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant."  *Id.*

Although the Eleventh Circuit has yet to address the test from *Linder*, the Northern District of Georgia has used the *Linder* test on multiple occasions. *See Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 1:16-CV-2618-TCB-JKL, 2017 WL 11532480, at *3 (N.D. Ga. June 16, 2017); *S.E.C. v. Espuelas*, No. 1:11-CV-00025-WSD, 2011 WL 12829075, at *3 (N.D. Ga. Jan. 27, 2011).  Given the numbers of search hits in this case, the costs are "significant."  *Cahoo v. SAS Inst. Inc.*, No. 17-10657, 2019 WL 7971900, at *5 (E.D. Mich. June 25, 2019) ("[t]he determination of what costs are significant is within the trial court's discretion"); *Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D.Tex.1998) (holding $9,000 is significant); *Linder* , 251 F.3d at 182; *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *Gamache v. Hogue*, No. 1:19-CV-21 (LAG), 2023 WL 2658034, at *5 (M.D. Ga. Mar. 15, 2023); *see also Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 1:16-CV-2618-TCB-JKL, 2017 WL 11532480, at *5 (N.D. Ga. June 16, 2017) (finding that expenses of $4,446.12 were "significant").  The cases American Protein cites are not particularly instructive.  *Shields v. Elevated Energy Solutions, LLC*, No. 3:19-CV-00390, 2020 WL 5658499, at **2–4 (S.D. Tex. Sept. 23, 2020) (holding a $50 processing fee was not significant); *Cahoo v. SAS Institute Inc.*, No. 17-10657, 2019 WL 7971900, at *5 (E.D. Mich. June 25, 2019) (holding that the producing non-party failed to estimate or itemize any of the costs it expected to incur as a result of complying with a subpoena).

Moreover, "[a]ttorney's fees are not *per se* excluded from potentially compensable expenses." *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 317 (D.D.C. 2016); *see also In re Application of Michael Wilson & Partners, Ltd., for Jud. Assistance Pursuant to 28 U.S.C. 1782*, 520 F. App'x 736, 739 (10th Cir. 2013) ("Rule 45(c)(2)(B)(ii) protects a nonparty subpoena respondent from 'significant expense,' expenses, including attorney's fees"). Expenses are generally compensable if they "result from, and therefore, are caused by, the order of compliance." *Id.* at 316.

Koch submits that it has a right in these circumstances to obtain reimbursement from API for Koch's expenses in responding to API's subpoena.

### Applicable to All Requests
So that we are clear, the agreement currently on the table would be limited to three custodians (Grendys, Kaminsky, and Buckert), and the time period would be January 1, 2016 through December 31, 2019.  You asked for the justification for ending the time period at December 31, 2019.  Multiple reasons exist for utilizing an end date of December 31, 2019.  Those include that the sale at issue was publicly known by at least May 15, 2018; documents exchanged or generated after that date would not be relevant to the claims and defenses in the above-captioned action.  In any event, to the extent some post-transaction documents may be relevant, an additional year and a half after May 15, 2018 should suffice.  Also, to the extent API seeks information related to dealings with Tyson after Koch and Tyson entered the rendering contract at issue, such information would be available from Tyson, which is a party to the case.  Finally, Koch has information already processed through an eDiscovery vendor to the December 31, 2019 date.  To bring the data current would require that Koch collect and process additional data to then search and provide additional search responsive documents.

### Requests 1-3
We have discussed at some length the issues around structured data for the rendering work at Koch Foods.  In that context, Koch has provided you examples of what is reasonably available from Koch's structured databases, which tends to be limited information.  Koch has also previously informed you that any detailed information is not kept in a structured database from which it can be extracted.  Rather, Koch keeps that information locally, at each facility that

employs those services. To find that information would be a wholly manual search and, particularly given employee turnover, different record keeping systems, and the time period involved, such a search would be an unreasonable burden. Koch would have to coordinate with each "out-of-market" facility to find and compile that information, as there is no obvious way to search on a global basis. While Koch could pull the information from its structured databases, pulling the information outside of that database is unreasonable. Will American Proteins agree, as a compromise, to accept the structured information available in Koch's database-stored repositories?

**Requests 4, 12, 17, 19, and 20**
The current proposal on the table is that Koch will provide a go-get collection and then run a search for the following two terms:

- ((Research* OR report* OR survey* OR study OR studying OR studied OR analy*) AND ((render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*))) AND NOT (unsub*)
- render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)

American Proteins agreed to remove one other term. Based on this compromise, assuming that the parties can otherwise reach agreement on the remainder of the terms, Koch will agree to review and produce responsive documents from these terms.

**Request 5 & 8**
Given the interrelationship of Requests 5 (all communications with Tyson) and 8 (communications about contracts with Tyson), we have added 8 to this cluster.

There seem to be three issues regarding the @Tyson domain search: (1) the subject matter of responsive documents; (2) the search terms to be employed; and (3) the time period to be searched.

First, Koch discussed the overall ask from American Proteins to simply produce all documents exchanged between the three custodians and anyone at Tyson—regardless of what that communication related to. Koch proposed the following as a reasonable subject matter limitation: Koch Foods would be willing to produce communications between Tyson and Koch Foods that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving rendering. During our call, please confirm agreement with this reasonable limitation on the scope of the subject matter.

Second, American Proteins proposed the following as new search strings to be utilized:

- *@tyson.com* AND ((poultry or chick*) w/100 (render* OR process* OR audit*)) AND NOT (unsub*)
- *@tyson.com* AND ((build* OR buy* OR purchas* OR acqui* OR invest* OR clos* OR valu* OR deal OR procur* OR shop OR bargain* OR contract* OR agree*) w/50 plant*) AND NOT (unsub*)
- *@tyson.com* AND (wayne* OR clint* OR river* OR jay* OR moss* OR kilburn* OR API* or ampro* or "american protein*" OR bagwell* OR tommy*)
- *@tyson.com* AND ((cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*))

Based on this compromise, assuming that the parties can otherwise reach agreement on the subject matter scope, the time period, and remainder of the terms, Koch will agree to review and produce responsive documents from these terms.

Third, there remains a disagreement about the relevant time period. While Koch has already processed data for communications pre-December 2019, the same is not true for that post-December 2019 period. This seems wrapped up in the discussion about unreasonable burden. Moreover, it is not possible to know the full scope of the burden until that data is processed. If any agreement is reached to process data from December 2019 for one or all of the custodians, Koch reserves the right to object based on unreasonable burden to any of the above search terms that have not been tested on that data.

**Requests 6, 8, 10, 11, 16 and 18**
These search terms appear to have two issues. First, Koch had proposed a limitation to the Wayne Farms subject matter (similar to that above) for documents that relate to communications between Wayne Farms and Koch Foods that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving

rendering.  Your response seemingly refuses any subject matter limitation on this term, which appears overbroad and likely to lead to the production of documents that do not relate to the claims or defenses of the parties.  On Thursday, let's discuss this scope issue further on the @WayenFarms domain search.

Second, there are still issues with the search terms.  To start, the revised terms are still grossly disproportionate as to Koch, a non-party.  Given the point we are at in negotiations, we are going to provide deeper information on the remaining terms. Moreover, given the breadth of some of these terms, Koch reserves the right to demand exclusions from privilege logging should the parties prove able to reach an agreement.  Request 11, for instance, seeks all communications about the API entities.  Should the agreed-upon time period include the period following the filing of the Delaware lawsuit and the Georgia lawsuit, many of these terms would involve communications with counsel about responding to this subpoena and the Delaware subpoena, and Koch will need agreement that all those communications do not need to be logged.  That same concern exists for Request No. 9 discussed below.

While we pointed out the terms that were the largest hitting, we did not intend to imply that the remaining terms were acceptable.  The problem goes beyond just the two search strings referenced. Even eliminating and/or modifying those two search terms brings back way more than ~20,000 documents. To better help you understand why that is we are providing you with a term-by-term hit result to facilitate your analysis.  If you still have questions for how we need to edit more than just those two search terms we can discuss on our call.  We have left the original terms in highlighting, noting the changes you suggested:

| Term | Hits | Hits w/Fam |
|---|---|---|
| (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI") AND (API* or *ampro* or "American protein*" or "Georgia feed*") | 6,498 | 16,785 |
| (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro* or "American protein*" OR "Georgia feed*") AND (render* or process*) | 44,878 | 99,518 |
| (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/25 (contract* or agree* or understand* or compl* or negotiat* or bargain* or exchang* or cooperat* or deal* or exclu* or arrang* or rule* or destroy* or delet* or burn* or destruct* or dispos* or rid* or keep* or tell* or shar*) | 41,658 | 74,378 |
| (competitive* OR sensitive* OR confidential* OR proprietary) w/100 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI") | 11,287 | 20,186 |
| Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or (not w/10 (deal* or business* or cooperat*)) | 97,041 | 153,389 |
| "Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or or cartel* or conspir* | 11,221 | 17,425 |
| (cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*) [Eliminated] | | |
| Compet* w/10 (don't or dont or won't or wont or shouldn't or shouldnt or cant or can't or cannot or not or no or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or | 14,504 | 25,669 |

| eliminat* or harm*) | | |
|---|---|---|

We hope that this additional information will help American Protein assess other ways to consider amending these terms. Even with the modifications that American Protein suggested, the set still hits on 178,468 documents (which expands to 297,636 with families).

Koch Foods stands on the unreasonableness of these terms as a group.

**Request 7**
Resolved pending global agreement.

**Request 9**
Based on this compromise, assuming that the parties can otherwise reach agreement on the remainder of the terms and address the potential privilege log question described above if necessary, Koch will agree to review and produce responsive documents from these terms.

**Request 13**
Resolved per prior communications.

**Request 21**
Resolved per prior communications.

We look forward to discussing in our next meet and confer.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct: 423.209.4218
Cell: 423.316.0442
E-mail: rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and
Washington, D.C.

---

**From:** Sanko, Clinton <csanko@bakerdonelson.com>
**Sent:** Thursday, March 7, 2024 8:12 AM
**To:** Anna.Hayes@hklaw.com
**Cc:** cynthia.burnside@hklaw.com; Gray, Rusty <rgray@bakerdonelson.com>;
Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com;
Caitlin.Saladrigas@hklaw.com; Kathleen.Princivalle@hklaw.com
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Anna—We are still working through this and testing the terms with the modifications you propose. Unfortunately, one of our key lawyers assisting in this matter is out of the country this week. We expect to revert early next week. How does Wednesday of next week look for a call? We have some flexibility then. Thanks, Clinton

**Clinton P. Sanko**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1900 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
Direct: 423.209.4168
Cell: 423.432.5626
Fax: 423.752.9580
E-mail: csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. represents clients across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, North Carolina, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Monday, March 4, 2024 8:13 PM
**To:** Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** cynthia.burnside@hklaw.com; Gray, Rusty <rgray@bakerdonelson.com>;
Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com;
Caitlin.Saladrigas@hklaw.com; Kathleen.Princivalle@hklaw.com
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Clinton –

Following up on the below - are you all available to discuss this week?

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Hayes, Anna P (WAS - X75441)
**Sent:** Thursday, February 29, 2024 1:58 PM
**To:** Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Gray, Rusty <rgray@bakerdonelson.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Clinton -

Thank you for your email. Unfortunately, it seems that we are going around in circles on these issues. We have discussed several times already many of the issues you raise below, including costs and the production status from Tyson. These issues do not provide a basis to avoid responding to the Subpoena absent an unreasonable burden to Koch. We have crafted the search terms we previously proposed, and the offers made below on certain go-gets or other compromises related to the various Requests, specifically in an effort to minimize and avoid undue burden.

You raise the issue of whether transactional data (Requests 1-3) has already been produced by Tyson. When we previously discussed this issue, as a compromise and in an effort to minimize Koch's burden, we narrowed our Request to only easily exportable or out-of-market data. The out-of-market data has not been produced by Tyson, and although we anticipate possible production of some out-of-market data from Tyson, we have not yet received that and have no way of understanding what, if any, overlap could exist. You also raise communications with Tyson (Request 5) as possibly duplicative. Again, this is an issue we previously discussed and, in our view, we are entitled to communications your client had with Tyson. We are entitled to ensure we have

a full record of communications between alleged co-conspirators, and there are any number of reasons why any production would not be duplicative - selection of custodians and document retention issues, just to name two.

As to your question concerning costs of Subpoena compliance, courts have noted that Rule 45 does not permit a non-party to set a cost precondition for compliance with a subpoena. *See, e.g., Shields v. Elevated Energy Sols., LLC*, No. 3:19-CV-00390, 2020 WL 5658499, at *4 (S.D. Tex. Sept. 23, 2020); *see also Cahoo v. SAS Inst. Inc.*, No. 17-10657, 2019 WL 7971900, at *5 (E.D. Mich. June 25, 2019) (declining to shift subpoena costs).

We appreciate that you are aiming to reach a full agreement on these issues and, in the spirit of that goal, have provided some general hit counts. We, too, are interested in reaching agreement as soon as possible given that the Subpoena has been lingering for months and given that almost all other third parties, including Wayne Farms, have either begun producing documents or else reached tentative agreements on production scope, including agreeing to search terms similar to what we proposed for Koch. Given the close of discovery in this case in June, we need commitment from your client to move forward with some agreement or else seek Court relief. For these reasons, we will address the quantified burden you set forth in your email below.

First, as a practical matter, as we discussed over the phone the last time we spoke, we would be willing to enter a clawback agreement for any production by Koch if your client is interested in eliminating all review burden. Please let us know if this is of interest. If it is not, we respond to the issues you raise below.

(Requests 1-3 addressed above).

**Requests 4, 12, 17, 19, 20**
We can agree to drop the third search term string (beginning "(((pric* OR purchas* . . .") if Koch will agree to run the other two search strings and perform a go-get collection of the types of strategic/business analysis sought in the Requests.

**Request 5**
While we think that your proposals to limit the timeframe to pre-2019 and to seek only communications with Tyson related to contracts or rendering is overly narrow, we agree to add some term limiters to narrow the subject matter for these documents to those most likely to be relevant. We propose the following (broken down into a few strings to try to ensure the syntax):

- *@tyson.com* AND ((poultry or chick*) w/100 (render* OR process* OR audit*)) AND NOT (unsub*)
- *@tyson.com* AND ((build* OR buy* OR purchas* OR acqui* OR invest* OR clos* OR valu* OR deal OR procur* OR shop OR bargain* OR contract* OR agree*) w/50 plant*) AND NOT (unsub*)
- *@tyson.com* AND (wayne* OR clint* OR river* OR jay* OR moss* OR kilburn* OR API* or ampro* or "american protein*" OR bagwell* OR tommy*)
- *@tyson.com* AND ((cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* ~~or floor or minimum* or max*~~ or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*))
  - Note the highlighted string is moved from Requests 6/8/10/11/16/18 in an attempt to narrow to communications with Tyson with these terms (rather than a general search outside of Tyson communications) and we are striking certain terms noted in crossed out text - again in an effort to take all reasonable steps to minimize the burden on Koch

Given that less than 7,000 documents hit on the general tyson.com domain, we feel these revisions are more than reasonable to narrow to potentially relevant subject matter and minimize the burden to Koch (even with the addition of post-2019 communications).

**Requests 6, 8, 10, 11, 16, and 18**

First, your proposal to narrow the request for the Wayne Farms domain name to only documents related to commercial contracts between those entities or rendering is too narrow. Given the importance of Koch and Wayne's communications in this matter, we believe less than 2,000 hits is a more than reasonable burden. This is not a fishing expedition - it is simply that trying to devise search terms to cull out a world of documents that may cover any number of terms is unreasonable where the burden, as here, is already reasonable.

You note that the two highlighted search strings are the real problems here. They are causing hits on 234,579 documents out of the total 254,724 documents (without families), which means that eliminating the problems with these really should instantly result in a reasonable burden to Koch of only ~20,000 documents. Balancing this against the need for seeking documents relating to these terms, we proposed moving the string beginning with "(cost* or price) . . " to the above Tyson.com search in the hopes that there would not be an unreasonable number of communications with Tyson with these terms but that such would very likely be relevant.

As to the "contract" search string ("Pilgrim* . . . w/100 (contract* . . ."), we propose that the w/100 limiter be changed to w/25. Additionally, if there are any particular terms that are causing an outsize number of hits, please let us know so that we can consider how to adjust.  Our hope is that the change from 100 to 25 will not create an unreasonable number of hits. Please let us know if that is not the case and we can revisit.

**Request 7 - tentative agreement contingent on overall agreement**

**Request 9**

We do not agree that 3,500 individual document hits is an unreasonable burden. As I think we have discussed, we would be more than happy to create AND NOT limiters for any mass-email domains such that this search is only capturing substantive discussions (rather than news). Please let us know if you have any proposals.

**Request 13 - agreement reached**

**Request 14-15**

What is the basis for Koch's refusal to produce contracts with Tyson past December 2019? As we have previously stated, these are undoubtedly relevant to numerous claims and defenses in the Georgia lawsuit, where, just for one example, any anticompetitive effects would be ongoing to present-day (and possibly not even ascertainable as early as 2019).

Do you all have time to discuss on Monday, March 4 between 9-11am or after 3pm, or on Tuesday, March 5 at 9:30 am?

Thank you,
 Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Sanko, Clinton <csanko@bakerdonelson.com>
**Sent:** Monday, February 26, 2024 3:04 PM

**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Gray, Rusty <rgray@bakerdonelson.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Princivalle, Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Good afternoon, Anna—

We have worked through these search terms, which appear to be coextensive with what you had previously proposed.  We wanted to start with a few preliminary observations and questions.  Looking forward to any call that we have, we would like to understand American Proteins' position on a few things that relate to the discovery status and positions.

First, what is American Proteins' position on reimbursing Koch Foods for the technology costs associated with producing this information, and for the reasonable attorneys' fees that would be expended in a document review of these documents?   Is American Proteins willing to reimburse any of these costs and fees that would have to be incurred by Koch Foods to respond to this subpoena?

Second, can you please fill us in on the status of document production from Tyson?  Several of your requests—such as Requests 1-3 and Request 5—could be easily obtained from Tyson.  Based on the docket, it seems reasonable to assume that American Proteins has received data and documents from Tyson, and those party productions should be used to better calibrate the third party discovery.  For instance, it is unreasonable to expect a third party to respond with discovery that could be obtained from the party, or that has already been obtained from that party, as doing so is duplicative.  For instance, you request every email between Koch Foods and Tyson without subject matter limitation.  Did Tyson already produce those communications?  If so, can American Proteins use the information discovered from Tyson to better calibrate additional terms that might return responsive communications?

Third, while your letter consistently asks for search hits to justify an argument around "undue burden," it is incumbent, in the first instance, on American Protein to take reasonable steps protect Koch Foods from that undue burden or expense.  Under Rule 45(d)(1) of the *Federal Rules of Civil Procedure*, a "party or attorney responsible for issuing and serving a subpoena **must take reasonable steps to avoid imposing undue or expense on a person subject to the subpoena**."  (emphasis added).  Can you please share some of your own efforts to test these terms—whether on data collected from American Protein, on documents produced by Tyson Foods, or any other efforts?  Have you proposed similar terms to other parties and received feedback that you have incorporated into these terms?  As you will see in the search results, many of these terms lead to search hit results that are completely unacceptable for a third party.

Fourth, in providing this feedback, Koch Foods is desiring to reach a full agreement.  If certain terms are returning reasonable individual results, the overall reasonableness of the full slate must be known before any commitment on those individual terms.

To start, these terms collectively hit on 245,724 documents (which expands to 404,321 documents with families).  That is unduly burdensome and disproportionate for a third party.  For context, certain of these terms had to be modified slightly within the search term syntax in order to properly run in Relativity.

With that background, here are more specific answers by category.  Please note that these numbers reflect search hits for the three custodians during the time period, and reflect documents that hit on the terms (not the documents that may be ultimately found to be responsive).  Thus, if agreement can be reached, the number of documents produced will differ dramatically because of false positives (meaning that the terms are in the documents, but do not stand for the meaning that is intended), or a lack of responsiveness in the documents identified by the search terms.

### Requests 1-3

For these requests, you proposed that Requests 1-3 be limited to the collection and production of: (1) data that is easily exportable, and (2) data from the Koch plants outside of the geographic market (Georgia, Alabama, north Florida, and south Tennessee).  On this request, we have previously provided substantial background information on what is available and what is not available, including sample data exports, and the burden associated with production of detailed materials by plant.  We continue to see almost no utility to Koch producing its own limited structured data, given that Tyson would already have access to the much more detailed transactional data.  The burden of producing "data from the Koch plants outside of the local geographic market" is burdensome and disproportionate, as has already been communicated to you.  Koch Foods maintains its objections.

### Requests 4, 12, 17, 19, and 20

For these requests, in addition to a go-get collection, you proposed that Koch search the custodian email for the following terms:

- ((Research* OR report* OR survey* OR study OR studying OR studied OR analy*) AND ((render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*))) AND NOT (unsub*)
- render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)
- ==(((pric* OR purchas* OR volume* OR output*) w/10 (offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass* OR render*))) AND NOT (unsub*)==

Collectively, these searches return 18,370 documents (which expands to 44,081 when you include families).  The ==highlighted== term is returning the most documents.  Based on these search hit results, Koch Foods maintains its objections that these terms are unduly burdensome and disproportionate.

### Request 5

This Request seeks all communications between Koch and the Tyson Defendants.  As to scope, Koch objects to producing, without regard to subject matter, every communication between a Koch custodian on the one hand, and a Tyson custodian, on the other hand.  This is a fishing expedition.  The scope of this request should be limited to additional limiting search terms relating to rendering.  While Koch Foods continues to preserve its objections, Koch Foods could make the following compromise proposal for responsiveness: Koch Foods would be willing to produce communications between Tyson and Koch Foods that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving rendering.  Please confirm agreement with this reasonable limitation.

As to the pre-2019 documents, the search string proposed (*@tyson.com* AND NOT (unsub)*) hits on 6,891 documents (and expands to 10,250 documents with families).  To bring that data current would require Koch Foods to collect and process that incremental data from Koch Foods' email server.  We await your response to American Proteins' willingness to cover costs, requested above, and stand on our burden and proportionality objections.  Based on these search hit results, and the lack of insight into what the search hit return would be for the additional period from 2019 to the present, Koch Foods maintains its objections that these terms are unduly burdensome and disproportionate.

**Requests 6, 8, 10, 11, 16 and 18**

First, like for Request No. 5, you have requested that the Wayne Farms domain search (*@waynefarms.com* AND NOT (unsub)*) be run without any limiters in terms of the search query. While the search hits are manageable for that term, in that the documents with hits are less than 2000 documents, the responsiveness standard must be narrowed. It is unreasonable to produce anything exchanged between a Koch Foods custodian and someone with a Wayne Farms email address. Again, that is a fishing expedition. Preserving its objections, Koch Foods would be willing to produce communications between Wayne Farms and Koch Foods that relate to commercial contracts for the sale of goods or services between the entities, or those that relate to anything involving rendering. Please confirm agreement with this reasonable limitation.

Next, you propose the following search terms for these requests:

- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro* or "American protein*" OR "Georgia feed*") AND (render* or process*)
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI") AND (API* or *ampro* or "American protein*" or "Georgia feed*")
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/100 (contract* or agree* or understand* or compl* or negotiat* or bargain* or exchang* or cooperat* or deal* or exclu* or arrang* or rule* or destroy* or delet* or burn* or destruct* or dispos* or rid* or keep* or tell* or shar*)
- (competitive* OR sensitive* OR confidential* OR proprietary) w/100 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI")
- Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or (not w/10 (deal* or business* or cooperat*))
- "Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or or cartel* or conspir*
- (cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*)
- Compet* w/10 (don't or dont or won't or wont or shouldn't or shouldnt or cant or can't or cannot or not or no or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or eliminat* or harm*)

These terms are unreasonable and disproportionate. As a group, these terms return 234,579 documents (which expands to 388,131 documents when you include families). The two highlighted terms are the individual terms returning the most documents. Based on these search hit results, Koch Foods maintains its objections that these terms are unduly burdensome and disproportionate.

**Request 7**

For this request, you proposed the following search query:

- (("National Chicken Council" OR "U.S. Poultry & Egg Export Council" OR "U.S. Poultry & Egg Association" OR "Georgia Poultry Federation" OR "Poultry Federation" OR "International Poultry Council" OR "International Producer and Processing Expo" OR "Tennessee Poultry Association" OR "Alabama Poultry & Egg Association" OR "South Carolina Poultry Federation" OR "Florida Poultry Federation") AND (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*")) AND NOT (unsub*)

The search hits from this term are manageable. If the parties can work out the other issues, Koch will agree to this term.

**Request 9**

You proposed the following term to find documents related to this lawsuit:

- (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*") AND (lawsuit OR case OR sued OR litigation)

This term hits on 3,500 individual documents (which expands to 9,354 when you include families). Based on these search hit results, Koch Foods maintains its objections that these terms are unduly burdensome and disproportionate.

**Request 13**

Resolved with no Koch Foods search.

**Requests 14 and 15**

Koch Foods agreed to do a "go-get" search for contracts with Tyson (other than ad-hoc or one-off purchases, which we have agreed are unnecessary to search for or produce) for the time period ending in December 2019. Koch disagrees with searching outside that relevant time period.

**Request 21**

Resolved, as the Delaware production has been completed.

We look forward to discussing in our next meet and confer.

Regards,

**Clinton P. Sanko**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1900 Republic Centre
633 Chestnut Street
Chattanooga, TN  37450
Direct:  423.209.4168
Cell: 423.432.5626
Fax:  423.752.9580
E-mail:  csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. represents clients across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, North Carolina, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Thursday, February 22, 2024 8:00 PM
**To:** Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** cynthia.burnside@hklaw.com; Gray, Rusty <rgray@bakerdonelson.com>; Romeo.Quinto@hklaw.com; Kenneth.Racowski@hklaw.com; Caitlin.Saladrigas@hklaw.com; Kathleen.Princivalle@hklaw.com
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Hi Clinton – any updates you can share? Can we plan to discuss on Monday?

Thank you,
Anna

**Anna Hayes | Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006

Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book  |  View professional biography

**From:** Sanko, Clinton <csanko@bakerdonelson.com>
**Sent:** Tuesday, February 20, 2024 5:55 PM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>;
Gray, Rusty <rgray@bakerdonelson.com>; Quinto, Romeo S (CHI -
X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL -
X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB -
X28349) <Caitlin.Saladrigas@hklaw.com>; Princivalle, Katie (PHL -
X49583) <Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al,
No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
Thank you, Anna.  We are working through this and expect to have an
answer this week.  We can follow-up with some times for a call next
week.

Best,
Clinton

**Clinton P. Sanko**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1900 Republic Centre
633 Chestnut Street
Chattanooga, TN  37450
Direct:  423.209.4168
Cell: 423.432.5626
Fax:  423.752.9580
E-mail:  csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. represents clients
across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Maryland,
Mississippi, North Carolina, South Carolina, Tennessee, Texas, Virginia,
and Washington, D.C.

**From:** Anna.Hayes@hklaw.com <Anna.Hayes@hklaw.com>
**Sent:** Friday, February 16, 2024 9:54 AM
**To:** Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** cynthia.burnside@hklaw.com; Gray, Rusty
<rgray@bakerdonelson.com>; Romeo.Quinto@hklaw.com;
Kenneth.Racowski@hklaw.com; Caitlin.Saladrigas@hklaw.com;
Kathleen.Princivalle@hklaw.com
**Subject:** RE: American Proteins et al. v. River Valley Ingredients
et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response
and Objections

Clinton – please substitute no* for "not" in those strings.

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of
Columbia 20006

Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com
_____
Add to address book | View professional biography

**From:** Sanko, Clinton <csanko@bakerdonelson.com>
**Sent:** Friday, February 16, 2024 9:44 AM
**To:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Gray, Rusty
<rgray@bakerdonelson.com>; Quinto, Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL -
X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F
(WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Princivalle,
Katie (PHL - X49583) <Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients
et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response
and Objections

*[External email]*
Anna—

We are working through your email, which appears to propose
the same search terms that we had talked about before.  As I
believe I mentioned on the call, there were two terms that are
not possible to execute in Relativity because those terms
include "not" as a search <u>term</u> rather than a search term
<u>limiter</u>.  Those are:

Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or
(**not** w/10 (deal* or business* or cooperat*))

Compet* w/10 (don't or dont or won't or wont or shouldn't or
shouldnt or cant or can't or cannot or **not** or no or protect* or
deter* or suppress* or kill* or limit* or down or stop* or
prevent* or control* or eliminat* or harm*)

Could your team re-craft these terms to remove "**not**" so that
we can test them.  In the meantime, we will continue to work
through the remaining issues and revert.

Thank you,
Clinton

**Clinton P. Sanko**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1900 Republic Centre
633 Chestnut Street
Chattanooga, TN  37450
Direct:  423.209.4168
Cell: 423.432.5626
Fax:  423.752.9580
E-mail:  csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C.
represents clients across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Maryland,
Mississippi, North Carolina, South Carolina, Tennessee, Texas,
Virginia, and Washington, D.C.

**From:** Hayes, Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>

**Sent:** Thursday, February 15, 2024 12:19 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Sanko,
Clinton <csanko@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI
- X65802) <Romeo.Quinto@hklaw.com>; Racowski,
Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F
(WPB - X28349) <Caitlin.Saladrigas@hklaw.com>;
Princivalle, Katie (PHL - X49583)
<Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley
Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch
Foods Inc. Response and Objections


Rusty and Clinton —

Following up on the below. Can you provide details of
or quantify any burden associated with the below
requests/search terms, and are you available for a call
this week or early next to discuss?

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District
of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Hayes, Anna P (WAS - X75441)
**Sent:** Monday, February 12, 2024 7:02 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI
- X65802) <Romeo.Quinto@hklaw.com>; Racowski,
Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F
(WPB - X28349) <Caitlin.Saladrigas@hklaw.com>;
Sanko, Clinton <csanko@bakerdonelson.com>;
Princivalle, Katie (PHL - X49583)
<Kathleen.Princivalle@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley
Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch
Foods Inc. Response and Objections


Rusty and all,


Thank you for meeting with us on Friday 1/26
regarding Koch's response to the subpoena. As we
understand it, you have run the search strings we
previously proposed and have some idea of the
burden associated. We thought we would be able to
discuss on our call, but you stated that before you
agree to provide any detail of the burden on Koch
associated with any of the searches, you asked us to
lay out the Request No. to which each search term
pertains, whether we believe the Delaware

production or other agreements have satisfied any of the Requests, and which Requests are still in dispute.

As we stated in our meeting, it is difficult for us to take any concrete steps to narrow our Requests to lessen the burden on Koch without knowing what that burden is. As Koch is a central player in the events at issue in the Georgia lawsuit, we believe that your client is likely to have highly relevant documents that would not have been captured in the Delaware lawsuit, where the boycott, Tyson's monopoly power, and any anticompetitive effects to date were not at issue. However, in an effort to get the detail we need to proceed, we undertook to provide the details you requested.

We believe that many of the search term proposals below relate to many of the Requests, meaning that those Requests are still outstanding/in dispute. As you requested, we have detailed below the Requests and how those correspond to our search term proposals. Our understanding is that you have produced the Delaware documents relating to the Delaware search terms you previously provided to us and, additionally, have agreed to run certain of the searches for the time frames detailed below and "go-get" contracts with Tyson (as Koch has not engaged any poultry renderer other than API/Tyson).

### Requests 1-3

Our understanding is that responses to these Requests are outstanding. These Requests pertain to structured transactional data. We requested Koch's purchase/sale data related to processing supply and rendering outputs. You informed us that producing that data is unduly burdensome because there is no central database for all plants and some plants do not have structured or centralized databases.  As a compromise and to limit the burden on your client, we propose that our Requests be limited to the collection and production of: (1) data that is easily exportable, and (2) data from the Koch plants outside of the geographic market (Georgia, Alabama, north Florida, and south Tennessee).

### Requests 4, 12, 17, 19, and 20

Our understanding is that responses to these Requests are outstanding. These Requests pertain to financial statements or business/competitive analyses responsive to: (1) market conditions for processor supply and rendering outputs (Requests 4, 19) and related communications (Request 12); (2) poultry processing waste disposal/sale options (Request 20); and (3) the decision by Koch to enter in to agreements with Defendants regarding processing supply and/or rendering output (Request 17). Such documents are relevant to the parties' claims or defenses because Koch's motivations for entering in to the agreements with Defendants are central to the allegations of illegal boycott and

conspiracy, and any analyses of market conditions or Tyson's bargaining power pre- and post-transaction are necessary to show the extent of Tyson's monopoly power (and any abuse thereof) and for a before-and-after comparison showing any market effects (injury).

We proposed that Koch could undertake a "go-get" search for these documents, but asked you to identify the process by which you proposed to search for these documents. You responded that you would begin by discussing the Requests with Mr. Kaminsky to determine what documents he possesses and where, if any, additional responsive documents may be located.

Because Mr. Kaminsky is already a custodian, and because at least in Request 12 we are seeking not only the analysis documents but communications related to that topic, we thought it made more sense to come up with search terms to cover both communications and analyses and proposed the following:

- ((Research* OR report* OR survey* OR study OR studying OR studied OR analy*) AND ((render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*))) AND NOT (unsub*)
- render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)
- (((pric* OR purchas* OR volume* OR output*) w/10 (offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass* OR render*))) AND NOT (unsub*)

Please quantify the burden associated with the above search strings and let us know if you intend to argue that such burden is undue.

**Request 5**

Our understanding is that response to this Request is outstanding. This Request seeks all communications between Koch and Defendants. These documents are necessary for almost every facet of our case, but most particularly for boycott and conspiracy-related communications pre-transaction (i.e., agreement and/or intent), and the present-day business relationship between Koch and Defendants, which could shed light on any harm to the market that occurred as a result of the API takeover (injury) and the extent to which Tyson is able to abuse its monopoly position given its current market power.

We proposed the following search string:
*@tyson.com* AND NOT (unsub)*

Our understanding is that Koch has agreed to run this search string on documents through 12/31/2019, but has not agreed to do so for documents to the present. You have previously proposed adding term limiters relevant to rendering. We do not agree. We believe that the relevance of these communications is broader than rendering and we do not believe that limiting the search to documents containing references to rendering would adequately capture the documents outlined above, if they exist. Because of the critical nature of these documents, and without an understanding of the burden associated, we continue to believe the above search string is appropriate. If you disagree, please quantify the burden associated with the above search.

**Requests 6, 8, 10, 11, 16 and 18**

Our understanding is that response to these Requests is outstanding. This Request seeks all Koch communications (internally or with any other person) regarding: (1) Defendants' acquisition of a rendering facility (Request 6); (2) reasons for and the decision to enter agreements with Defendants and ensuing negotiations (Requests 8, 18); (3) communications about API (Requests 10, 11); and (4) the provision of competitively sensitive information to Defendants (Request 16).  These documents are, similar to Request 5, necessary for almost every facet of our case for the same reasons identified above - except for rather than communications with Tyson, we are looking for internal discussions and external communications with other entities about those same subjects.

We proposed the following search strings. Note that for communications with Wayne, alleged to have participated in the boycott, we believe for the same reasons identified above as to the tyson.com domain search that this search is of critical importance and cannot be reasonably narrowed with subject matter term limiters. We also believe it is likely that there are not an unreasonably high number of communications with Wayne personnel and that because we have limited the other search strings with proposed term limiters, the burden of these proposed searches should not be unreasonably high. However, if there is a particular string or term that you believe to represent an undue burden to Koch, please quantify said burden.

- *@waynefarms.com* AND NOT (unsub)*
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro* or "American protein*" OR "Georgia feed*") AND (render* or process*)
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI") AND (API* or *ampro* or "American protein*" or "Georgia feed*")
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/100 (contract* or agree* or understand* or compl* or negotiat* or bargain* or exchang* or cooperat* or deal* or exclu* or arrang* or rule* or destroy* or delet* or burn* or destruct* or dispos* or rid* or

keep* or tell* or shar*)

- (competitive* OR sensitive* OR confidential* OR proprietary) w/100 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI")
- Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or (not w/10 (deal* or business* or cooperat*)); "Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or or cartel* or conspir*; (cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*); Compet* w/10 (don't or dont or won't or wont or shouldn't or shouldnt or cant or can't or cannot or not or no or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or eliminat* or harm*)

## Request 7

Our understanding is that the response to this Request is outstanding. This Request seeks documents relating to trade group discussions related to API. Documents responsive to this Request could be relevant to a number of different aspects of the claims or defenses in this lawsuit, but as a compromise and to minimize the burden on Koch, we are seeking documents created on or prior to 12/31/2019, which could represent opportunities to collude prior to the API transaction or immediate market effects or concerns presented by the transaction and in its immediate aftermath.

We proposed the following search string. Please quantify the burden associated with this search and if you intend to argue that it represents an undue burden.

(("National Chicken Council" OR "U.S. Poultry & Egg Export Council" OR "U.S. Poultry & Egg Association" OR "Georgia Poultry Federation" OR "Poultry Federation" OR "International Poultry Council" OR "International Producer and Processing Expo" OR "Tennessee Poultry Association" OR "Alabama Poultry & Egg Association" OR "South Carolina Poultry Federation" OR "Florida Poultry Federation") AND (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*")) AND NOT (unsub*)

## Request 9

Our understanding is that the response to this Request is outstanding. This Request seeks documents or communications regarding this lawsuit. We proposed the following terms with a date range limited to documents created after the

filing of the Complaint. Please quantify the burden
associated with this search and if you intend to
argue that it represents an undue burden.


(ampro* OR "american protein*" OR API* OR
crossroad* OR "georgia feed*") AND (lawsuit OR
case OR sued OR litigation)


### Request 13

This Request seeks agreements between Koch and
API. Our understanding is that we have reached
agreement that, in an effort to minimize the burden
to Koch, API will agree to search its own files and
not require Koch to undertake a separate search for
these documents.


### Requests 14 and 15

Our understanding is that the response to these
Requests are outstanding but that we have reached
agreement on the search and production parameters.
These Requests seek all agreements between Koch
and Tyson or any other renderer. Based on the
representation that Koch has not engaged any
renderer other than Tyson and API during the
relevant time period, we have agreed that Koch will
do a "go-get" search for contracts with Tyson (other
than ad-hoc or one-off purchases, which we have
agreed are unnecessary to search for or produce).


### Request 21

This Request was for all documents Koch produced in
the Delaware litigation. Our understanding is that
production is complete.

Thank you,
Anna

**Anna Hayes | Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District
of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Wednesday, January 24, 2024 2:41 PM
**To:** Hayes, Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI
- X65802) <Romeo.Quinto@hklaw.com>; Racowski,
Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F
(WPB - X28349) <Caitlin.Saladrigas@hklaw.com>;
Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley

Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch
Foods Inc. Response and Objections

*[External email]*

That works.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail:  rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
represents clients across the U.S. and abroad from offices in
Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi,
Tennessee, Texas, Virginia, and
Washington, D.C.

---

**From:** Hayes, Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>
**Sent:** Wednesday, January 24, 2024 2:32 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Quinto,
Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>; Racowski,
Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>; Saladrigas,
Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>; Sanko, Clinton
<csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River
Valley Ingredients et al, No. 2:22-cv-00091 (N.D.
Ga) - Koch Foods Inc. Response and Objections

Thanks, Rusty – could you make 11am ET on
Friday work?

Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington,
District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Wednesday, January 24, 2024 2:14 PM
**To:** Hayes, Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Quinto,
Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>; Racowski,
Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>; Saladrigas,
Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>; Sanko, Clinton

<csanko@bakerdonelson.com>
**Subject:** Re: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*
We are available for a call on this on Friday afternoon.  Let me know if that works for you.

Rusty

Russell W. Gray
Office: 423-209-4218
Cell: 423-316-0442

**From:** Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Sent:** Wednesday, January 24, 2024 10:41:01 AM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty –

Following up on the below email from Caitlin. Have you considered the proposals below – and if you are unable to agree, can we have a call to discuss this week?

Thank you,
Anna

**Anna Hayes** | **Holland & Knight**
*she/her/hers*
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5441 | Fax 202.955.5564
anna.hayes@hklaw.com | www.hklaw.com

Add to address book  |  View professional biography

**From:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>
**Sent:** Friday, January 12, 2024 5:46 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>

**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

All,

Happy New Year. I hope this note finds you well.

On our last meet and confer we discussed that you all did not want to entertain providing any kind of participant list from proposed custodians to help with filtering out possibly relevant content. Instead, you requested a revised set of search terms. Apologies for the delay in providing these, but (as you may have seen) we got caught up in litigating other discovery disputes in this case and with the holidays. Please let us know whether you are willing to proceed with the below set of terms, and if not, whether you will provide a search term hit report demonstrating the burden of any particular string.

Proposed search terms (we discussed in our meet and confer applying to three custodians but did not settle on the identities of any custodians or whether more were needed based on their applicable areas of responsibility and dates of employment)

- *@tyson.com* AND NOT (unsub)*
  - *@tyson.com agreed in 10/13 email – up to 12/31/2019 – but we continue to request up to date information not just through 2019 because of the need to investigate anticompetitive effects that would not have been present in the first year after the API transaction*
- *@waynefarms.com* AND NOT (unsub)*
  - *(agreed in 10/13 email – up to 12/13/2019 - but we continue to request up to date information not just through 2019 because of the need to investigate anticompetitive effects that would not have been present in the first year after the API transaction)*
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR API* or *ampro" or "American protein*" OR "Georgia feed*") AND (render* or process*)
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI") AND (API* or *ampro* or "American protein*" or "Georgia feed*")
- (Pilgrim* OR Wayne* OR Tyson* OR "river valley*" OR "RVI" OR ampro* OR "American protein*" OR API* OR crossroad* OR "Georgia feed*") w/100

(contract* or agree* or understand* or compl* or negotiat* or bargain* or exchang* or cooperat* or deal* or exclu* or arrang* or rule* or destroy* or delet* or burn* or destruct* or dispos* or rid* or keep* or tell* or shar*)

- (competitive* OR sensitive* OR confidential* OR proprietary) w/100 (output* OR volume* OR information OR statistic* OR performance) AND (Tyson OR (River w/2 Valley) OR "RVI")
- Boycott* or (refus* w/10 (deal* or business* or cooperat*)) or (not w/10 (deal* or business* or cooperat*))
- "Sherman Act" or "antitrust" or "anti-trust" or monopol* or collud* or collusion or anticompeti* or (anti w/2 competit*) or or cartel* or conspir*
- (cost* or price*) w/10 (manipulat* or fix* or stabil* or maintain* or floor or minimum* or max* or stable* or artificial* or increas* or rais* or inflat* or decreas* or fall* or undercut* or traditional* or accept*)
- Compet* w/10 (don't or dont or won't or wont or shouldn't or shouldnt or cant or can't or cannot or not or no or protect* or deter* or suppress* or kill* or limit* or down or stop* or prevent* or control* or eliminat* or harm*)
- (("National Chicken Council" OR "U.S. Poultry & Egg Export Council" OR "U.S. Poultry & Egg Association" OR "Georgia Poultry Federation" OR "Poultry Federation" OR "International Poultry Council" OR "International Producer and Processing Expo" OR "Tennessee Poultry Association" OR "Alabama Poultry & Egg Association" OR "South Carolina Poultry Federation" OR "Florida Poultry Federation") AND (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*")) AND NOT (unsub*))
  - Cut-off date – 12/31/2019 (proposed in meet and confer)
- (ampro* OR "american protein*" OR API* OR crossroad* OR "georgia feed*") AND (lawsuit OR case OR sued OR litigation)
  - Apply 5/11/2022 to present
- ((Research* OR report* OR survey* OR study OR studying OR studied OR analy*) AND ((render* OR offal OR blood* OR feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass*) w/10 (dispos* OR landfill*))) AND NOT (unsub*)
- render* w/25 (market OR industry OR analysis OR intelligence OR report OR bulletin)
- (((pric* OR purchas* OR volume* OR output*) w/10 (offal OR blood* OR

feather* OR SPN* OR "DAF" OR sludge OR bone* OR trim* OR carcass* OR render*))) AND NOT (unsub*)

We also discussed the following issues for which you said you needed to further discuss with your client – can you let us know the status of the following requests?

- Contracts between Koch and Tyson – you stated that there was no centralized database with all Tyson contracts but that you would speak to your client about whether they might be able to isolate larger/long-term contracts during the relevant period (as opposed to one-off or ad hoc purchases)
- Financial strategy documents, including profitability analysis on the Tyson rendering contract at issue or any documents discussed broad strategy surrounding raw materials supply/value (search string proposed above)
- Business planning documents related to rendering (search string proposed above)

To the extent it would be helpful to discuss these further, please let us know. We can be available for a call towards the end of next week.

Thank you,
Caitlin

**Caitlin Saladrigas** | **Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900, West Tower | West Palm Beach, Florida 33401
Phone 561.650.8349 | Fax 561.650.8399
caitlin.saladrigas@hklaw.com |
www.hklaw.com

Add to address book | View professional biography

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Wednesday, December 6, 2023 10:46 AM
**To:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*

Let's do this Friday at 1:00 p.m. ET.  Please send

an invite to Clinton and me.

Thanks Caitlin.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail:  rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Saladrigas, Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>
**Sent:** Wednesday, December 6, 2023 9:27 AM
**To:** Gray, Rusty
<rgray@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Hayes, Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>; Quinto, Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>; Sanko, Clinton
<csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Hi Rusty,

I'm circling back to your email below. We've reviewed and considered your positions on the categories of requests you enumerated below. We think it makes sense to have a call to discuss the information you provided in further detail in hopes that we can perhaps find a common ground on what additional documents and information your client will agree to produce. We'd certainly like to avoid court intervention on this to the extent possible.

Are you and Clinton available at any of the following dates/times?
- Friday, 10 am-2 pm EST
- Monday, 2-5 pm EST
- Tuesday, after 2:30 pm EST

Thanks,
Caitlin

**Caitlin Saladrigas | Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900,
West Tower | West Palm Beach, Florida
33401
Phone 561.650.8349 | Fax
561.650.8399
caitlin.saladrigas@hklaw.com |
www.hklaw.com

Add to address book  |  View professional biography

**From:** Gray, Rusty
<rgray@bakerdonelson.com>
**Sent:** Saturday, October 21, 2023 7:54
AM
**To:** Saladrigas, Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Hayes,
Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>; Quinto,
Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>;
Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>;
Sanko, Clinton
<csanko@bakerdonelson.com>
**Subject:** Re: American Proteins et al. v.
River Valley Ingredients et al, No. 2:22-
cv-00091 (N.D. Ga) - Koch Foods Inc.
Response and Objections

*[External email]*
Attached are the structured data
samples referenced below.  Note the
confidentiality designation pursuant to
the applicable protective order.  Also, in
preparing these samples, we learned
that some Koch facilities use "text bills"
for documenting customer rendering
transactions and that such transactions
are not included in the centralized
structured data database.  Thus, we
would not expect the centralized
database to contain complete rendering
customer data.  Under all the
circumstances, we continue to believe
that it makes the most sense for API to
rely on its own structured data and that
discoverable from Tyson.

Rusty

Russell W. Gray
Office: 423-209-4218
Cell: 423-316-0442

**From:** Gray, Rusty
<rgray@bakerdonelson.com>
**Sent:** Thursday, October 19, 2023 2:25

PM
**To:** Saladrigas, Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Hayes,
Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>; Quinto,
Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>;
Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>;
Sanko, Clinton
<csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v.
River Valley Ingredients et al, No. 2:22-
cv-00091 (N.D. Ga) - Koch Foods Inc.
Response and Objections

We are having a couple of challenges
with the data samples referenced
below.  I expect to provide them within
the next few days and perhaps as early
as tomorrow.  I apologize for the delay.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail:  rgray@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC represents clients across the
U.S. and abroad from offices in Alabama,
Florida, Georgia, Louisiana, Maryland,
Mississippi, Tennessee, Texas, Virginia, and
Washington, D.C.

**From:** Gray, Rusty
**Sent:** Friday, October 13, 2023 3:52 PM
**To:** Saladrigas, Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>
**Cc:** Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>; Hayes,
Anna P (WAS - X75441)
<Anna.Hayes@hklaw.com>; Quinto,
Romeo S (CHI - X65802)
<Romeo.Quinto@hklaw.com>;
Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>;
Sanko, Clinton
<csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v.
River Valley Ingredients et al, No. 2:22-
cv-00091 (N.D. Ga) - Koch Foods Inc.
Response and Objections

Caitlin,

This email responds further to your
questions regarding Koch Foods'
subpoena response.

**Structured Data.**  You asked for additional information as to what structured database information exists at Koch relating to rendering and the burden of producing it.  Koch has a centralized database that maintains certain limited information for its historical accounts payable ("AP") and accounts receivable ("AR") transactions.  Koch does not maintain a separate centralized database relating to rendering.  To access rendering data from Koch's centralized database containing AP and AR information, Koch would need to identify all plant-level codes where the rendering company was customer (for AR transactions), and where it was a vendor (for AP transactions).  We understand that these codes differ for each plant and differ depending on whether the rendering company was functioning as a customer or vendor.

Based on those codes, and assuming the list is accurate and complete, Koch can run a structured data pull from its centralized AP/AR for an agreed-upon time period.  We will provide you early next week with a sample pull for customer transactions and vendor transactions for one month to show you the level of detail available.  Based on a reasonable investigation, that is the only centrally stored information relating to rendering that can be obtained from a structured relational database.  If you see value to this information, we could discuss the parameters of a process moving forward.

Of course, unstructured information stored at each plant may relate to routine business and communications between the plant and the rendering company.  For instance, communications and other documents may exist relating to reconciling the invoice amounts against the contract, communicating daily/weekly weights and other calculations, or backing up the ultimate invoice line within the structured database.  Finding, compiling, and producing that historical information from each individual location, however, would be an excessively time-consuming, burdensome, and disproportionate exercise for Koch as a third party.  Koch reserves all objections to such an exercise.

We trust that this additional

information will help your client analyze the burden that it is claiming that Koch Foods as a third party must undertake, particularly as to a confirming exercise to what Tyson will produce (as the below email seems to imply).

**Request Nos. 4, 12, 16, 17, 18, and 19 and No. 6**: As to the search term requests, your client contends that Koch's limiters "are likely too narrow to capture more general conversations with Tyson and Wayne that would be relevant to the issues in the litigation." For clarity, Koch had proposed terms directly relevant to the issues in this case.  For instance, for the Tyson communications, Koch proposed to search: (DAF Sludge OR DAF OR skimming* OR Clarifier OR Sludge OR Clarifier OR Skimming* OR "SPN" OR offal OR paw OR render* OR fat) AND *@tyson.com.  API has not proposed any other additional search criterion, but, rather, has simply sought an expansive search for all communications with Tyson or Wayne in that time period.

The API subpoena, of course, includes requests relating to communications between Koch (on the one hand) and Tyson (on the other hand), Tyson is a litigant and will be producing those documents, and API is transferring that burden to a third party to do so in the first instance.  Moreover, API's position that the proposed limiters are "likely too narrow" further reflects that it does not have sufficient party discovery to counter-propose additional relevant limiters (despite Koch producing the materials from the Delaware production).  Given these and related issues, Koch reserves its rights under Rule 45 to claim that API is not taking reasonable steps to avoid imposing undue burden or expense on Koch in this respect.

As to the time period, Koch maintains its position of not going beyond December 31, 2019.  API has presented no substantive reason for expanding the search to include these additional (and irrelevant) years, and Koch objects to that unreasonable extension of discovery applicable to it as disproportionate and unduly burdensome, particularly because it would have to supplement its database to make that information available.  Moreover, API's initial proposed terms on their face are overly broad without

the need for the sharing of search term reports.  Koch is unwilling to start sharing search term reports in this instance as unnecessary and encroaching into work product and other considerations.

In the interests of compromise, however, Koch is willing to run a search for the period January 1, 2016 to December 31, 2019 for custodian Grendys, Buckert and Kaminsky, and for emails that in the metadata include the domains *@tyson.com and *@waynefarms.com.  Koch, however, reserves to itself the right to determine review methodology without any negotiation to determine which of those email communications are actually responsive.  This might include the use of continuous active learning or other such review acceleration technology.

As for Grendys, Buckert, and Kaminsky serving as the custodians, they were the only Koch managers materially involved with the negotiation of the Tyson rendering contract at issue.  Moreover, Kaminsky oversees Koch's rendering contracts and business matters related to rendering.  That has been the case during the entire period at issue.  In light of that, and with respect to your request for information about how Koch would conduct a "go get" search for business/strategic analysis documents related to rendering needs, we would begin that search with discussions with Kaminsky to determine what responsive documents he possesses and where additional responsive documents, if any, may be located.

**Request No. 14:** Koch does not maintain a centralized storage of all contracts between Tyson and Koch related only to rendering.  Nevertheless, Koch is willing to conduct a "got get" for such contracts in a manner similar to how it would conduct a "go get" for business/strategic analysis documents relating to rendering needs.

Koch requests in exchange for making the above agreement that it will not be required to answer any further process in this litigation, whether issued to Koch or any of its employees.  This includes, without limitation, a future request for additional custodians, time period, search criterion, or any other

supplemental requests. While API is entitled to serve this subpoena before party discovery is complete, it would be unreasonable for API to make this tactical decision and then come back to Koch should ongoing discovery present new information later that causes API to seek additional information from Koch.

Additionally, Koch continues to reserve all rights with respect to this subpoena response, including without limitation the right to seek all costs and fees in responding to this subpoena.

We look forward to your response.

Thank you.

Rusty

**Russell W. Gray**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Direct:  423.209.4218
Cell:  423.316.0442
E-mail:  rgray@bakerdonelson.com
        www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

**From:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hkllaw.com>
**Sent:** Tuesday, October 3, 2023 9:25 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>; Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American

Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty,

We've reviewed your November 2022 email exchanges with our Georgia colleagues representing API in separate litigation (attached) and discussed internally. We do not believe that our Georgia colleagues pre-emptively waived, nearly six months before we ever issued a subpoena to your client for the (separate and different claims in the) N.D. Ga. case, any potential conflict related to your representation of Koch and API. As you know, your client complied with the subpoena issued by our colleagues in the Delaware litigation and thus we resolved the issues without adversity. Based on your most recent response below, it is unclear whether your client intends to fully comply with the subpoena our team issued related to the separate antitrust litigation.

As to your below email, we understand your position on the various requests, but to understand the burden you are alleging, we need Koch to quantify the burden involved with the requests for which it is currently refusing to provide information.

**Structured Data**: While we understand that Koch has utilized only API/Tyson for rendering

since 2014, we still would like to understand the extent of the burden on Koch to produce this information – in other words, is the data available for export such that only a few hours of tech time would be required to do such an export? Structured data is often maintained differently even by parties to the same transaction. As a result we do not agree that the information we are seeking is necessarily within the custody of Defendants in this litigation. Even if it were, we nevertheless believe the law supports us seeking this information from your client to verify the accuracy of the data produced by parties to this litigation and/or to confirm such data is appropriately comprehensive.

**Request Nos. 4, 12, 16, 17, 18, and 19 and No. 6**: We appreciate your willingness to provide business intelligence/strategy documents on a go-get basis. Can you confirm the process you intend to use to collect these documents?

As to the search term requests, we think that your proposed searches are likely too narrow to capture more general conversations with Tyson and Wayne that would be relevant to the issues in the litigation. We are currently agreeable to using only the three custodians you propose (Grendys, Kaminsky, and Buckert), but we need to understand their roles and the expected scope of their

knowledge. Similarly, before we agree to any search terms to further narrow the searches for @tyson.com and @waynefarms.com e-mails, we need to understand the burden associated with employing these broader terms. If you can provide hit counts or otherwise quantify the burden of searching for *@tyson.com and *@waynefarms.com, we can better discuss that burden and any potential narrowing. Moreover, we believe a collection is appropriate beyond December 2019. Is your client willing to supplement its collection through present?

**Request No. 14**: Finally, as to the contracts between Koch and Tyson, is there any centralized (or more easily locatable) storage of contracts between Tyson and Koch related only to rendering?

We need a better understanding of whether your client is agreeable to these requests to understand whether a potential conflict now exists. We appreciate your response on these items by October 10, 2023.

Thank you,
Caitlin

**Caitlin Saladrigas**
| **Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900, West Tower | West Palm Beach, Florida 33401
Phone 561.650.8349 | Fax 561.650.8399
caitlin.saladrigas@hklaw.com |

[www.hklaw.com](http://www.hklaw.com)

Add to address book | View professional biography

**From:** Gray, Rusty <[rgray@bakerdonelson.com](mailto:rgray@bakerdonelson.com)>
**Sent:** Tuesday, September 12, 2023 10:23 AM
**To:** Saladrigas, Caitlin F (WPB - X28349) <[Caitlin.Saladrigas@hklaw.com](mailto:Caitlin.Saladrigas@hklaw.com)>
**Cc:** Burnside, Cynthia G (ATL - X48568) <[cynthia.burnside@hklaw.com](mailto:cynthia.burnside@hklaw.com)>; Hayes, Anna P (WAS - X75441) <[Anna.Hayes@hklaw.com](mailto:Anna.Hayes@hklaw.com)>; Quinto, Romeo S (CHI - X65802) <[Romeo.Quinto@hklaw.com](mailto:Romeo.Quinto@hklaw.com)>; Racowski, Kenneth (PHL - X49580) <[Kenneth.Racowski@hklaw.com](mailto:Kenneth.Racowski@hklaw.com)>; Sanko, Clinton <[csanko@bakerdonelson.com](mailto:csanko@bakerdonelson.com)>
**Subject:** Re: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*

I cleared that conflict when we responded to the Delaware subpoena. We asked then if the Georgia case lawyers for API consented as well and the answer was yes. We had consent from everyone. I can dig up those emails. I was dealing with Patrick Reagin.

Rusty

Russell W. Gray
Office: 423-209-4218
Cell: 423-316-0442

**From:** Saladrigas, Caitlin F (WPB - X28349) <[Caitlin.Saladrigas@hklaw.com](mailto:Caitlin.Saladrigas@hklaw.com)>
**Sent:** Tuesday,

September 12, 2023 10:15:45 AM

**To:** Gray, Rusty <[rgray@bakerdonelson.com](rgray@bakerdonelson.com)>

**Cc:** Burnside, Cynthia G (ATL - X48568) <[cynthia.burnside@hklaw.com](cynthia.burnside@hklaw.com)>; Hayes, Anna P (WAS - X75441) <[Anna.Hayes@hklaw.com](Anna.Hayes@hklaw.com)>; Quinto, Romeo S (CHI - X65802) <[Romeo.Quinto@hklaw.com](Romeo.Quinto@hklaw.com)>; Racowski, Kenneth (PHL - X49580) <[Kenneth.Racowski@hklaw.com](Kenneth.Racowski@hklaw.com)>; Sanko, Clinton <[csanko@bakerdonelson.com](csanko@bakerdonelson.com)>

**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty,

Apologies for the delay in getting back to you. I was traveling last week and am getting back up to speed. While I was away, a colleague of yours from another office that is representing another non-party in our case, raised a potential conflict issue where in your firm currently represents our client. This was the first that our team had heard of this issue and we were frankly surprised to learn about it considering the extent of our substantive conferrals below.

Is there a time where we can discuss this with you further to gather more information? We'd like to speak in the next couple of days if at all possible.

Thanks,

Caitlin

**Caitlin Saladrigas**
**| Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive,
Suite 1900, West Tower
| West Palm Beach,
Florida 33401
Phone 561.650.8349 |
Fax 561.650.8399
caitlin.saladrigas@hkla
w.com |
www.hklaw.com

Add to address book | View
professional biography

**From:** Gray, Rusty
<rgray@bakerdonelson.
com>
**Sent:** Friday, September
1, 2023 2:16 PM
**To:** Saladrigas, Caitlin F
(WPB - X28349)
<Caitlin.Saladrigas@hkl
aw.com>
**Cc:** Burnside, Cynthia G
(ATL - X48568)
<cynthia.burnside@hkla
w.com>; Hayes, Anna P
(WAS - X75441)
<Anna.Hayes@hklaw.co
m>; Quinto, Romeo S
(CHI - X65802)
<Romeo.Quinto@hklaw
.com>; Racowski,
Kenneth (PHL - X49580)
<Kenneth.Racowski@hk
law.com>; Sanko,
Clinton
<csanko@bakerdonelso
n.com>
**Subject:** RE: American
Proteins et al. v. River
Valley Ingredients et al,
No. 2:22-cv-00091 (N.D.
Ga) - Koch Foods Inc.
Response and
Objections

*[External email]*

Caitlin

Thanks for your patience as we have worked to respond to your below email and related questions. We are hopeful that this further response will help us resolve open issues with Koch's subpoena response.

**Structured Data:** We have confirmed that Koch has utilized only two companies for rendering services since 2014. Those companies are American Proteins and Tyson. Koch typically utilized Tyson for rendering only from its Mississippi complex. Its other seven complexes utilized American Proteins for rendering. Not all complexes have the same output, and output at complexes may change over time, but you can get a rough idea from the number of complexes as to the percentage of rendering work that Tyson and American Proteins performed for Koch during the pertinent timeframe.

Considering that Tyson and American Proteins are the only rendering companies with which Koch has contracted since 2014, Tyson and American Proteins already possess the sought information about Koch rendering. No need exists for Koch, therefore, particularly as a third party, to undergo the time and expense of producing the requested structured data. The requested information resides with existing parties to the litigation.

**Request Nos. 4, 12, 16, 17, 18, and 19:** As you note below, these requests generally relate to Koch's business intelligence or strategy related to its positioning and relative power in dealing with rendering operations in the Southeast and communications with Tyson regarding same. In response to your suggestion that Koch conduct searches pre- and post-2018 for the domain *@tyson.com* in responding to these requests, we propose that Koch search that domain name but narrow that search to only generate documents that relate to the relevant subject matter of rendering. Thus, our search terms would be (DAF Sludge OR DAF OR skimming* OR Clarifier OR Sludge OR Clarifier OR Skimming* OR "SPN" OR offal OR paw OR render* OR fat) AND *@tyson.com. The searches would be for the same custodians as our initial production (Grendys, Kaminsky, and Buckert) for the time period of 1/1/2016 through the end of 2019 (the period at which our email collection for these custodians ends). We also are agreeable to conducting a "go get" production of Koch's business/strategic analysis related to rendering needs for the same time period as the searches.

**Request No. 6:** As you note below, this request relates to

communications with Wayne.  We propose that we address this request with the same search protocol as noted above with respect to Tyson except substitute the Tyson domain with *@waynefarms.com.

**Request No. 14:**  As you note below, this request relates to contracts between Koch and Tyson (nationwide) both before and after May 15, 2018.  This request continues to be overboard and unduly burdensome.  Koch Foods over the many years has engaged in numerous arms-length business transactions with Tyson.  For example, it has many times over the years bought from and/or sold chicken to Tyson, bought from and/or sold eggs to Tyson, and bought from and/or sold feed to Tyson.   Moreover, Koch Foods does not maintain a centralized contracts database or centralized storage of contracts.  It would be very difficult if not impossible for Koch to identify each of these contracts or transactions with Tyson.  Additionally, the information that American Proteins seeks in this situation should reside with Tyson, a party to the case.  No need exists to burden Koch with this request.

If you agree to the above proposals, we will proceed with conducting the additional searches and close out the subpoena response.  If you do not

agree, we are open to a meet and confer regarding remaining issues.

Thank you.

Rusty

**Russell W. Gray**

Shareholder

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

633 Chestnut Street, Suite 1900

Chattanooga, TN 37450

Direct:  423.209.4218

Cell:  423.316.0442

E-mail:
rgray@bakerdonelson.com

www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and Washington, D.C.

---

**From:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>
**Sent:** Thursday, August 24, 2023 3:42 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>; Quinto, Romeo S (CHI - X65802) <Romeo.Quinto@hklaw

.com>

**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Good afternoon, Rusty,

I'm writing to follow-up on my email below. Please let me know if your team is open to scheduling a call to discuss the points below early next week. I am happy to provide some times when our team is available.

Thanks,

Caitlin

**Caitlin Saladrigas**
**| Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900, West Tower | West Palm Beach, Florida 33401
Phone 561.650.8349 | Fax 561.650.8399
caitlin.saladrigas@hklaw.com |
www.hklaw.com

---

Add to address book | View professional biography

---

**From:** Saladrigas, Caitlin F (WPB - X28349)
**Sent:** Wednesday, August 16, 2023 5:29 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>

**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Hayes, Anna P (WAS - X75441) <Anna.Hayes@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

Rusty,

Thank you for your email. We have considered the below regarding the requested structured data and communications as well as the other information relevant and necessary for the claims and defenses in the above-referenced matter and how to balance those concerns while avoiding undue burden or expense to Koch.

First, as to structured data, we understand that Koch does not have a structured "database" per se, and that finding the requested information would involve a search for invoices specific to the renderers sold to/purchased from. To help us understand the burden here, can you give us a rough idea of how many different renderers in the relevant geography Koch had vendor/customer relationships with from 2014 to present, and the relative usage of those renderers? I.e., was API the primary rendering material customer 90% or more of Koch's raw material

from 2014-2018 and Tyson from 2018-present, and did Koch get 90% or more rendered product from API/Tyson over that period? Or was Koch selling raw materials to many different renderers in the Southeastern US area and/or buying rendered product from many different entities in that area?

Second, as to the search terms you've identified below that led to the Delaware production, we continue to appreciate the cross-production of materials and that certainly helps with some of the requested information, but as the issues and relevant time period are broader in the above-reference matter, there are certain relevant documents that we do not believe would have been captured by those search terms or produced in the Delaware litigation, which was limited to the transaction in 2018. Among the information that is still outstanding and necessary for the claims and defenses here:

- **Request Nos. 4, 12, 16, 17, 18, and 19** – documents reflecting Koch's business intelligence or strategy related to its positioning and relative power in dealing with rendering operations in the Southeast and communications with Tyson re:

same (both pre and post 2018)

- Request: search pre- and post-2018 for domain name search *@tyson.com* to capture communications with Tyson in addition to search terms or a "go-get" production of business/strategic analysis related to rendering needs, both pre- and post-2018 (we request your input on whether search terms are needed or whether these types of analyses are stored in central locations and

might be easier to collect by searching those repositories for relevant documents – we are amenable to discuss which method would minimize any burden to you).

- **Request No. 6** – communications with Wayne Farms prior to May 15, 2018

  ○ Request: perform a domain name search for [*@waynefarms.com](*@waynefarms.com) – we believe that this search could be performed on the documents you have already collected for the custodians you identify below and that this therefor

e is a relatively low burden request.

- **Request No. 14** – contracts with Tyson (nationwide) both before and after May 15, 2018

  o Request: "go-get" collection of these contracts (we do not

believe these would involve custodial ESI but if you have reason to believe o

therwise, please let us know)

Please let us know if you are amenable to the above requests. While we are appreciative of the Delaware production your client re-produced to us, given the distinct factual and legal issues in our case, we are seeking separate and additional information. We remain committed to avoiding any unreasonable burden on Koch, but as it stands the extent of any burden and the corresponding degree is unclear. Perhaps we can set another call to discuss these points further early next week. Let us know

what works best for your team and we can schedule something.

Thank you,

Caitlin

**Caitlin Saladrigas | Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900, West Tower | West Palm Beach, Florida 33401
Phone 561.650.8349 | Fax 561.650.8399
caitlin.saladrigas@hklaw.com | www.hklaw.com

---

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Friday, July 21, 2023 1:20 PM
**To:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>

**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*

Good afternoon Caitlin, Cynthia, and Kenneth:

We wanted to follow-up on our meet and confer on July 11 and provide you with some additional information. As a predicate matter, and as we have discussed, Koch went through an exercise of responding to a subpoena from API for its Delaware proceedings. Those documents have been produced to your team. While you discussed myriad buckets on our call, this email focuses in on two of them: structured data and communications. We will address the other ones in separate correspondence.

First, on structured data, we have had communications with Koch's information technology department about what data may be available. Information regarding offal output of a slaughter plant would be stored in Koch's production databases.  Our understanding, however, is that the information is not captured on a granular level at the slaughter complexes, but, rather, would be stored as an invoice to the rendering company (which is purchasing that offal).   In other words, in this context, the rendering company would be a customer and Koch would be issuing an invoice and then creating an accounts receivable for that material.

Koch does not track detailed statistics on its offal output (such as per truck volumes, mix, or other detailed information). Moreover, as to the rendering companies that were used by each facility over the period

of years, it would be a manual survey of each complex to identify the companies, and then to use those company "customer" codes to pull the associated invoices. We are looking to do some test queries of identifiable American Protein invoice information and then will report back. All of this information is preliminary, and we are providing it in good faith to assist API in evaluating the burden (and potential benefits), and reserving all Koch's positions.

Moreover, finding the information about products purchased back from a rendering company, perhaps as a feed input, is a similar survey item and is not centrally stored or available. It would require identifying the rendering company that might have been used—here, as a vendor to Koch—and then identifying the vendor number and searching for any invoices issued to Koch

as an accounts payable. Again, this would be a manual surveying process, versus some readily identifiable report. Again, Koch reserves all rights as this appears to be a burdensome process based on currently known information.

Second, on communications, we discussed Koch disclosing the search methodology used in the Delaware action so that you could analyze the fit for responsiveness here. The Delaware subpoena was focused on the communications around the transaction and other issues (more fully set forth in that subpoena). We searched the emails of Joe Grendys (CEO), Mark Kaminsky (COO) and Lance Buckert (CFO) for information between January 1, 2016 and May 15, 2018. The Tyson employees that were the points of contact on the offal purchase agreement were Shane Parks and Josh McClelland.

The search terms employed were:

| Term |
|---|
| *@amprot.com |
| (American w/3 Protein*) AND *Tyson* |
| AmPro* AND *Tyson* |
| offal w/3 agreement |
| Shane w/3 Parks |
| Josh* w/3 McClelland |
| "API" AND *Tyson* |
| "Georgia Feed" AND *Tyson* |
| (DAF Sludge OR DAF OR skimming* OR Clarifier OR Sludge OR Clarifier OR Skimming* OR "SPN") AND (Tyson OR Wayne*) |
| (pet w/3 yield) AND *Tyson* |
| (fat w/3 yield) AND *Tyson* |
| (poultry w/3 rendering) AND *Tyson* |

Once you have a chance to review, please let us know whether you have any questions.

Finally, as you know, Rule 45(d)(1) of the *Federal Rules of Civil Procedure* ("*Rules*") mandate that API, as the issuing party, "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Many of the proposals that you made in our good faith meet and confer would place undue burdens on Koch, and would be significant from a time standpoint of its personnel and its attorney's fees in complying with them. Rule 45(d)(2)(B)(ii) directs the Court to protect a party from "significant expense resulting from compliance." Given these two mandates—that API take reasonable steps to protect Koch and that Koch be awarded its significant expenses—we ask that API be prepared to discuss what steps it is taking to avoid undue burden and whether API would agree to defray Koch's significant expenses.

Regards,

Rusty

**Russell W. Gray**

Shareholder

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

633 Chestnut Street, Suite 1900

Chattanooga, TN 37450

Direct:  423.209.4218

Cell:  423.316.0442

E-mail:  rgray@bakerdonelson.com

www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and
Washington, D.C.

---

**From:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>
**Sent:** Wednesday, July 5, 2023 5:48 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections


Thanks, Rusty. It looks like 1:30 on July 11 works for us. I will send an invite shortly.


Best,

Caitlin


**Caitlin Saladrigas** | **Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900, West Tower | West Palm Beach, Florida 33401
Phone 561.650.8349 | Fax 561.650.8399
caitlin.saladrigas@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Sunday, July 2, 2023 9:53 AM
**To:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>; Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Racowski, Kenneth (PHL - X49580) <Kenneth.Racowski@hklaw.com>
**Subject:** Re: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections


*[External email]*

How about the early afternoon (1:30 p.m. to 3:00 p.m. ET) on either July 10 or 11?


Rusty

Russell W. Gray

Office: 423-209-4218

Cell: 423-316-0442

**From:** Saladrigas, Caitlin F (WPB - X28349) <Caitlin.Saladrigas@hklaw.com>
**Sent:** Friday, June 30, 2023 1:27:54 PM
**To:** Gray, Rusty <rgray@bakerdonelson.com>; Burnside, Cynthia G (ATL - X48568)
<cynthia.burnside@hklaw.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D.
Ga) - Koch Foods Inc. Response and Objections

Hi Rusty,

I'm circling back on the email exchanges below to see if we can set a time to discuss your
client's responses and objections in the API antitrust case.

I'm mindful of the impending holiday weekend. Do you and your team have availability
Wednesday or Friday next week? If not, we'd appreciate you sharing when you are available the
week of July 10.

Many thanks,

Caitlin

**Caitlin Saladrigas** | **Holland & Knight**
Partner
Holland & Knight LLP
777 South Flagler Drive, Suite 1900, West Tower | West Palm Beach, Florida 33401
Phone 561.650.8349 | Fax 561.650.8399
caitlin.saladrigas@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Saturday, May 6, 2023 3:46 PM
**To:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Saladrigas, Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>; Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D.
Ga) - Koch Foods Inc. Response and Objections

*[External email]*

Thanks for your email Cynthia.  We appreciate your thoughts on meeting and conferring to
resolve issues that may remain.  We share that approach.

We will wait to hear from you after you have had the chance to review everything.

Have a good weekend.


Rusty


**Russell W. Gray**

Shareholder

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

633 Chestnut Street, Suite 1900

Chattanooga, TN 37450

Direct:  423.209.4218

Cell:  423.316.0442

E-mail:  rgray@bakerdonelson.com

www.bakerdonelson.com


Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and
Washington, D.C.

---

**From:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>
**Sent:** Friday, May 5, 2023 11:48 AM
**To:** Gray, Rusty <rgray@bakerdonelson.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>; Saladrigas, Caitlin F (WPB - X28349)
<Caitlin.Saladrigas@hklaw.com>; Racowski, Kenneth (PHL - X49580)
<Kenneth.Racowski@hklaw.com>
**Subject:** RE: American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D.
Ga) - Koch Foods Inc. Response and Objections


Rusty, thank you for your email.  We appreciate your production of
the documents produced in the DE action.  Unfortunately, the
various orders in the two cases prevent us from using discovery
from one case in any other case.  So, we must actually request and
obtain the information separately for this case.


While we appreciate your concern about the scope of the subpoena,
because the cases are different, the requests in the subpoena for
this case require certain transactional and other information that
was not obtained in the DE matter.  We will review your responses
and objections and documents and follow up with you about
additional information implicated by the supeona.


We have ongoing meet and confers with other subpoena recipients,
and we don't want to unnecessarily burden your or anyone else's
clients.   So, while we will not withdraw our subpoena, we will not

pursue court intervention without conferring with you and alerting you to that prospect.  However, we are hopeful that we can reach consensus on what is needed, and there will be no need to go to the Court.

**Cynthia Burnside** | **Holland & Knight**
Partner
Holland & Knight LLP
1180 West Peachtree Street, NW, Suite 1800 | Atlanta, Georgia 30309
Phone 404.817.8568 | Mobile 404.218.6737
cynthia.burnside@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Gray, Rusty <rgray@bakerdonelson.com>
**Sent:** Friday, May 5, 2023 9:05 AM
**To:** Burnside, Cynthia G (ATL - X48568) <cynthia.burnside@hklaw.com>
**Cc:** Sanko, Clinton <csanko@bakerdonelson.com>
**Subject:** American Proteins et al. v. River Valley Ingredients et al, No. 2:22-cv-00091 (N.D. Ga) - Koch Foods Inc. Response and Objections

*[External email]*

Please see the attached Koch Foods, Inc.'s Responses and Objections to Plaintiffs' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.

As you will see, we are objecting to these requests based in large part on the fact that we have already responded to a very burdensome subpoena in the related Delaware litigation.

We will be re-producing to you in response to Plaintiffs' current subpoena the documents previously produced in response to the Delaware litigation subpoena, which, of course, Plaintiffs already possess ("Koch Delaware Production"). We suggest that you consider those documents before addressing any specific requests in the current subpoena.

Considering the early stages of the Litigation, and the re-production of the Koch Delaware Production under the instant Protective Order, Koch believes it would be most efficient for Plaintiffs to withdraw the N.D. Georgia Subpoena, without waiving any rights.  Plaintiffs could then issue a revised and narrowed subpoena to Koch, if appropriate, after the parties to the Litigation have engaged in more complete discovery exchanges and Plaintiffs have identified the information that is uniquely available from Koch.

Thank you.

**Russell W. Gray**

Shareholder

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

633 Chestnut Street, Suite 1900

Chattanooga, TN 37450

Direct:  423.209.4218

Cell:  423.316.0442

E-mail:  rgray@bakerdonelson.com

www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, Tennessee, Texas, Virginia, and
Washington, D.C.

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-client communication, protected health information (PHI) or other confidential information that is in fact confidential, legally protected from disclosure and/or protected by the attorney-client privilege. If you are the intended recipient, please maintain confidentiality and be aware that forwarding this e-mail to others may result in a waiver of these protections and privileges and regardless electronic communications may be at times illegally accessed and viewed. If you are not the intended recipient, this e-mail is not intended for transmission to you, nor to be read, reviewed, used, distributed or even received by you or any other unauthorized persons. If you have received this electronic mail transmission in error, please double delete it from your system immediately without copying, reading or disseminating it, and notify the sender by reply e-mail, so that our address record can be corrected. Thank you very much.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.